PATRICK J. CAROME (*pro hac vice* pending)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice* pending)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

PETER G. NEIMAN (*pro hac vice* pending)
peter.neiman@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
250 Greenwich St., 45 Floor
New York, New York 10007
Telephone: (212) 295-6487
Facsimile: (202) 663-6363

MARK D. FLANAGAN (CA Bar No. 130303)
mark.flanagan@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

***Attorneys for Plaintiff***
**TWITTER, INC.**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., <br><br>             Plaintiff, <br><br>      v. <br><br> KEN PAXTON, <br> in his official capacity as Attorney General of Texas <br><br>           Defendant. | Case No. __3:21-cv-1644_____ <br><br> **DECLARATION OF MATTHEW WILLIAMS IN SUPPORT OF PLAINTIFF TWITTER, INC.'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

ActiveUS 185639670v.4

## DECLARATION OF MATTHEW WILLIAMS

I , Matthew Williams, declare as follows:

1.     I am a Senior Director, Trust & Safety at Twitter, Inc. ("Twitter"). Based upon information I have learned and received in the course of my work in that position, including information provided to me by other employees of the company, I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.     On January 13, 2021, Attorney General of Texas Ken Paxton posted a press release on his Twitter account indicating that he issued a civil investigative demand (the "CID") to Twitter. Attached hereto as **Exhibit A** is a true and correct copy of Attorney General Paxton's Twitter post, available at https://tinyurl.com/ae4jpt47.

3.     Attached hereto as **Exhibit B** is a true and correct copy of Attorney General Paxton's Press Release, available at https://tinyurl.com/v7jaycca.

4.     By posting the press release to his Twitter account, Attorney General Paxton caused the press release to be viewable at Twitter's offices in San Francisco. A number of other statements the Attorney General issued through his Twitter account, including his Tweets on January 6, 2021, and January 9, 2021 were also viewable from Twitter's offices in San Francisco. Attached hereto as **Exhibit C** is a true and correct copy of Attorney General Paxton's January 6, 2021, Tweet available at https://tinyurl.com/3h4dc3rn.

5.     Attached hereto as **Exhibit D** is a true and correct copy of Attorney General Paxton's January 9, 2021 Tweet, available at https://tinyurl.com/ud9t39p7.

6.     On or about January 14, 2021, the Attorney General's office addressed and transmitted the CID to Twitter at its headquarters in San Francisco, via U.S. certified mail. A true and correct copy of the CID, as received by Twitter in San Francisco, including the envelope in which it was received, is attached hereto as **Exhibit E.**

7.     When the mailed version of the CID arrived at Twitter's San Francisco offices, those offices remained closed to all but a few necessary employees due in part to threats of violent protests

ActiveUS 185639670v.4

in the vicinity of its offices arising from its content moderation decisions during and after the attack on the U.S. Capitol.

8.   On January 29, 2020, immediately after Twitter realized it had been purportedly served with the CID, Twitter hired outside counsel to assist Twitter in responding to the CID.

9.   Twitter has already been injured by the pending CID and the Attorney General's related investigation, and it will continue to be injured by them so long as they remain pending. Twitter's current injuries and threatened future injuries include the following:

10.   *First*, Twitter has been forced to expend significant resources in responding to the CID to date, and will have to expend additional resources if the CID remains outstanding.  Twitter has worked to find, review, and ready responsive documents for production.  Responding to the CID forced several of Twitter's employees to redirect time and effort that would otherwise have been spent on, among other things, reviewing and responding to reports by users and regulators.  The production was supervised and directed by employees located in California. In total, Twitter produced approximately 1,800 documents—including Twitter's consumer-facing policies and public statements around content moderation—in connection with its response to the CID.  These productions resulted in Twitter incurring costs in California. Responding to all the remaining items of the CID, as currently framed, would require reviewing and producing thousands of additional documents, at substantial additional cost and expense.

11.   Twitter could not have chosen to simply ignore the CID.  The CID is an official demand from the highest ranking law-enforcement official in the state of Texas, and it expressly threatened legal action in the event of noncompliance.  *See* **Exhibit E** (citing Tex. Bus. & Com. Code § 17.62).

