1  **OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
PATRICK K. SWEETEN (*pro hac vice*)
2     Email: patrick.sweeten@oag.texas.gov
WILLIAM T. THOMPSON (*pro hac vice*)
3     Email: will.thompson@oag.texas.gov
RYAN D. WALTERS (*pro hac vice*)
4      Email: ryan.walters@oag.texas.gov
P.O. Box 12548 (MC-009)
5  Austin, Tx 78711-2548
Tel.: 512.936.1414
6  Fax: 512936.0545

7  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
Michael K. Johnson, SB#130193
8     Email: michael.johnson@lewisbrisbois.com
2185 N. California Blvd., Suite 300
9  Walnut Creek, CA 94596
Tel.: 925.357.3456
10 Fax: 925.478.3260

11 Attorneys for Defendant KEN PAXTON IN HIS OFFICIAL CAPACITY AS  ATTORNEY GENERAL OF TEXAS

12                    UNITED STATES DISTRICT COURT

13        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

14  TWITTER, INC.,                          CASE NO: 3:21-cv-1644-MMC

15              Plaintiff,                  **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES**

16          v.

17  KEN PAXTON, in his official capacity as
Attorney General of Texas,                **Date:     May 7, 2021**
18                                          **Time:     9:00 a.m.**
              Defendant.                    **Crtrm:    7, 19th floor**
19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS  OR, IN THE ALTERNATIVE, MOTION
TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on May 7, 2021, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 7, 19th floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102-3489, Defendant Ken Paxton will and hereby does move this Court to dismiss the Complaint, or alternatively, to transfer the case, of Plaintiff Twitter, Inc., *Twitter, Inc. v. Ken Paxton*, No. 3:21-cv-01644 (N.D. Cal.), on the grounds that (1) this action is not ripe due to a lack of imminent injury; (2) that the Court lacks personal jurisdiction over Defendant; and (3) that this Court is an improper and inconvenient venue. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers filed herein, oral argument of counsel, and any matter that may be submitted at the hearing.

DATED: March 29, 2021                  Respectfully submitted.

                                      /s/ Patrick K. Sweeten
                                      Patrick K. Sweeten
                                      Deputy Attorney General
                                      for Special Litigation
                                      Ken Paxton
                                      Attorney General of Texas
                                      Brent Webster
                                      First Assistant Attorney General
                                      Grant Dorfman
                                      Deputy First Assistant Attorney General
                                      William T. Thompson
                                      Deputy Chief, Special Litigation Unit
                                      Ryan D. Walters
                                      Special Counsel

Dated:  March 29, 2021                LEWIS BRISBOIS BISGAARD & SMITH LLP

                                      /s/ Michael K. Johnson
                                      Michael K. Johnson
                                      Attorneys for Defendant

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS  OR, IN THE ALTERNATIVE, MOTION
TO TRANSFER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

**NOTICE OF MOTION AND MOTION** ....................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** .......................................... 1

**INTRODUCTION** ...................................................................................................... 1

**ARGUMENT** .............................................................................................................. 2

**I.**    **Twitter's Challenge Is Premature** ................................................................ 2

**II.**   **Twitter Has Not Established Personal Jurisdiction** ................................... 3

   **A.**   **This Court Lacks General Personal Jurisdiction Because A Texas Agency Is Not "At Home" In California** ....................................... 4

   **B.**   **This Court Lacks Specific Personal Jurisdiction Because Twitter's Claim Is Based On Conduct In Texas** ................................ 4

     **1.**   **Investigating Twitter For Misleading Texas Consumers In Violation Of Texas Law Is Not Purposefully Directed Toward California** ........................................ 5

     **2.**   **Twitter's Claim Does Not Arise Out Of Or Relate To Any California Contacts** .... 10

     **3.**   **Exercising Personal Jurisdiction Over A Texas State Agency Would Be Unreasonable** ................................................ 11

   **C.**   **The Office Of The Attorney General Has Not Consented To Personal Jurisdiction** .. 13

**III.**  **Venue In California Is Improper** ................................................................. 14

**IV.**  **Venue In California Is Inconvenient** ........................................................... 17

**V.**   **The Court Should Abstain** .......................................................................... 19

**VI.**  **Conclusion** ................................................................................................... 21


**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1

# TABLE OF AUTHORITIES

2

3

**FEDERAL CASES**                                                                           **Page(s)**

*Atl. Marine Constr. Co. v. U.S. Dist. Court,*
   571 U.S. 49 (2013) ................................................................... 14-15, 17, 18

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017) ................................................................... 4, 5, 10

*BASF Corp. v. Symington,*
   50 F.3d 555 (8th Cir. 1995) ................................................................... 20

*Bass v. Hendrix,*
   931 F. Supp. 523 (S.D. Tex. 1996) ................................................................... 8

*Belle Fourche Pipeline Co. v. United States,*
   751 F.2d 332 (10th Cir. 1984) ................................................................... 3

*Blake Marine Grp., L.L.C. v. Frenkel & Co. ,*
   439 F. Supp. 3d 249 (S.D.N.Y. 2020) ................................................................... 8

*Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.,*
   444 F.3d 1356 (Fed. Cir. 2006) ................................................................... 9

*Bristol-Myers Squibb Co. v. Superior Court,*
   137 S. Ct. 1773 (2017) ................................................................... 4

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ................................................................... 6, 11

*C5 Med. Werks v. CeramTec GmbH,*
   937 F.3d 1319 (10th Cir. 2019) ................................................................... 9

*Calder v. Jones,*
   465 U.S. 783 (1984) ................................................................... 5

*Cascade Corp. v. Hiab-Foco AB,*
   619 F.2d 36 (9th Cir. 1980) ................................................................... 9

*CollegeSource, Inc. v. AcademyOne, Inc.,*
   653 F.3d 1066 (9th Cir. 2011) ................................................................... 3

*Colo. River Water Conserv. Dist. v. United States,*
   424 U.S. 800 (1976) ................................................................... 19

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ................................................................... 4

*Daniel v. Am. Bd. of Emergency Med.,*
   428 F.3d (2d Cir. 2005) ................................................................... 15

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Case No. 3:21-cv-1644-MMC

*Deburro v. Apple, Inc.*,
No. A-13-CA-784-SS, 2013 WL 5917665 (W.D. Tex. Oct. 30, 2013) ..................................... 8

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) ..................................................................................... 8

*Doe 1 v. AOL L.L.C.*,
552 F.3d 1077 (9th Cir. 2009) .................................................................................... 15

*Freestream Aircraft Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) ....................................................................................... 5

*Goff v. Hackett Stone Co.*,
185 F.3d 874 (1999) .................................................................................................... 15

*Google, Inc. v. Hood*,
822 F.3d 212 (5th Cir. 2016) .................................................................................. 2, 3

*Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) ..................................................................................... 10

*Harris Cnty. Comm'rs Court v. Moore*,
420 U.S. 77 (1975) ..................................................................................................... 21

*Hartman v. Moore*,
547 U.S. 250 (2006) ..................................................................................................... 5

*Hatch v. Reliance Ins. Co.*,
758 F.2d 409 (9th Cir. 1985) ...................................................................................... 18