12.   *Second*, the CID and accompanying investigation have already chilled, and so long as they remain extant, will continue to chill, Twitter's exercise of its First Amendment rights.  Twitter understands that its decisions to either remove or place context around third-party content on its site in order to enforce the Twitter Rules will sometimes lead to public attention and debate.

> If this CID and investigation were allowed to proceed, I believe the result would be significant diminishment of the willingness of Twitter employees to speak candidly and freely in internal content moderation deliberations.   I believe this would likely compromise and inhibit Twitter's ability to make moderation decisions that best achieve Twitter's vision of what content does and does not belong on its platform.

13.   Further, the pendency of the CID and related investigation creates a concrete prospect that Twitter's broad swath of internal, confidential policies and procedures regarding its moderation of its platform may have to be turned over to law enforcement officials.   These pertain to or reflect sensitive deliberations between and among Twitter's employees, and they reflect the company's content moderation judgments.   These judgments are supervised and directed by Twitter's senior employees assigned to its headquarters in San Francisco.

14.   The fact that Twitter was served with this burdensome and broad CID has the potential to color Twitter's future content moderation decisions.

15.   *Third*, public exposure of the content of Twitter's internal content moderation decisions— which the CID threatens—would undermine the effectiveness of those policies and could force Twitter to expend substantial resources changing them.   Twitter takes great care in crafting internal policies, procedures, and practices that it believes will promote a healthy conversation on its platform.   The nature and content of those policies, procedures, and practices reflects the company's considered judgments about the optimal way of moderating content on its platform.

16.   Twitter strives to be as transparent as possible about its content moderation policies.   For example, Twitter's Terms of Service, the Twitter Rules, and all incorporated policies are public, and Twitter regularly publishes blog posts explaining our reasoning behind certain content moderation policies.   Twitter also publishes semi-annual statistics regarding the frequency with which we take down content or suspend accounts displayed on the Twitter Transparency Center.   Twitter makes an effort to be transparent to better ensure that a user's interactions with the platform are understandable and fair.

17. But public disclosure of Twitter's internal policies, procedures, and practices pertaining to content moderation would provide accountholders who wish to evade the Twitter Rules and related policies with a roadmap for evading or circumventing Twitter's moderation efforts, and thus compromise the effectiveness of those efforts. For example, many confidential documents sought by the CID pertain to or reflect internal policies, practices, or measures that Twitter employs to address, remedy, prevent, and assess violations of its Rules. If these confidential materials were disclosed, bad-faith actors could use that information to circumvent Twitter's enforcement capabilities. If this information became public, it may be prohibitively expensive for Twitter to alter its detection and enforcement technologies and processes in order to regain an advantage over bad actors engaging in efforts to evade Twitter's Rules. For example, individuals' ability to circumvent Twitter's policies against spam, platform manipulation, and ban evasion, to name just a few, could negatively impact the integrity and security of Twitter's platform. Likewise, if bad-faith actors understand the nuances of Twitter's health-related policies, such as those prohibiting abuse, harassment, and glorification of violence, it would make it easier for them to sidestep those policies, which would negatively impact the health of the conversation on the platform.

18. The Office of the Attorney General of Texas maintains a verified ("blue-check") account on Twitter's platform. The Office of the Attorney General of Texas has had authorization over and use of that account for 12 years, since January 2009, and the account has been used to post Tweets as recently as March 8, 2021. Attached hereto as **Exhibit F** is a true and correct copy of the current profile page for the Twitter account of the Attorney General of Texas, available at https://twitter.com/TXAG.

19. Mr. Paxton separately maintains a verified ("blue-check") Twitter account. He has had authorization over and use of that account for 11 years, since June 2009, before his tenure as Attorney General, but the account now includes the display name "Attorney General Ken Paxton." This account has been used to post Tweets as recently as March 7, 2021. Attached

hereto as **Exhibit G** is a true and correct copy of the current profile page for the Twitter account of the Attorney General, available at, https://twitter.com/KenPaxtonTX.