*Hunt v. Erie Ins. Grp.*,
728 F.2d 1244 (9th Cir. 1984) ..................................................................................... 6

*Inamed Corp. v. Kuzmak*,
249 F.3d 1356 (Fed. Cir. 2001) .................................................................................... 9

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
649 F.2d 1266 (9th Cir. 1981) ....................................................................... 11, 12, 13

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945) ..................................................................................................... 4

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ..................................................................................................... 6

*J.M. Smucker Co. v. Hormel Food Corp.*,
CASE NO. 5:20-cv-1132, 2021 WL 1022452 (N.D. Ohio Mar. 16, 2021) ............................ 10

*Jenkins Brick Co. v. Bremer*,
321 F.3d 1366 (11th Cir. 2003) .................................................................................. 15

*Kehm Oil Co. v. Texaco, Inc.*,
537 F.3d 290 (3d Cir. 2008) ....................................................................................... 10

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Kransco Mfg., Inc. v. Markwitz,*
    656 F.2d 1376 (9th Cir. 1981) ................................................................................. 9

*Ky. v. Graham,*
    473 U.S. 159 (1985) ................................................................................................. 3

*Laird v. Tatum,*
    408 U.S. 1 (1972) ..................................................................................................... 3

*Leroy v. Great W. United Corp.,*
    443 U.S. 173 (1979) .......................................................................................... *passim*

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
    647 F.3d 1218 (9th Cir. 2011) ................................................................................. 3

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,*
    954 F.2d 1174 (6th Cir. 1992) ................................................................................. 7

*Morningside Church v. Rutledge,*
    No. 3:20-cv-05050-MDH, 2020 WL 5077255 (W.D. Mo. Aug. 27, 2020) ..................... 6, 7, 20

*New World Int'l, Inc. v. Ford Glob. Techs., L.L.C.,*
    859 F.3d 1032 (Fed. Cir. 2017) ......................................................................... 9, 10

*Ohio Bureau of Empl. Servs. v. Hodory,*
    431 U.S. 471 (1977) ............................................................................................... 19

*Orange, S.A. v. U.S. Dist. Court,*
    818 F.3d 956 (9th Cir. 2016) ............................................................................ 13-14

*Peterson v. Kennedy,*
    771 F.2d 1244 (9th Cir. 1985) ................................................................................. 6

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) ................................................................................. 5

*Piedmont Label Co. v. Sun Garden Packing Co.,*
    598 F.2d 491 (9th Cir. 1979) ................................................................................. 14

*PTI, Inc. v. Philip Morris Inc.,*
    100 F. Supp. 2d 1179 (C.D. Cal. 2000) ................................................................. 12

*Publius v. Boyer-Vine,*
    237 F. Supp. 3d 997 (E.D. Cal. 2017) .................................................................. 2-3

*R.R. Com. of Tex. v. Pullman Co.,*
    312 U.S. 496 (1941) ........................................................................................ 19, 20

*Radio Sys. Corp. v. Accession, Inc.,*
    638 F.3d 785 (Fed. Cir. 2011) ................................................................................. 9

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998) ............................................................................... 9

*///*

*Richmond Techs., Inc. v. Aumtech Bus. Sols.,*
  No.: 11-CV-02460-LHK, 2011 WL 2607158 (N.D. Cal. July 1, 2011) ................................. 15

*Sampson v. Cnty. of L.A. ex rel. L.A. Cnty. Dep't of Children & Family Servs.,*
  974 F.3d 1012 (9th Cir. 2020) ................................................................ 3

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) .............................................................. 4, 5

*Steen v. Murray (In re Steen),*
  770 F.3d 698 (8th Cir. 2014) ............................................................... 15

*Stroman Realty, Inc. v. Wercinski,*
  513 F.3d 476 (5th Cir. 2008) .......................................................... 7, 8, 12

*Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica,*
  614 F.2d 1247 (9th Cir. 1980) ............................................................... 6

*Turner v. Abbott,*
  53 F. Supp. 3d 61 (D.D.C. 2014) ............................................................ 4

*Walden v. Fiore,*
  571 U.S. 277 (2014) ....................................................................... 5

*Woodke v. Dahm,*
  70 F.3d 983 (8th Cir. 1995) ............................................................... 15

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) ...................................................................... 12

*Yahoo! Inc. v. La. Ligue Contre Le Racisme,*
  433 F.3d 1199 (9th Cir. 2006) .............................................................. 6

*Zimmer v. Connett,*
  640 F.2d 208 (9th Cir. 1981) ............................................................... 2

**FEDERAL STATUTES**

28 U.S.C. § 1391 ................................................................. 15, 16, 18
28 U.S.C. § 1404 ...................................................................... 18
28 U.S.C. § 1406 ...................................................................... 14
28 U.S.C. § 2201 ...................................................................... 20
42 U.S.C. § 1983 ...................................................................... 20

**STATE CASES**

*Birdsong v. Toyota Motor Credit Corp.,*
  No. 2000-C1-0629, 2002 WL 32830975 (2002) ................................................ 8

*Stone v. Tex.,*
  76 Cal. App. 4th 1043 (1999) ............................................................. 12



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# STATE STATUTES

Cal. Civ. Proc. Code § 410.10 (Deering) ........................................................................... 3
Cal. Civ. Proc. Code § 1391 (Deering) ..................................................................... 16, 17
Tex. Bus. & Com. Code Ann. § 17.45 (West) ................................................................ 8
Tex. Bus. & Com. Code Ann. § 17.47 (West) .............................................................. 20
Tex. Bus. & Com. Code Ann. § 17.61 (West) ............................................... 1, 14, 19-20
Tex. Bus. & Com. Code Ann. § 17.62 (West) .................................................. 1, 14, 20
Tex. Bus. & Com. Code Ann. § 17.62 (West) .............................................................. 10
Tex. Bus. & Com. Code Ann. § 17.61 (West) .............................................................. 13
Arkansas Deceptive Trade Practices Act……………………………………………………20
Declaratory Judgment Act...................................................................................................2

# RULES

Fed. R. Civ. P. 12 ............................................................................................... 2, 3, 14
Fed. R. Civ. P. 12(b)(1)....................................................................................................9
Fed. R. Civ. P. 12(b)(2)....................................................................................................14
Fed. R. Civ. P. 12(b)(3).................................................................................................. 22

# OTHER AUTHORITIES

Cal. Dept't of Public Health, *Travel Advisory* (Jan. 6, 2021),
    https://www.cdph.ca.gov/ Programs/CID/DCDC/Pages/COVID-19/Travel-
    Advisory.asp........................................................................................................ 18

Office of the Governor, *Governor Abbott Issues Executive Order Terminating Air
    Travel Restrictions Related To COVID-19 Pandemic* (May 21, 2020),
    https://gov.texas.gov/news/ post/governor-abbott-issues-executive-order-
    terminating-air-travel-restrictions-related-to-covid-19-pandemic ......................... 18

# CONSITITUTIONAL PROVISIONS

Tex. Const. art. III, § 58 ................................................................................................ 11
U. S. Const. art. I, §8 ("Commerce Clause") ................................................................. 5

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case should be dismissed because Twitter faces no imminent injury, cannot establish personal jurisdiction over Defendant, and filed in an improper, inconvenient venue.