20.    In obtaining and/or continuing to use each of these Twitter accounts, the Office of the Attorney General, and Mr. Paxton have consented to the User Agreement, including its venue and choice-of-law provisions.

21.    To this day, the company Parler maintains a Twitter account @parler_app.  To the best of Twitter's knowledge, it has never suspended Parler's Twitter account or required Parler to remove content from the Twitter platform.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 8th day of March 2021 in California.

By:   /s/ Matthew Williams
                Matthew Williams

## **SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(i), I hereby attest that the other signatories have concurred in this filing.

Dated: March 8, 2021                              By:  /s/ _____
                                                         Mark D. Flanagan

# EXHIBIT A

← **Tweet**
   1.8K replies

 **Attorney General Ken Paxton** ✔ @KenPaxtonTX · Jan 13        ...

BREAKING: Today I launched an investigation into @Google @Facebook @Twitter @amazon & @Apple investigating their policies & practices regarding content moderation and for information related to Parler, a social media app terminated or blocked.



AG Paxton Issues Civil Investigative Demands to Five Leading Tech ...

Attorney General Ken Paxton today issued civil investigative demands (CIDs) to Google, Facebook, Twitter, Amazon Web Services, and ...

🔗 texasattorneygeneral.gov

💬 1.8K            ⟲ 6.2K            ♡ 17.4K            ⬆

# EXHIBIT B





**Menu**

Español (/es/news/releases/procurador-general-paxton-emite-demandas-de-investigacion-civil-cinco-empresas-tecnologicas-lideres)

About (/about-office)   News (/news)

Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)   Contact Us (/contact-us)

HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
AG PAXTON ISSUES CIVIL INVESTIGATIVE DEMANDS TO FIVE LEADING TECH COMPANIES REGARDING
DISCRIMINATORY AND BIASED POLICIES AND PRACTICES

January 13, 2021 | Press Release

# AG Paxton Issues Civil Investigative Demands to Five Leading Tech Companies Regarding Discriminatory and Biased Policies and Practices

SHARE THIS:                                    **391**

Attorney General Ken Paxton today issued civil investigative demands (CIDs) to Google, Facebook, Twitter, Amazon Web Services, and Apple, asking the companies for their policies and practices regarding content moderation and, more specifically, for information related to Parler, a social media application recently terminated or blocked by Google, Amazon, and Apple.

For years, these Big Tech companies have silenced voices in the social media sphere and shut down competing companies and platforms. It has only grown worse in recent months. And just last week, this discriminatory action

included the unprecedented step of removing and blocking President Donald Trump from online media platforms.

"First Amendment rights and transparency must be maintained for a free online community to operate and thrive. However, the seemingly coordinated de-platforming of the President of the United States and several leading voices not only chills free speech, it wholly silences those whose speech and political beliefs do not align with leaders of Big Tech companies. Every American should be concerned about this large-scale silencing and the effects it will have on the future of free speech," said Attorney General Paxton. "The public deserves the truth about how these companies moderate and possibly eliminate speech they disagree with. I am hopeful that these companies will set aside partisan politics and cooperate with these CIDs in order to get to the bottom of this contention and ensure a truly free online community consistent with the highest American ideals."

Read a copy of the CIDs below:

Amazon (https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2021/Press/Amazon-Parler%20CID%20011321.pdf)

Apple (https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2021/Press/Apple-Parler%20CID%20011321.pdf)

Facebook (https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2021/Press/Facebook-Parler%20CID%20011321.pdf)

Google (https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2021/Press/Google-Parler%20CID%20011321.pdf)

Twitter (https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2021/Press/Twitter-Parler%20CID%20011321.pdf)

*Receive email updates from the OAG Press Office:*

Your Emai

**Submit**

## Related News

### AG Paxton's Law Enforcement Round Up (/news/releases/ag-paxtons-law-enforcement-round-1)

**March 05, 2021 | Noteworthy**

### Texas Shuts Down Fraudulent Nationwide Telephone Scam (/news/releases/texas-shuts-down-fraudulent-nationwide-telephone-scam)

**March 05, 2021 | Press Release**

### AG Paxton: Federal Interference in State Election Law Violates the Constitution (/news/releases/ag-paxton-federal-interference-state-election-law-violates-constitution)