The Office of the Attorney General of Texas is investigating Twitter for potential violations of the Texas Deceptive Trade Practices Act ("DTPA"). To determine whether Twitter unlawfully misled Texas consumers, the Consumer Protection Division of the Office of the Attorney General ("CPD") sent Twitter a civil investigative demand ("CID") requesting five categories of documents. *See* ECF1-1. The CID is neither unusual nor injurious. It has no self-executing consequences and simply requests that Twitter produce documents. If Twitter did not want to produce the documents, it could have initiated statutorily-authorized proceedings in Texas state court to challenge the CID. *See* Tex. Bus. & Com. Code Ann. § 17.61(g) (West).  Or it could have waited for potential enforcement proceedings in Texas state court and challenged the CID in those proceedings. *See id.* § 17.62(b) (West). Instead, Twitter prematurely filed suit in this Court before any real dispute could ripen.

Twitter has not established personal jurisdiction over the Office of the Attorney General of Texas, nor could it. The Office of the Attorney General has taken no action in California. Merely communicating with a company across state lines does not subject a sovereign state to the jurisdiction of foreign courts.

Finally, venue in California is both improper and inconvenient. Every action giving rise to Twitter's claim occurred in the State of Texas.

Twitter is trying to fit a square peg in a round hole. This potential document dispute does not belong in court at all. But if it does, it belongs in a Texas court, not here.[1]

/ / /

/ / /

---

[1] Defendant's Response to Plaintiff's Motion for a Preliminary Injunction addresses the facts in more detail. To avoid burdening the Court with duplicative briefing, Defendant does not repeat that information here.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**ARGUMENT**

**I.      Twitter's Challenge Is Premature**

The Court should dismiss for lack of subject-matter jurisdiction because an administrative request for documents is not ripe for review until the agency seeks to enforce the request in judicial proceedings. *See* Fed. R. Civ. P. 12(b)(1).

The Ninth Circuit has long recognized this principle. In *Zimmer v. Connett*, the IRS sent taxpayers a "notice of reexamination" so that it could review their "books and records." *Zimmer v. Connett*, 640 F.2d 208, 209 (9th Cir. 1981). Before the IRS sought to enforce the notice, the taxpayers filed suit. *See id.* Because the taxpayers could have waited and raised their legal arguments in any "enforcement proceeding," the Ninth Circuit held that they had "an adequate remedy at law, [and] the district court had no jurisdiction over taxpayers' claim for equitable relief." *Id.*

The Ninth Circuit's approach is consistent with Fifth Circuit precedent. When the Mississippi Attorney General sent an "administrative subpoena" to Google, Google sought a preliminary injunction in federal court. *Google, Inc. v. Hood*, 822 F.3d 212, 218 (5th Cir. 2016). The Fifth Circuit held that "the administrative subpoena [wa]s not ripe for review." *Id.* at 226. The Mississippi Attorney General could not enforce the subpoena himself. If Google refused to comply, he would have to begin judicial proceedings. If the Attorney General ever brought "an enforcement proceeding," Google could "raise its objections to the administrative subpoena" there. *Id.* at 225. As a result, the court found "no reason why a state's non-self-executing subpoena should be ripe for review," especially because "comity should make us less willing to intervene when there is no current consequence for resisting the subpoena and the same challenges raised in the federal suit could be litigated in state court." *Id.* at 226.

Twitter admits that its claim is "premature" under *Google*. ECF 5 at 17 n.7. And Twitter does not try to distinguish *Google*. Indeed, it acknowledges that the CID it received is also not self-executing and that CPD "has not yet sued to enforce it." ECF 5 at 16. Instead Twitter argues that *Google* "is not binding" in the Ninth Circuit, ECF 5 at 17 n.7. It makes no mention of *Zimmer* or the in-circuit precedent applying *Google*. *See Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1026–28 (E.D.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Cal. 2017) (applying *Google v. Hood* to conclude that a Section 230 defense was "not ripe for review").[2]

Tenth Circuit precedent is similar. The recipient of a non-self-executing subpoena is "not exposed to the type of immediate, irreparable injury necessary to justify jurisdiction." *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 335 (10th Cir. 1984).

Under these cases, Twitter cannot challenge the non-self-executing CID at issue in this case. Nor can Twitter challenge Defendant's decision to investigate. In *Laird v. Tatum*, the Supreme Court considered "whether the jurisdiction of a federal court may be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose." *Laird v. Tatum*, 408 U.S. 1, 10 (1972). It said no. The propriety of such investigations is not "a case for resolution by the courts." *Id.* at 15; *see also Google, Inc.*, 822 F.3d at 227. The same is true here.

## II.     Twitter Has Not Established Personal Jurisdiction

Defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). This "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"—the Office of the Attorney General, an agency of the *Ky. v. Graham*, 473 U.S. 159, 166 (1985). Thus, Twitter "bears the burden of establishing that jurisdiction [over the Office of the Attorney General] is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute is limited by the principles of due process. *See* Cal. Civ. Proc. Code § 410.10 (Deering). To satisfy due process, a defendant must be subject to either

---

[2] Twitter cites *Sampson v. Cnty. of L.A. ex rel. L.A. Cnty. Dep't of Children & Family Servs.*, 974 F.3d 1012, 1017 (9th Cir. 2020), but in that case about a child-custody dispute, the defendant had instituted legal proceedings. The court had no occasion to consider a non-self-executing administrative subpoena.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

3                                          Case No. 3:21-cv-1644-MMC
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

general jurisdiction within a state or have "certain minimum contacts with [a state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted).

## A.   This Court Lacks General Personal Jurisdiction Because A Texas Agency Is Not "At Home" In California

General personal jurisdiction is a non-starter. That doctrine asks whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). The Office of the Attorney General *of Texas* is "at home" in Texas, not California. *See* Tex. Const. art. III, § 58 (declaring Austin, Texas, is the seat of government). Plaintiff does not appear to disagree. The Complaint contains no allegations of any "continuous and systematic" affiliations that could give rise to general personal jurisdiction. *See Turner v. Abbott*, 53 F. Supp. 3d 61, 67 (D.D.C. 2014) (rejecting general personal jurisdiction over the Texas Attorney General).

## B.   This Court Lacks Specific Personal Jurisdiction Because Twitter's Claim Is Based On Conduct In Texas

The Office of the Attorney General of Texas is also not subject to specific personal jurisdiction in California. Specific personal jurisdiction is proper only when the plaintiff's claim "aris[es] out of or relat[es] to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citation omitted).