**March 05, 2021 | Press Release**

### AG Paxton's Law Enforcement Round Up (/news/releases/ag-paxtons-law-enforcement-round-0)

**March 01, 2021 | Noteworthy**

See all News (/news)

Back to Top

| | | | |
|---|---|---|---|
| Child Support (/child-support) | All Divisions (/divisions) | Where the Money Goes (https://comptroller.texas.gov/transparer | office/compact-texans) |
| | | | Cost Efficiency |
| Crime Victims (/crime-victims) | Opinions (/attorney-general-opinions) | ADA Compliance (/ada-compliance) | Saving Ideas (/about-office/cost-efficiency-saving-ideas) |
| Consumer Protection | Initiatives (/initiatives) | Compact With Texans (/about- | |

(https://twitter.com/TXAG)

(/)

(https://www.facebook.com/TexasAttorneyGeneral)

**PO Box 12548**
**Austin, TX 78711-2548**

**Consumer
Protection**
**(/consumer-
protection)**

**Open
Government
(/open-
government)**

**Human
Resources
(/careers)**

**Report
Fraud (/about-
office/reporting-
fraud-state-
government)**

**State Agency
Contracts
(https://oagtx.force.com/cs/contacts/)**

**TRAILS Search
(https://www.tsl.state.tx.us/trail/index.html)**

**Texas
Homeland**

**Security
(https://gov.texas.gov/)**

**Texas Veterans
Portal
(https://veterans.portal)**

**Texas.gov
(http://www.texas.gov/)**

**Accessibility &
Site Policies
(/site-policies)**

# EXHIBIT C

← **Tweet**
266 replies

 **Attorney General Ken Paxton**  @KenPaxtonTX · Jan 6   ···
Americans are here in Washington to stand up and support the President.
A lot of voters, as well as myself, believe something went wrong in this
election. I'm here to support @realDonaldTrump #MarchToSaveAmerica

 

Trump supporters to rally in DC ahead of Electora...
Texas Attorney General Ken Paxton joins 'Fox &
Friends' ahead of Congress' joint session to vote ...
🔗 video.foxnews.com

💬 266         ⟲ 249         ♡ 989         

# EXHIBIT D

# Tweet

1.1K replies

 **Attorney General Ken Paxton** ✔ @KenPaxtonTX · Jan 9                    ···

Twitter/Facebook closing conservative accts. Google shutting down
Parler. @Apple threatening to do the same.
BigTech hates free speech. As we enter the Biden era, they stand
ready/willing to be the left's Chinese-style thought police.
As AG, I will fight them with all I've got.

💬 1.1K          ⇄ 1.7K          ♡ 5.2K          ⬆

# EXHIBIT E



KEN PAXTON
ATTORNEY GENERAL OF TEXAS
Post Office Box 12548
Austin, Texas 78711-2548

*Return Services Requested*

FIRST-CLASS MAIL

neopost
01/14/2021
US POSTAGE $007.05
ZIP 78701
041L122046766

OFFICIAL BUSINESS
STATE OF TEXAS
PENALTY FOR PRIVATE USE

Twitter, Inc.
1355 Market Street, Suite 900
San Francisco, CA 94103

7020 0090 0000 7449 5012

CERTIFIED MAIL



**OFFICE OF THE ATTORNEY GENERAL**
**CONSUMER PROTECTION DIVISION**

# CIVIL INVESTIGATIVE DEMAND

**TO:**    **Twitter, Inc.**
1355 Market Street, Suite 900
San Francisco, CA 94103

Pursuant to this office's specific authority under section 17.61 of the Texas Deceptive Trade Practices – Consumer Protection Act, sections 17.41-.63, Texas Business and Commerce Code ("DTPA"), you are hereby directed to produce the items listed in Exhibit "C" attached hereto. Such production is governed by the instructions and definitions on this page and subsequent pages.