In the Ninth Circuit, a three-prong test determines whether a defendant has the "minimum contacts" necessary for specific jurisdiction: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff makes a prima facie

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

showing as to those first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### 1. Investigating Twitter For Misleading Texas Consumers In Violation Of Texas Law Is Not Purposefully Directed Toward California

For specific personal jurisdiction to exist, the defendant must have "purposefully directed" its activities toward the forum or "purposefully availed" itself of "the privileges of conducting activities in the forum." "[P]urposeful availment" and "purposeful direction" are "two distinct concepts." *Id.*. The former applies to claims sounding in contract while the latter applies to claims sounding in tort. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Twitter's claim (to the extent it is cognizable at all) "is a constitutional tort." *Hartman v. Moore*, 547 U.S. 250, 262 n.9 (2006) (questioning "[w]hether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation"). Thus, the "purposeful direction" inquiry applies.

Purposeful direction can be shown in two ways, but neither applies here. First, the Ninth Circuit has said that "the commission of an intentional tort in a state is a purposeful act that will satisfy" the purposeful direction test. *Freestream Aircraft (Bermuda) Freestream Aircraft Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018). In this case, the Office of the Attorney General has not taken any action in California. Its investigation of Twitter is occurring in Texas, and the CID at issue was mailed from Texas. *See* ECF 5-1, Ex. E (envelope showing a return address inside Texas).

If, as here, the defendant's conduct "takes place *outside* the forum," it may constitute purposeful direction if the conduct "has effects inside the forum state." *Id.* at 604. This second method of showing purposeful direction is known as the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). *Axiom Foods, Inc.*, 874 F.3d at 1069. Even under the effects test, the inquiry turns on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In other words, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* In the end,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the question is whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), or whether the relationship to the forum is being driven by the plaintiff instead.

Here, the Office of the Attorney General of Texas has not "invoke[ed] the benefits and protections of [California's] laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). It has simply communicated with a Delaware company that operates in Texas and happens to have its headquarters in California. That is insufficient for specific personal jurisdiction.

1.      The Ninth Circuit has held "that use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state." *Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980). As a "general rule," "use of the mails" is "legally insufficient to satisfy the" purposeful availment requirement. *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (deciding the question "as a matter of law"). Similarly, "[a] cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo! Inc. v. La. Ligue Contre Le Racisme*, 433 F.3d 1199, 1208 (9th Cir. 2006).

Thus, "[t]he mere fact that [the defendant] communicated with [the plaintiff] in the state, and may have committed a tort in the exchange of correspondence, does not show that [the defendant] purposefully availed itself of the privilege of conducting business in California." *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1248 (9th Cir. 1984). When the plaintiff's decision to locate in "California force[s] [the defendant] to send mail to that State," the defendant has not purposefully availed itself of any benefits of operating in California. *Hunt*, 728 F.2d at 1248

2.      This rule applies with special force when a private litigant tries to hale a sovereign into court across state lines. Consider, for example *Morningside Church, Inc. v. Rutledge*, in which a Missouri church received both a CID from the Attorney General of Arkansas regarding alleged violations of Arkansas' DTPA and a subpoena and other communications from local California law-enforcement officials. *See Morningside Church v. Rutledge*, No. 3:20-cv-05050-MDH, 2020 WL 5077255 (W.D. Mo. Aug. 27, 2020), appeal docketed, No. 20-2954 (8th Cir. Sept. 18, 2020). When

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   the church sued those officials in Missouri, the court dismissed for lack of personal jurisdiction. The

2   "investigation did not purposefully avail [the official] to the benefits and protections of the forum

3   state to such a degree that her office should reasonably anticipate being haled into court" in Missouri.

4   *Id.* at *3.

5        Other courts also protect state officials from suits in foreign states. In *Michigan Coalition of*

6   *Radioactive Material Users, Inc. v. Griepentrog*, the Sixth Circuit held that Michigan lacked personal

7   jurisdiction over state officials from Nevada, Washington, and South Carolina based on mere in-state

8   communications. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174 (6th

9   Cir. 1992). "Telephone conversations and letters are insufficient to fulfill the [purposeful availment

10  requirement]." *Id.* at 1177. When state officials "have undertaken no economic activity in the [forum]

11  state," they have not purposefully availed themselves of any benefits of doing business in that state.

12  *Id.*

13       The distinction between a government defendant and a private defendant is "[a] significant

14  difference" because "the 'business' activity involved is the 'business' of government regulation."

15  *B&G Prod. Co. v. Vacco*, No. 0:98-cv-2436, 1999 WL 33592887, at *4 (D. Minn. Feb. 19, 1999). . In

16  *B&G Products*, the New York Attorney General had applied a New York environmental law to a

17  Minnesota company, including "through a Notice of Violation sent to the company office in

18  Minnesota." *Id.* at *1. When the company challenged that law in Minnesota, its case was dismissed

19  for lack of personal jurisdiction. As the court explained, "[i]n today's global economy, many of the

20  parties subject to [one state's] regulations will be companies located in other states or even other

21  countries." *Id.* at *4. "By merely regulating a Minnesota-based company, New York has not

22  subjected itself to lawsuit in the home state of one of its many regulatory targets." *Id.*

23       Perhaps the most detailed analysis of this issue occurred in *Stroman Realty, Inc. v. Wercinski*,

24  513 F.3d 476 (5th Cir. 2008). There, a Texas-based real estate company sued the Commissioner of

25  the Arizona Department of Real Estate, in her official capacity, claiming that her regulatory action

26  violated the Commerce Clause. *Id.* at 480–81. The Arizona Commissioner's sole contacts with Texas

27  were a cease-and-desist order and correspondence with the plaintiff's attorneys. *Id.* at 484. The Fifth

28  Circuit held that, in sending a cease-and-desist letter to a Texas resident, the Commissioner "was not

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

7                                          Case No. 3:21-cv-1644-MMC
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

1   engaged in commercial transactions to obtain a commercial benefit by acting in a governmental

2   capacity to enforce Arizona law." *Id.* at 485. The official thus had not "'purposefully availed' herself

3   of the benefits of Texas law like someone actually 'doing business' in Texas." *Id.* at 484.

4   The *Stroman* court rejected the plaintiff's argument that jurisdiction existed under the "effects

5   test" because the defendant's conduct was "targeted to affect an in-state plaintiff." *Id.* The court

6   reasoned that, while the "effects" of the Arizona official's enforcement activity were felt in Texas,

7   she was "not expressly aiming her actions at Texas." *Id.* at 485–86 (alterations and quotation marks

8   omitted). Rather, the state official was "essentially asserting nationwide authority over any real estate

9   transactions involving Arizona residents or property," meaning that "the only jurisdictional basis

10  [was] the alleged harm to a Texas resident." *Id.* at 486. That meant that the nexus to Texas was

11  "based entirely on the unilateral actions of [plaintiff], not [defendant]," since "it was [plaintiff] who

12  chose to market Arizona properties and transact business with Arizona residents" from Texas. *Id.*

13  "[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot

14  satisfy the requirement of contact with the forum State." *Id.* (quotation omitted).