You are to make available the documentary material described in Exhibit "C" to the undersigned Assistant Attorney General, or other authorized agent(s) identified by the Consumer Protection Division ("Division"). This documentary material shall be produced by February 2, 2021, ("return date") for inspection and copying. You may deliver true copies of the requested documents by the return date in lieu of producing the originals for inspection and copying. Copies of the requested materials may be sent to the Authorized Agent(s) below at the Office of the Attorney General, P.O. Box 12548 (MC-076), Austin, TX 78711-2548.

This Civil Investigative Demand is relevant to the subject matter of an investigation of possible violations of sections 17.46(a) and (b) of the DTPA in Twitter's representations and practices regarding what can be posted on its platform.

---

**TAKE NOTICE THAT pursuant to § 17.62, TEX. BUS. & COM. CODE, any person who attempts to avoid, evade, or prevent compliance, in whole or in part, with this directive by removing, concealing, withholding, destroying, mutilating, altering, or by any other means falsifying any documentary material may be guilty of a misdemeanor and on conviction is punishable by a fine of not more than $5,000.00 or by confinement in the county jail for not more than one year, or both.**

---

**ISSUED THIS 13th day of January, 2021.**


_____/s/_____
**C. Brad Schuelke**
**Assistant Attorney General**
**P.O. Box 12548 (MC-076)**
**Austin, Texas 78711-2548**
**(512) 463-2185**

## **EXHIBIT A—Definitions**

### **Definitions**

1. "**Content**" means any and all information or media, including but not limited to text, picture files, video files, or audio files.

2. "**Content moderation**" means any action taken by You, including but limited to policies, human review processes, algorithms and machine learning, to limit, control or prevent the display of content on your platform, or to limit, control or prevent access to content on your platform.

3. "**Document**" means the original and all non-identical copies (whether different from the original because of notes, underlining, attachments, or otherwise) of all computer files, and all written, printed, graphic or recorded material of every kind, regardless of authorship. It includes communications in words, symbols, pictures, photographs, sounds, films, and tapes, as well as electronically stored information, computer files, together with all codes and/or programming instructions and other materials necessary to understand and use such systems. The term "computer files" includes information stored in or accessible through computers or other information retrieval systems and includes but is not limited to drafts of documents, metadata, embedded, hidden and other bibliographic or historical data describing or relating to documents created, revised, or distributed on computer systems, as well as spreadsheets and their underlying cell formulae and other codes. Thus, you should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, phones, pagers, personal data/digital assistants, archival voice storage systems, group and collaborative tools, electronic messaging devices, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off your premises. This definition covers electronic mail messages ("e-mail"), text messages, voice mail, and all other documents in the possession of you and/or your directors, officers, managers, or employees, whether located at their home or office, whether on work or personal devices. Notice: Unless otherwise specified, the term "document" excludes bills of lading, invoices in non-electronic form, customs declarations, purchase orders, and other similar documents of a purely transactional nature, and also excludes architectural plans and engineering blueprints.

4. "**Entity**" means legal or business entity of any kind and includes, without limitation, corporations, partnerships, joint ventures, associations, governmental bodies, and trusts.

5. "**Identify**" means

    a. Regarding an individual, to identify that individual's:

        i. name;

      ii.     title;

      iii.    present business affiliation;

      iv.    current or last known telephone numbers at business and home; and

      v.     current or last known business and home addresses.

    b.    Regarding a Person other than an individual, to identify:

      i.      its full name;

      ii.     the nature of its organization;

      iii.    the address and telephone number of its principal offices and, if applicable, the state in which it is incorporated; and

      iv.    its principal line of business or activity.

    c.    Regarding any other tangible thing, to identify:

      i.      what it is, giving a reasonably detailed description thereof;

      ii.     when, where, and how it was made, if applicable;

      iii.    who made it, if applicable; and

      iv.    its current custodian or the person that had last known possession, custody, or control thereof

6. **"Including"** means including, but not limited to.

7. **"Person"** means any individual person or entity.

8. **"Platform"** means any website or resource managed or controlled by You on which you permit third-parties to post content or access content.

9. **"Post"** means to upload, copy, link or otherwise make available content.

10. **"Relate,"** **"related,"** and **"relating"** mean being in any way legally, logically, or factually connected with the subject matter of the request at issue.