15  Allowing "effects" jurisdiction based on such attenuated contacts would undermine state

16  sovereignty. *Id.* The Fifth Circuit declined "to establish . . . a broad principle" that would allow "any

17  state official seeking to enforce her state's laws" to "be subjected to suit in any state where the

18  validity of her state's laws were in question." *Id.* at 486–87.[3]

19  These cases foreclose personal jurisdiction over the Office of the Attorney General. It has not

20  undertaken economic activity in California. It has not even undertaken law-enforcement activity in

_____

21

22  [3] The Fifth Circuit recently distinguished Stroman where the New Jersey Attorney General had sought
    "to bar [a company] from publishing its materials anywhere, not just in New Jersey," thereby
23  "project[ing] himself across state lines and assert[ing] a pseudo-national executive authority that the
    public official in Stroman never asserted." *Def. Distributed v. Grewal*, 971 F.3d 485, 493 (5th Cir.
24  2020), *cert. filed*, No. 20-984 (U.S. Jan. 19, 2021). Here, Defendant is not attempting to regulate out-
    of-state activity. The DTPA applies to "trade or commerce directly or indirectly affecting the people
25  of this state," Tex. Bus. & Com. Code Ann. § 17.45(6) (West), not out-of-state transactions affecting
    non-residents. *See, e.g.,* D*eburro v. Apple, Inc.,* No. A-13-CA-784-SS, 2013 WL 5917665, at *5 n.5
26  (W.D. Tex. Oct. 30, 2013); *Bass v. Hendrix*, 931 F. Supp. 523, 536 (S.D. Tex. 1996); *Birdsong v.
    Toyota Motor Credit Corp.*, No. 2000-C1-0629, 2002 WL 32830975 (Tex. Dist. May 15, 2002)' s*ee
27  also Blake Marine Grp., L.L.C. v. Frenkel & Co.*, 439 F. Supp. 3d 249, 254 (S.D.N.Y. 2020).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

California. All it has done is send an investigatory request to a company that happens to be headquartered in California.

3.      Even when the defendant is not a sovereign state's official, mailing a legal demand into a forum state is not enough to support specific personal jurisdiction. In intellectual-property disputes, it is common for the rights-holder to send a cease-and-desist letter to an alleged infringer in another state. But such cease-and-desist letters, though they threaten enforcement of intellectual property rights, do not constitute purposeful availment of the infringer's state.

For this reason, the Ninth Circuit rejected personal jurisdiction based on "a number of letters written by the defendant to the plaintiff contending that plaintiff was infringing defendant's patent." *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 37–38 (9th Cir. 1980); *see also Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379–80 (9th Cir. 1981).

The Federal Circuit has reached the same result: "[I]t is improper to predicate personal jurisdiction on the act of sending ordinary cease and desist letters into a forum, without more." *New World Int'l, Inc. v. Ford Glob. Techs., L.L.C.*, 859 F.3d 1032, 1038 (Fed. Cir. 2017); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998); *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011); *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006).

The Tenth Circuit applies the same rule. In *C5 Medical Werks, LLC v. CeramTec GMBH*, the court "agree[d] with the Federal Circuit that a single cease-and-desist letter is insufficient to confer jurisdiction in a declaratory judgment action like this one." *C5 Med. Werks v. CeramTec GmbH*, 937 F.3d 1319, 1324 (10th Cir. 2019). The reason is that "merely interacting with a plaintiff known to bear a strong connection to the forum state is not enough to establish jurisdiction." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

In intellectual-property disputes, "principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *New World Int'l, Inc.*, 859 F.3d at 1038 (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998)). "[T]he relevant inquiry for

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

specific personal jurisdiction" is "to what extent has the defendant purposefully directed *enforcement activities* at residents of the forum." *J.M. Smucker Co. v. Hormel Food Corp.*, No. 5:20-cv-1132, 2021 WL 1022452, at *5 (N.D. Ohio Mar. 16, 2021) (alterations omitted). "The mere sending of cease and desist letters is insufficient," but "judicial or extra-judicial enforcement activities within the forum" may suffice. *Id.*

The same logic applies outside of intellectual-property cases. *See Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 542 (5th Cir. 2019); *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3d Cir. 2008) (rejecting personal jurisdiction based on "a cease and desist letter").

This case follows *a fortiori*. The Office of the Attorney General did not even send a letter demanding that Twitter "cease and desist" from violating the law. Instead, it merely began an investigation and requested documents to further that investigation. Defendant certainly did not undertake any enforcement activities in California. Indeed, the purpose of Twitter's suit is to prevent Defendant from undertaking enforcement activities *in Texas*. *See* ECF 1 ¶¶ 69–70. To whatever extent private companies seeking to enforce intellectual property rights are entitled to communicate across state lines without subjecting themselves to personal jurisdiction, a sovereign state agency must be afforded even wider latitude.

### 2. Twitter's Claim Does Not Arise Out Of Or Relate To Any California Contacts

The Office of the Attorney General is not subject to personal jurisdiction for a second, independent reason: Twitter's claim does not "arise[] out of or relate[] to the defendant's forum-related activities." *Axiom Foods, Inc.*, 874 F.3d at 1068.

Twitter's lawsuit is designed to prevent the Office of the Attorney General from taking action in Texas, not California. For example, Twitter prays that this Court will enjoin the Office of the Attorney General "from initiating any action to enforce the CID." ECF 1 ¶¶ 69–70. If Defendant decided to initiate such an action, it would occur in a Texas state court, not in California. *See* Tex. Bus. & Com. Code Ann. § 17.62 (West). Twitter also seeks to enjoin the Office of the Attorney General "from initiating any action . . . to further the . . . investigation into Twitter." ECF 1 ¶¶ 69–70. Exactly what Twitter wants enjoined is not clear, but that investigation is being conducted in Texas,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  not California. *See* ECF 1-1 (CID explaining that "the requested materials may be sent to" the Office

2  of the Attorney General in Austin, Texas).

3       Moreover, the gravamen of Twitter's retaliation claim is its erroneous assertion that the

4  Attorney General has a retaliatory motive for investigating Twitter. *See* ECF 1 ¶ 1. But even on

5  Twitter's theory of the case, the Attorney General's supposed motive was formed in Texas, not

6  California.

           **3.**      **Exercising Personal Jurisdiction Over A Texas State Agency Would Be**
7                        **Unreasonable**

8

9       Lastly, the exercise of specific jurisdiction must be reasonable. To determine the

10  reasonableness of the forum the court considers: "(1) the extent of a defendant's purposeful

11  interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with

12  the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5)

13  the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

14  plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

15  *Burger King Corp.*, 471 U.S. at 476–77.

16       Under these factors, exercising personal jurisdiction over a Texas agency would be

17  unreasonable. First, for the reasons explained above, the Office of the Attorney General has not

18  purposefully availed itself of California's laws. By investigating whether Twitter violated a Texas

19  law by misleading Texas consumers, a Texas governmental agency did not "step outside the

20  exclusive protection of [its] own state and engage in activities touching another sovereignty." *Ins. Co.*

21  *of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1272 (9th Cir. 1981) (describing what "[t]he

22  purposeful interjection component of our analysis requires"). But even if mailing a CID to California

23  qualified, "the slightness of the purposeful interjection militates against the reasonableness of

24  jurisdiction." *Id.* at 1271.