11. **"User"** means a person who accesses or posts content on the platform, including but not limited to persons who post or access advertising content.

12. **"You"** and **"Your"** shall mean Twitter, Inc. and all of its parent companies, subsidiary companies, sister companies, and other entities owned, controlled, or directed by Twitter, Inc.

13. The words **"and"** and **"or"** shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of the request, any document(s) that might be deemed outside its scope by another construction.

14. Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural includes the singular, and the neuter gender includes the masculine and the feminine.

## **EXHIBIT B—Instructions**

1.  **Read These Instruction/Definitions.** Read these instructions and definitions carefully.

2.  **Meet and Confer**:  Please contact the undersigned, as soon as possible to schedule a meeting (telephonic or in person) in order to discuss compliance and to address and attempt to resolve all issues, including issues related to protected status, the form and manner in which claims of protected status will be asserted, the submission of Electronic Stored Information, and any proposed modifications limiting the scope of the required search or response for any request.

3.  **Duty to Preserve Documents.**  All documents and/or other data which relate to the subject matter or requests of this Civil Investigative Demand must be preserved. *Any ongoing, scheduled or other process of document or data destruction involving such documents or data must cease even if it is your normal or routine course of business for you to delete or destroy such documents or data and even if you believe such documents or data are protected from discovery by privilege or otherwise.* Failure to preserve such documents or data may result in legal action and may be regarded as spoliation of evidence under applicable law.

4.  **Relevant Dates.**  Unless otherwise noted, the requests in this Civil Investigative Demand require production of documents for each year from January 1, 2017, to the date you received this Civil Investigative Demand, herein called "the relevant time period."

5.  **Custody & Control.**  In responding to this Civil Investigative Demand, you are required to produce not only all requested documents in your physical possession, but also all requested documents within your custody and control, including those within the possession of persons reasonably available to you or under your direction or control.

6.  **Identification of Documents not in Custody or Control.**  If any responsive document was, but no longer is, in your possession, custody or control, produce a description of each such document.  The description shall include the following:

    a.  The name of each author, sender, creator, and initiator of such document;

    b.  the name of each recipient, addressee, or party for whom such document was intended;

    c.  the date the document was created;

    d.  the date(s) the document was in use;

    e.  a detailed description of the content of the document;

    f.  the reason it is no longer in your possession, custody or control; and

g. the document's present whereabouts.

If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the destruction or disposal.

7. **Privileged Documents.** If any responsive document is withheld, in whole or in part, under any claim of privilege, provide a detailed privilege log that contains at least the following information for each document or partial document that you have withheld:

 a. the document's control numbers;

 b. all authors of the document;

 c. all addressees of the document;

 d. all recipients of the document or of any copies of the document, to the extent not included among the document's addressees;

 e. the date of the document;

 f. a description of the subject matter of the document sufficient to determine the applicability of the privilege;

 g. the nature or type of the privilege that is being asserted for the document (e.g., "attorney-client privilege");

 h. the specification(s) of the Demand to which the document is responsive;

 i. the document control number(s) of any attachments to the document, regardless of whether any privilege is being asserted for such attachment(s); and

 j. whether the document has been produced in redacted form, and if so, the range of the control numbers for the document.

8. **Trade Secrets.** It is your responsibility to clearly designate which, if any, of the requested documents contain trade secrets, in accordance with Section 17.61(f) of the Texas Business & Commerce Code.

9. **Production of Electronic Stored Information.** Before you prepare documents or information for production in electronic form in order to comply with this Civil Investigative Demand (for example, before you attempt to process electronically stored information or image hard copy documents), you must consult with the undersigned and reach agreement regarding the format and method of production. Unless otherwise agreed to in writing by the designated OAG representative, electronically stored information shall be produced in electronic form.

10. **Non-identical Copies to be Produced.** Identical copies of responsive documents need not be produced. However, any copy of a document that differs in any manner, including but not limited to the presence of handwritten notations, different senders or recipients, etc. shall be produced.

11. **No Redaction.** All materials or documents produced in response to this Civil Investigative Demand shall be produced, except as deemed privileged, in complete unabridged, unedited and un-redacted form, even if portions may contain information not explicitly requested, or might include interim or final editions of a document.