25       Second, the burden of litigating in California is significant. California courts agree that "[t]he

26  burden on [the State of Texas and a health center it owned] to defend against . . . claims in California

27  would be considerable." *Stone v. Tex.*, 76 Cal. App. 4th 1043, 1050 (1999). This Court's local rules

28  have already required Defendant to engage the services of California attorneys. *See* ECF 36.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Requiring employees of the Office of the Attorney General to travel to California for litigation would

2  further burden taxpayer resources. The doctrine of personal jurisdiction "protects the defendant

3  against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp.*

4  *v. Woodson*, 444 U.S. 286, 292 (1980).

5        Third, "requiring [Texas] to submit to California jurisdiction constitutes an extreme

6  impingement on state sovereignty." *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1190 n.8

7  (C.D. Cal. 2000). The "sovereign status of a defendant militates against the reasonableness of

8  jurisdiction." *Ins. Co. of N. Am.*, 649 F.2d at 1272 (recognizing the "higher sovereignty barrier" of a

9  foreign nation but refusing to "minimize the sovereignty of the states within our federal system").

10  The Office of the Attorney General should not "have to defend [its] attempt to enforce [Texas] laws

11  in courts throughout the nation." *Stroman Realty, Inc.*, 513 F.3d at 487. Texas, "as a sovereign, has a

12  strong interest in not having an out-of-state court evaluate the validity of its laws." *Id.* Surely Texas

13  courts have the best claim to reviewing the lawfulness of actions taken by Texas state agencies.

14        Fourth, California's interests in this case are minimal. This case concerns enforcement of a

15  Texas statute, not a California statute. Twitter's claim is based on the federal Constitution, which

16  applies equally across the country, not the California Constitution. And while Twitter has its principal

17  place of business in California, in fact, "Twitter is a Delaware corporation." ECF 1 ¶ 11. Twitter is a

18  helpless California citizen that needs the protection of the State of California.

19        Fifth, resolving this case in Texas promotes judicial efficiency. Twitter's claim requires

20  consideration of the Texas DTPA as well as the workings of the Office of the Attorney General.

21  Texas judges are more likely to be familiar with both of those topics than California judges are. *See*

22  *Leroy v. Great W. United Corp.*, 443 U.S. 173, 186 (1979) ("[F]ederal judges sitting in Idaho are

23  better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of

24  that law, than are judges sitting elsewhere.").

25        Sixth, if its claim were meritorious, Twitter would be perfectly capable of "obtaining

26  convenient and effective relief" in Texas. *World-Wide Volkswagen Corp.*, 444 U.S. at 292. Having to

27  litigate personal jurisdiction and venue in California (including in any potential appeal) would make

28  this case less convenient and any relief ordered potentially ineffective. But personal jurisdiction and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

venue could undoubtedly be established in Texas courts. Litigating there would streamline the issues and reduce the arguments against the effectiveness of any relief ordered. *See Ins. Co. of N. Am.*, 649 F.2d at 1273 (noting that a defendant's sovereign-immunity objection to litigating in one forum would render it less "effective" for the plaintiff). In any event, this factor is "less weighty" in this case because Twitter "has the power to select a different forum." *Id.* (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

Seventh, Twitter has not argued that an alternative forum is unavailable. *Id.* (noting that the plaintiff bears the burden). Texas courts provide a perfectly good forum for resolving challenges to CIDs. Indeed, Texas law establishes multiple methods of bringing the validity of a CID before a state court, including the opportunity to contest the validity of the CID in Travis County, Texas. *See* Tex. Bus. & Com. Code Ann. §§ 17.61(g), 17.62(b) (West).

**C.      The Office Of The Attorney General Has Not Consented To Personal Jurisdiction**

Twitter erroneously claims that Defendant consented to venue and jurisdiction by agreeing to the boilerplate Twitter terms of service.  ECF 1 ¶ 9.

The terms state that they "govern your access to and use of our services," ECF 5-3, Ex. K (p. 109 of 127), and that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum." *Id.* (p. 117 of 127).

Twitter's terms of service do not apply here because this case is not about Defendant's "access to and use of [Twitter's] services." *Id.* (p. 109 of 127). This case is not about a subject governed by Twitter's terms of service, so it is not a "dispute[] related to th[o]se terms of service." *Id.* (p. 117 of 127). Claims for breach of an agreement may be subject to that agreement's forum-selection clause, but claims based on other sources of law are not. *See Orange, S.A. v. U.S. Dist. Court*, 818 F.3d 956, 962 (9th Cir. 2016) (refusing to apply a forum-selection clause because the plaintiff brought "claims for violations of [a statute and state common law]" rather than a claim "for breach of the [agreement with the form-selection clause]"). In this case, Twitter brings a constitutional claim, not a claim for breach of the terms of service. *See* ECF 1 at 15.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   To be sure, the CID requested a copy of Twitter's terms of service as part of investigating

2   whether Twitter has misled Texas consumers, *see* ECF 1-1, Ex. 1, Ex. C, but Twitter already

3   produced that information, *see* ECF 1 ¶ 55 (discussing Twitter's "voluntary productions," including

4   the "Terms of Service"). Twitter is not trying to claw that production back. Instead, it hopes that this

5   lawsuit will forestall any need to produce additional documents.

6   But even if the terms of service otherwise applied, they would not apply to a state agency like

7   the Office of the Attorney General. The terms of service themselves acknowledge that "[i]f you are a

8   federal, state, or local government entity in the United States using the Services in your official

9   capacity and legally unable to accept the controlling law, jurisdiction or venue clauses above, then

10   those clauses do not apply to you."  ECF 5-3, Ex. K (p.118 of 127). Texas statutes establish the

11   appropriate fora for resolving Twitter's claim. *See* Tex. Bus. & Com. Code Ann. § 17.61(g) (West)

12   ("the district court in the county where the parties reside, or a district court of Travis County"); *id.* §

13   17.62(b) (West) ("the district court in the county in which the person resides, is found, or transacts

14   business"). The Office of the Attorney General could not countermand those statutes by establishing

15   a Twitter account.

16   * * *

17   For all these reasons, this court lacks general and specific jurisdiction and should dismiss this

18   action pursuant to Rule 12(b)(2).

19   **III.    Venue In California Is Improper**

20   Defendant also moves to dismiss because venue is improper. *See* Fed. R. Civ. P. 12(b)(3); 28

21   U.S.C. § 1406(a). Venue requirements serve "to protect the defendant against the risk that a plaintiff

22   will select an unfair or inconvenient" forum. *Leroy*, 443 U.S. at 183–84. As a result, Twitter has the

23   burden of showing that venue is proper in the Northern District of California. *See Piedmont Label Co.*

24   *v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

25   "When venue is challenged, the court must determine whether the case falls within one of the

26   three categories set out in § 1391(b)." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 56

27   (2013). "[P]leadings need not be accepted as true, and facts outside the pleadings may be considered."