12. **Document Organization.** Each document and other tangible thing produced shall be clearly designated as to which Request, and each sub-part of a Request, that it satisfies. The documents produced shall be identified and segregated to correspond with the number and subsection of the request.

13. **Sensitive Personally Identifiable Information:** If any material called for by these requests contains sensitive personally identifiable information or sensitive health information of any individual, please contact us before sending those materials to discuss ways to protect such information during production.

14. In any situation in which it is not clear in which capacity you are responding, you are to designate all relevant capacities.

15. If responses to any request are different for more than one group or category of persons, please respond separately for each relevant category or group of persons and clearly identify to whom each response is applicable. By way of example only, if your content moderation policies and practices are different for advertising users as compared to non-advertising users, respond to each request separately for advertising users and non-advertising users.

16. All document requests are continuing in nature so as to require supplementary documents if you obtain further responsive documents.

# **EXHIBIT C**

### **Requests**

1. Produce a copy of all terms of use, terms of service, or other terms to which users must agree in order to post or access content on your platform, including but not limited to all revised documents relating to terms of use, terms of service, or other terms to which users must agree during the time from January 1, 2017 to the present. For each version of terms produced in response to this request, indicate the time frame during which it was in use.

2. Produce a copy of all your policies and procedures related to content moderation on your platform, including any policies or procedures that limit the reach or visibility of content intended for public viewers, including but not limited to all revised policies and procedures related to content moderation on the platform during the time from January 1, 2017 to the present. For each version of terms produced in response to this request, indicate the time frame during which it was in use.

3. Produce a copy of all public statements you have made regarding your policies and/or procedures related to content moderation on the platform, including but not limited to statements made or caused to be made to the media, to advertisers, to legislators, and on your website and/or blog during the time from January 1, 2017 to the present.

4. Produce a copy of all communications you have had, between January 1, 2019, and the present, with the social media platform Parler.com, Parler, Inc., or any of its owners, employees, or agents.

5. Produce a copy of all communications, internal and to third parties, you have had, between January 1, 2019, and the present, regarding the social media platform Parler.com or Parler, Inc. Include but do not limit your response to any communications with governmental entities, Google LLC, Apple Inc., Facebook, Inc., and Amazon Web Services, Inc.

# EXHIBIT F

← **Texas Attorney General** ✔
3,679 Tweets



Liberty and Justice for Texas
★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★ ★

⬭ Follow

**Texas Attorney General** ✔
@TXAG

Official Twitter account for the Office of the Texas Attorney General, Ken Paxton. Follow for the latest updates.

⊙ Texas   🔗 texasattorneygeneral.gov   🗓 Joined January 2009

**1,263** Following   **68.2K** Followers

*Tweets*          Tweets & replies          Media          Likes

# EXHIBIT G

← **Attorney General Ken Paxton** 
7,557 Tweets



**Follow**

**Attorney General Ken Paxton** ✔
@KenPaxtonTX

Texas Attorney General Ken Paxton. Follow @TXAG for official news from my office.

📍 The Great State of Texas   📅 Joined June 2009

**1,378** Following   **124.6K** Followers

Tweets          Tweets & replies          Media          Likes

1

## <u>CERTIFICATE OF SERVICE</u>

2      I, Mark D. Flanagan, herby certify that on March 8, 2021, I served the attached document

3  via electronic mail upon the following address, per consent of all parties.

4

5      Brad.schuelke@oag.texas.gov

6

7  DATED: March 8, 2021                    /s/ Mark D. Flanagan
                                            Mark D. Flanagan
8
                                            MARK D. FLANAGAN (CA Bar No. 130303)
9                                           mark.flanagan@wilmerhale.com
                                            WILMER CUTLER PICKERING
10                                             HALE AND DORR LLP
                                            2600 El Camino Real, Suite 400
11                                          Palo Alto, California 94306
                                            Telephone:  (650) 858-6047
12                                          Facsimile:  (650) 858-6100

13                                          *Attorney for Plaintiff*
                                            **TWITTER, INC.**
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28