28   *Doe 1 v. AOL L.L.C.*, 552 F.3d 1077, 1081 (9th Cir. 2009).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

14                                Case No. 3:21-cv-1644-MMC
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

In this case, Twitter invokes Section 1391(b)(2). *See* ECF 1 ¶ 10. That provision provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

This venue analysis "require[s] courts to focus on relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).[4] "[F]or venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 5:11-cv-02460-LHK, 2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

Here, the controlling case is *Leroy*, 443 U.S. 173. There, a Texas corporation filed suit against Idaho officials in Texas federal court. It challenged an Idaho statute that restricted its activities in Texas. The Court held that the suit had "only one obvious locus—the District of Idaho." *Id.* at 185. "[T]he basis for [the Texas corporation's] federal claim" was "action that was taken in Idaho by Idaho residents," namely "the enactment of the statute by the legislature, the review of [the Texas corporation's] filing, the forwarding of the comment letter by [an Idaho official], and the entry of the order postponing the effective date of the tender by [an Idaho official]—as well as the future action that may be taken in the State by its officials to punish or to remedy any violation of its law." *Id.* at 185–86. Moreover, deciding the case "may well depend on a proper interpretation of [Idaho's] statute, and federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere." *Id.* at 186.

The fact that Texas was "where Idaho's statute had its impact on" the plaintiff was insufficient. *Id.* Relying on such a fact "would subject the Idaho officials to suit in almost every

---

[4] *See also Steen v. Murray* (*In re Steen*), 770 F.3d 698, 703 (8th Cir. 2014) (describing "decisions of our sister circuits agreeing with *Woodke*"); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003) ("[W]e approve of cases such as *Woodke*."); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–34 (2d Cir. 2005) (citing *Woodke* and *Jenkins* with approval); *Goff v. Hackett Stone Co.*, 185 F.3d 874, No. 98-7137, 1999 WL 397409 (10th Cir. June 17, 1999) (per curiam) (relying on *Woodke*).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

15                                                          Case No. 3:21-cv-1644-MMC
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

1    district in the country." *Id.* For those reasons, Idaho was the only proper venue under Section

2    1391(b). *See id.* at 187.

3        While Cal. Civ. Proc. Code § 1391(b)(2) (Deering) was amended in 1990, the amendment

4    does not change this analysis. The statutory amendment clarified that venue can be proper in multiple

5    districts. *Compare Leroy, 443 U.S.*, at 178 n.8 (quoting the pre-amendment statute as referring to "the

6    judicial district . . . in which the claim arose", *with* 28 U.S.C. § 1391(b)(2) (referring to "a judicial

7    district in which a substantial part of the events or omissions giving rise to the claim occurred"). But

8    that amendment does not affect the relevant portion of *Leroy*'s analysis. *Leroy* did not even decide

9    "whether [the pre-amendment statute] adopt[ed] the occasionally fictive assumption that a claim may

10   arise in only one district." *Leroy*, 443 U.S. at 184–85. The statutory amendment does not alter

11   *Leroy*'s analysis of which events matter (the regulatory and enforcement actions taken by the

12   defendant state agency) and where they are understood to have occurred (in the defendant state, not

13   the forum state). *See id.* at 185–86. Nor does it alter *Leroy*'s rejection of an approach that would

14   allow state officials to be sued "in almost every district in the country." *Id.* at 186.

15       Since the statute was amended, the Ninth Circuit has applied *Leroy* to protect a state agency

16   from improper venue. In *Dedication and Everlasting Love to Animals v. Commonwealth of*

17   *Pennsylvania, Bureau of Charitable Organizations*, a California non-profit group solicited donations

18   from citizens of Pennsylvania. *See* Order Granting Def.'s Mot. Dismiss for Improper Venue, No.

19   2:02-cv-6483, ECF 15 at 1–2 (C.D. Cal. Dec. 12, 2002). When a Pennsylvania state agency

20   "informed" the non-profit "that its mailings were insufficient under" Pennsylvania law, the non-profit

21   challenged the Pennsylvania law under the First Amendment in a California federal court. *Id.* at 2.

22   The district court held that venue was improper. "As in *Leroy*, any future enforcement actions would

23   take place in Pennsylvania and be initiated by Pennsylvania officials." *Id.* at 7. As a result, "the

24   entirety of the alleged conduct constituting infringement of Plaintiff's free speech . . . rights took or

25   will take place in Pennsylvania, not California." *Id.* According to that court, "federal judges in

26   Pennsylvania are better-suited to weigh the constitutionality of Pennsylvania law." *Id.* "Further, there

27   is an interest in preventing Pennsylvania officials from being haled into court in any state where a

28   resident's conduct in Pennsylvania subjects it to possible Pennsylvania enforcement action." *Id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

16                                                          Case No. 3:21-cv-1644-MMC

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

The Ninth Circuit affirmed. *See* 101 F. App'x 224, 2004 WL 1336737 (9th Cir. 2004). It agreed "that, because the acts complained of occurred or will occur in Pennsylvania, but not in California, California was an improper venue" and "that there is a valid 'interest in preventing Pennsylvania officials from being haled into court in any state where a resident's conduct in Pennsylvania subjects it to possible Pennsylvania enforcement action.'" *Id.* at 1 (citing *Leroy*, 443 U.S. 173).

The same reasoning applies to this case. None of the events giving rise to this lawsuit occurred in the Northern District of California. They occurred only in Texas. The Office of the Attorney General is in Texas. The DTPA was passed in Texas and is enforced there. The investigation was initiated in Texas. The CID was sent from Texas. If an enforcement action is necessary, it will be filed in Texas.

Furthermore, if Twitter's venue argument were accepted, it would lead to the same result *Leroy* rejected: state officials being subject to suit in every other state. The Office of the Attorney General has a duty to investigate potential DTPA violations that affect Texas consumers. The subject of a DTPA investigation could be headquartered anywhere. That is no reason to subject a state agency to suit everywhere.

Finally, Twitter suggests that the forum-selection clause in its terms of service makes venue proper in this district. That is wrong. First, as explained above, this case is not about Twitter's terms of service, and its forum-selection clause does not apply. *See supra* Part II.C. Second, "[w]hether the parties entered into a contract containing a forum selection clause has no bearing on whether a case falls into one of the categories of cases listed in Cal. Civ. Proc. Code § 1391(b) (Deering)." *Atl. Marine Constr. Co.*, 571 U.S. at 56. It therefore has no effect on whether venue is proper. *See id.*

## IV.    Venue In California Is Inconvenient

In the alternative, if the Court declines to dismiss this case, it should transfer venue to the Western District of Texas. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

In evaluating a motion to transfer, the Court engages in a two-part analysis. First, it must determine if the action could have been brought in the venue to which transfer is sought. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). This suit "might have been brought" in the Western District of Texas because it is "a judicial district in which [the] defendant resides" and because it is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1) - (2).

Second, the Court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co.*, 571 U.S. at 62. Here, the convenience of the defendant and witnesses strongly supports transfer. The Office of the Attorney General is a Texas state agency. The costs of litigating far from home would be borne by Texas taxpayers. And during this pandemic, traveling to California from another state is especially inconvenient. California's travel advisory provides that "[a]ll persons arriving in . . . California from other states . . . should self-quarantine for 10 days . . . after arrival, except as necessary to meet urgent critical healthcare staffing needs or to otherwise engage in emergency response."[5] Twitter and any California witnesses would face much less inconvenience coming to Texas. Californians arriving in Texas are not required to quarantine.[6]

The "[p]ublic-interest factors may include the administrative difficulties flowing from court congestion" and "the local interest in having localized controversies decided at home." *Id.* at 62 n.6 (quotation marks omitted). According to the latest caseload profiles, Northern District of California appears to have a heavier workload than the Western District of Texas does. In this district, getting a civil case from filing to disposition takes 11.4 months, getting it to trial takes 44.5 months, and 8.4 percent of civil cases are more than three years old.[7] In the Western District of Texas, by contrast,

---

[5] Cal. Dep't of Public Health, *Travel Advisory* (Jan. 6, 2021), https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19-Travel-Advisory.aspx.

[6] Office of the Governor, *Governor Abbott Issues Executive Order Terminating Air Travel Restrictions Related To COVID-19 Pandemic* (May 21, 2020), https://gov.texas.gov/news/post/governor-abbott-issues-executive-order-terminating-air-travel-restrictions-related-to-covid-19-pandemic.

[7] U.S. District Court—Judicial Caseload Profile: California Northern (p.66 of 95), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf. (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

18                                      Case No. 3:21-cv-1644-MMC

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

getting a civil case from filing to disposition takes 6.4 months, getting it to trial takes 20.4 months, and 4.8 percent of civil cases are more than three years old.[8] No one doubts that the judges on this Court work very hard to keep up with the caseload, but the fact remains that transfer is likely to result in a quicker resolution.

Finally, a dispute about the lawfulness of a Texas state agency's implementation of a Texas statute is intensely local. Texas has a strong interest in ensuring that a Texas court resolves this case.

## V.   The Court Should Abstain

The Court should abstain for two reasons. First, the Supreme Court's decision in *Railroad Commission of Texas v. Pullman Co.* requires abstention in this case. *R.R. Com. of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). "*Pullman* abstention is an equitable doctrine that comes into play when it appears that abstention may eliminate or materially alter the constitutional issue presented." *Ohio Bureau of Empl. Servs. v. Hodory*, 431 U.S. 471, 481 (1977). "Abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 814 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

Here, Twitter's federal constitutional claim depends on the (false) factual assertion that the Office of the Attorney General sent a CID based on a retaliatory motive rather than a good-faith belief that Twitter may have documents relevant to a potential violation of the DTPA. *See* ECF 1 ¶ 49. But if that were true, there would likely be no need to address the federal constitutional issue. The Texas statute authorizing CIDs applies only when "the consumer protection division *believes* that" the recipient may have documents "relevant to the subject matter of an investigation." Tex. Bus. & Com. Code Ann. § 17.61(a) (West) (emphasis added). On Twitter's theory, however, that requirement would seemingly not be satisfied.

---

[8]   U.S. District Court—Judicial Caseload Profile: Texas Western (p.37 of 95), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   "If there was no warrant in state law for the" issuance of the CID, that "is an end of the

2   litigation; the constitutional issue does not arise." *Pullman*, 312 U.S. at 501. As discussed above,

3   "[t]he law of Texas appears to furnish easy and ample means for determining" whether the CID was

4   lawful, including a potential "action on the part of the State to enforce obedience to the" CID. *Id.*

5   Second, the Court should exercise its discretion under the Declaratory Judgment Act to refrain

6   from deciding this case. *See* 28 U.S.C. § 2201(a) (providing that a court "may" issue a declaratory

7   judgment). "[A] suit for declaratory judgment aimed solely at wresting the choice of forum from the

8   'natural' plaintiff will normally be dismissed." *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir.

9   1995). Here, if either party is to be a plaintiff, the Office of the Attorney General is the more natural

10  choice. *See, e.g.,* Tex. Bus. & Com. Code Ann. § 17.62(b) (West) (authorizing an enforcement action

11  regarding a CID); *id.* § 17.47 (West) (authorizing the consumer protection division to seek a

12  restraining order for violations of the DTPA).

13  *Morningside Church, Inc. v. Rutledge* provides a useful example. *Morningside Church*, 2020

14  WL 5077255, appeal docketed, No. 20-2954 (8th Cir. Sept. 18, 2020). In that case, the plaintiffs

15  sought "prospective declaratory and injunctive relief pursuant to 42 U.S.C. § 1983" under the First,

16  Fifth, and Fourteenth Amendments against two California District Attorneys, the City Attorney for

17  the City of Los Angeles, and the Attorney General for the State of Arkansas. *Id.* at *1. The plaintiffs

18  argued that the "informational inquiries and document requests from Defendants investigating

19  constituent complaints of possible consumer fraud, as well as any action that may be taken in follow

20  up to those informational requests, infringe upon their" First Amendment rights. *Id.* The court found

21  abstention to be appropriate because the plaintiffs—who were on notice of the investigations in

22  California and Arkansas—chose to file the pre-enforcement suit in Missouri federal court rather than

23  respond to the CIDs. *Id*. at *4..

24  The same reasoning applies here. Twitter was aware of the investigation. Rather than comply

25  with the CID or challenge the CID in Texas state court, Twitter tried to preclude a potential

26  enforcement action in Texas state court by filing suit here. Twitter's strategic behavior, presumably

27  designed to avoid *Younger* abstention, highlights its effort to wrest the choice of forum from the

28  natural plaintiff.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1       Abstention is warranted here. The Court should therefore dismiss this case. *See Harris Cnty.*

2  *Comm'rs Court v. Moore*, 420 U.S. 77, 88 n.14 (1975) (explaining why abstention in favor of a Texas

3  court requires dismissal even though abstention in favor of other state courts requires only a stay).

4  **VI.    Conclusion**

5       Plaintiff Twitter's Complaint should be dismissed. In the alternative, it should be transferred

6  to the Western District of Texas.

7

8  DATED: March 29, 2021          Respectfully submitted.

9                                  */s/ Patrick K. Sweeten*

10                                 Patrick K. Sweeten
Deputy Attorney General

11                                 for Special Litigation
Ken Paxton

12                                 Attorney General of Texas
Brent Webster

13                                 First Assistant Attorney General
Grant Dorfman

14                                 Deputy First Assistant Attorney General
William T. Thompson

15                                 Deputy Chief, Special Litigation Unit
Ryan D. Walters

16                                 Special Counsel

17

18  Dated:  March 29, 2021          LEWIS BRISBOIS BISGAARD & SMITH LLP

19                                    */s/ Michael K. Johnson*

20                                 Michael K. Johnson
Attorneys for Defendant

21

22

23

24

25

26

27

28



Case No. 3:21-cv-1644-MMC

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

1

**CERTIFICATE OF SERVICE**
*Twitter Inc. v. Ken Paxton, et. al.*
USDC-ND, San Francisco Division, Case No. 3:21-cv-1644-MMC

2

3 STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

4

    At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

5

6

    On March 29, 2021, I served the following document:

7

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES**

8

9

    The document was served by the following means:

10 ☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to all persons registered by the Court to receive Notifications of Electronic Filing.

11

12

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

13

14 Dated:  March 29, 2021                */s/ Sandra Hayes*

                                       Sandra Hayes

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**CERTIFICATE OF SERVICE**