**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
PATRICK K. SWEETEN (*pro hac vice*)
   Email: patrick.sweeten@oag.texas.gov
WILLIAM T. THOMPSON (*pro hac vice*)
   Email: will.thompson@oag.texas.gov
RYAN D. WALTERS (*pro hac vice*)
    Email: ryan.walters@oag.texas.gov
P.O. Box 12548 (MC-009)
Austin, Tx 78711-2548
Tel.: 512.936.1414
Fax: 512936.0545

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
Michael K. Johnson, SB#130193
   Email: michael.johnson@lewisbrisbois.com
2185 N. California Blvd., Suite 300
Walnut Creek, CA 94596
Tel.: 925.357.3456
Fax: 925.478.3260

Attorneys for Defendant KEN PAXTON IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITTER, INC., <br><br>         Plaintiff, <br><br>    v. <br><br> KEN PAXTON, in his official capacity as Attorney General of Texas, <br><br>         Defendant. | CASE NO: 3:21-cv-1644-MMC <br><br> **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** <br><br> **Date:**     **May 7, 2021** <br> **Time:**     **9:00 a.m.** <br> **Crtrm:**   **7, 19th floor** |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

LEGAL STANDARD ............................................................................................................6

ARGUMENT .........................................................................................................................6

I.      Twitter Cannot Secure Injunctive Relief When Its Claim Should Be Dismissed...........6

II.     Twitter Is Not Likely to Succeed on the Merits ................................................................8

        A.      Section 1983 Does Not Support a "Retaliatory Investigation" Claim ......................8

        B.      Twitter Cannot Challenge an Ongoing Investigation..............................................10

        C.      Misleading Consumers Is Not Protected Speech ....................................................11

        D.      The CID Does Not "Chill" Speech .........................................................................13

        E.      Twitter Has Not Shown a Lack of Objective Cause to Investigate..........................13

        F.      Twitter Has Not Proven Retaliation ........................................................................16

III.    Twitter's Requested Injunction Does Not Redress Irreparable Injuries.......................17

        A.      Producing the Documents Would Not Irreparably Harm Twitter............................18

        B.      Refusing to Produce the Documents Would Not Irreparably Harm Twitter............20

        C.      A Preliminary Injunction Would Not Resolve Any Irreparable Harm ...................22

IV.     Plaintiffs' Proposed Injunction Is Overbroad ................................................................23

CONCLUSION.....................................................................................................................24


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**

2

**FEDERAL COURT CASES**

3

*Alvarez v. City of New York,*
  2 F. Supp. 2d 509 (S.D.N.Y. 1998) ........................................................................ 18, 19, 23

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.,*
  766 F.2d 715 (2d Cir. 1985) ................................................................................... 18, 23

*Am. Trucking Ass'n, Inc. v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009) ................................................................................. 6, 23

*And Coszalter v. City of Salem,*
  320 F.3d 968 (9th Cir. 2003) ................................................................................... 10

*Anheuser-Busch, Inc. v. FTC,*
  359 F.2d 487 (8th Cir. 1966) ................................................................................... 22

*Arellano v. Santos,*
  3:18-cv-2391, 2020 WL 6271031 (S.D. Cal. Oct. 26, 2020) ................................... 20, 21

*Atl. Richfield Co. v. FTC,*
  546 F.2d 646 (5th Cir. 1977) ................................................................................... 22

*Baumann v. District of Columbia,*
  655 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................ 18

*Belle Fourche Pipeline Co. v. United States,*
  751 F.2d 332 (10th Cir. 1984) ................................................................................. 21, 22

*Benningfield v. City of Houston,*
  157 F.3d 369 (5th Cir. 1998) ................................................................................... 8

*Bowles v. Glick Bros. Lumber Co.,*
  146 F.2d 566 (9th Cir. 1945) ................................................................................... 15

*Bowles v. Northwest Poultry and Dairy Products Co.,*
  153 F.2d 32 (9th Cir. 1946) ..................................................................................... 14, 15, 17

*Branzburg v. Hayes,*
  408 U.S. 665 (1972) ................................................................................................ 20

*Bronx Household of Faith v. Bd. of Educ. of City of New York,*
  331 F.3d 342 (2d Cir. 2003) ................................................................................... 19

*Campbell v. Feld Entm't Inc., Nos. 12-cv-4233-LHK & 13-cv-233-LHK,*
  2013 WL 4510629 (N.D. Cal. Aug. 22, 2013) ........................................................ 6

*Caribbean Marine Servs. Co., Inc. v. Baldrige,*
  844 F.2d 668 (9th Cir. 1988) ................................................................................... 24

*Chiafalo v. Inslee, for example,*
  224 F. Supp. 3d 1140 (W.D. Wash. 2016) .............................................................. 23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................................ 23

*Colo. River Indian Tribes v. U.S. Dep't of the Interior*,
    No. 2:12-cv--4291, 2012 WL 12894189 (C.D. Cal. May 24, 2012) ............................ 6

*Colson v. Grohman*,
    174 F.3d 498 (5th Cir. 1999) ....................................................................................... 8

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
    543 U.S. 157 (2004) ................................................................................................... 10

*Court. BASF Corp. v. Symington*,
    50 F.3d 555 (8th Cir. 1995) ......................................................................................... 8

*Elrod v. Burns*,
    427 U.S. 347 (1976) ................................................................................................... 20

*First Amendment. See Ariz. Students' Ass'n v. Arizona Bd. of Regents*,
    824 F.3d 858 (9th Cir. 2016) ..................................................................................... 16

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
    915 F. Supp. 2d 1138 (C.D. Cal. 2012) ...................................................................... 6

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980) ................................................................................................... 18

*Gealer v. United States*,
    No. CV 98–2321–WMB AJWX, 1998 WL 723152 (C.D. Cal. June 30, 1998) .......... 21

*Gini v. Las Vegas Metro. Police Dep't*,
    40 F.3d 1041 (9th Cir. 1994) ....................................................................................... 9

*Google, Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) ....................................................................................... 7

*Hartman v. Moore*,
    547 U.S. 250 (2006) ............................................................................................ passim

*Hohe v. Casey*,
    868 F.2d 69 (3d Cir. 1989) ......................................................................................... 19

*Howfield, Inc. v. United States*,
    409 F.2d 694 (9th Cir. 1969) ..................................................................................... 21

*Hunt v. Erie Ins. Grp.*,
    728 F.2d 1244 (9th Cir. 1984) ..................................................................................... 7

*Hyland v. Wonder*,
    972 F.2d 1129 (9th Cir. 1992) ..................................................................................... 9

*Hyster Co. v. United States*,
    338 F.2d 183 (9th Cir. 1964) ..................................................................................... 15



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                      iii                      Case No. 3:21-cv-1644-MMC
                                  DEFENDANT'S  RESPONSE IN OPPOSITION TO
                               PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
    538 U.S. 600 (2003) ...................................................................................................11, 12

*In re Ramirez*,
    905 F.2d 97 (5th Cir. 1990) ..........................................................................................22

*Jerry T. O'Brien, Inc. v. SEC*,
    704 F.2d 1065 (9th Cir. 1983), *separate holding rev'd on other grounds*, 467 U.S. 735
    (1984) ............................................................................................................................21

*John Doe Co. v. Consumer Fin. Prot. Bureau*,
    235 F. Supp. 3d 194 (D.D.C. 2017) ..............................................................................21

*Johnson v. Louisiana Department of Agriculture, in*,
    18 F.3d 318 (5th Cir. 1994) .....................................................................................10, 11

*Kelley v. United States*,
    503 F.2d 93 (9th Cir. 1974) ..........................................................................................21

*Latino Officers Ass'n v. Safir*,
    170 F.3d 167 (2d Cir. 1999) ..........................................................................................19

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979) ........................................................................................................7

*Lewis v. Casey*,
    518 U.S. 343 (1996) ......................................................................................................24

*Lopez v. Brewer*,
    680 F.3d 1068 (9th Cir. 2012) ........................................................................................6

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ........................................................................................................6

*McDonough v. Smith*,
    139 S. Ct. 2149 (2019) ..................................................................................................11

*Mendocino Envt'l Ctr. v. Mendocino Cty.*,
    192 F.3d 1283 (9th Cir. 1999) ......................................................................................20

*Milliken v. Bradley*,
    433 U.S. 267 (1977) ......................................................................................................24

*Miss. Rd. Supply Co. v. Walling*,
    136 F.2d 391 (5th Cir. 1943) .........................................................................................15

*Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior*,
    180 F.3d 1192 (10th Cir. 1999) ....................................................................................22

*Morgan Drezen, Inc., v. Consumer Fin. Prot. Bureau*,
    979 F. Supp. 2d 104 (D.D.C. 2013) ..............................................................................22

*Morningside Church, Inc. v. Rutledge*,
    No. 3:20-cv-5050, 2020 WL 5077255 (W.D. Mo. Aug. 27. 2020), *appeal docketed*,
    No. 20-2924 (8th Cir. Sept. 18, 2020) ...........................................................................7

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville,*
    896 F.2d 1283 (11th Cir. 1990) ........................................................................... 19

*Nieves v. Bartlett,*
    139 S. Ct. 1715, 1727 (2019) ............................................................................... 14

*Nunez v. City of Los Angeles,*
    147 F.3d 867 (9th Cir. 1998) ................................................................................. 9

*O'Keefe v. Chisholm,*
    769 F.3d 936 (7th Cir. 2014) ............................................................................... 22

*Office of the Attorney General. See Kentucky v. Graham,*
    473 U.S. 159 (1985) ............................................................................................. 14

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
    810 F.3d 631 (9th Cir. 2015) ............................................................................... 20

*Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.,*
    37 F.3d 1146 (5th Cir. 1994) ................................................................................. 8

*Powers v. Fallman,*
    38 F. App'x 429 (9th Cir. 2002) ........................................................................... 9

*Railroad Commission of Texas v. Pullman Co.,*
    312 U.S. 496 (1941) .......................................................................................... 1, 7

*Rehberg v. Paulk,*
    611 F.3d 828 (11th Cir. 2010), *aff'd*, 566 U.S. 356 ...................................... 8, 15

*Reichle v. Howards,*
    566 U.S. 658 (2012) ............................................................................................. 12

*Reisman v. Caplin,*
    375 U.S. 440 (1964) ............................................................................................. 21

*Relying on Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ............................................................................... 6

*Rendish v. City of Tacoma,*
    123 F.3d 1216 (9th Cir. 1997) ............................................................................. 17

*Roark v. United States,*
    6:12-CV-01354-AA, 2013 WL 1071778 (D. Or. Mar. 12, 2013) ......................... 9

*Sampson v. County of Los Angeles ex,*
    974 F.3d 1012 (9th Cir. 2020) ............................................................................. 10

*Sampson v. Murray,*
    415 U.S. 61 (1974) ............................................................................................... 18

*Shreves v. Harris,*
    No. 6:18-cv-97, 2020 WL 6074559 (D. Mont. Oct. 15, 2020) ........................... 19

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Stevenson v. City & County of S.F.*,
  No. 3:11-cv-4950-MMC, 2016 WL 2993104 (N.D. Cal. Mar. 29, 2016) ...................................19

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) .........................................................................................................6

*Stroman Realty, Inc. v. Wercinski*,
  513 F.3d 476 (5th Cir. 2008) ...........................................................................................................7

*Tah v. Global Witness Publishing, Inc., Judge Silberman*,
  No. 19-7132, 2021 WL 1045205 (D.C. Cir. Mar. 19, 2021) ............................................................4

*Thompson v. Hall*,
  426 F. App'x 855 (11th Cir. 2011).....................................................................................................8

*Timbisha Shoshone Tribe v. Kennedy*,
  687 F. Supp. 2d 1171 (E.D. Cal. 2009)............................................................................................23

*Trueman v. United States*,
  7:12-cv-73, 2015 WL 1456134 (E.D.N.C. Mar. 30, 2015) ..............................................................9

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ....................................................................................................................14

*Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994) ........................................................................................................................12

*Ulrich v. City and County of San Francisco*,
  308 F.3d 968 (9th Cir. 2002)...........................................................................................................10

*United States v. Chem. Found.*,
  272 U.S. 1 (1926) ............................................................................................................................15

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) ........................................................................................................................11

*Valley Indus. Services, Inc. v. EEOC*,
  570 F. Supp. 902 (N.D. Cal. 1983) ..................................................................................................21

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010)......................................................................................................2, 14

*Webster v. Fall*,
  266 U.S. 507 (1925) ........................................................................................................................10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................................................................6, 23

*Zhang v. Baidu.com Inc.*,
  10 F. Supp. 3d 433 (S.D.N.Y. 2014) ...............................................................................................12

*Zimmer v. Connett*,
  640 F.2d 208 (9th Cir. 1981) ............................................................................................................7

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                    vi                    Case No. 3:21-cv-1644-MMC
DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1

### STATE COURT CASES

2

*Calabria v. State Operated Sch. Dist. for City of Paterson*,
    No. 2:06-cv-6256, 2008 WL 3925174 (D.N.J. Aug. 26, 2008) ....................................9

3

*State v. Moody's Corp.*,
    No. HHD-CV-10-6008836-S, 2012 WL 2149408 (Conn. Super. Ct. May 10, 2012) ..........11, 12

4

5

*Yazid-Mazin v. McCormick*,
    No. 3:13-cv-5783, 2013 WL 5758716 (D.N.J. Oct. 24, 2013) ................................9

6

7

### STATUTORY AUTHORITIES

Tex. Bus. & Com. Code § 17.46(a).................................................4, 11

8

Tex. Bus. & Com. Code § 17.60............................................................16
Tex. Bus. & Com. Code § 17.61 ..........................................................4, 5

9

Tex. Bus. & Com. Code § 17.61(a).....................................................14, 16
Tex. Bus. & Com. Code § 17.61(g).....................................................5, 20

10

11

### FEDERAL RULES AND REGULATIONS

12

Fed. R. Civ. P. 65(d)(1) .......................................................................24

13

### ADDITIONAL AUTHORITIES

*, https://tinyurl.com/bye22ef3.* .............................................................3

14

*, https://tinyurl.com/fe8jw9e8.* .............................................................2

15

CID. See Twitter Transparency Center, *Information Requests, Jan-Jun 2020 Report,* ,

16

    https://tinyurl.com/z655dk4w. (January 11, 2021) .......................................13

17

Emily A. Vogels, *et al., Most Americans Think Social Media Sites Censor Political
    Viewpoints, Pew Research Center,* , https://tinyurl.com/dby38tzh. (August 19, 2020).................3

18

*https://www.bloomberg.com/quote/TWTR:US* (accessed March 29, 2021) ..............................16, 17

19

Kaitlyn Tiffany, *Twitter Goofed it, The Atlantic,* , https://tinyurl.com/3p24p9sh (Oct. 15,

20

    2020)...........................................................................................3

21

*New York Post article was widely panned by individuals on both sides of the political
    spectrum. See e.g., Letter from Sen. Ted Cruz to Jack Dorsey, CEO, Twitter, Inc.,* ,

22

    https://tinyurl.com/d5v7nw2m (Oct. 14, 2020).....................................................3

23

24

25

26

27

28



DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Twitter attempts to make a federal case out of a discovery dispute that—if it belongs in court at all—should be heard in Texas state court. Being asked to produce just five categories of documents does not burden the constitutional rights of a fifty-billion-dollar company. After initially producing documents in response to an investigative request, Twitter abandoned good-faith negotiations over its alleged concerns and ran to federal court.

As an initial matter, there is nothing for this Court to decide. Disputes about non-self-executing production requests are not ripe until someone tries to enforce the request by attaching legal consequences. That has not happened here. Under established Ninth Circuit precedent, this Court therefore lacks subject-matter jurisdiction.

If a dispute ever does ripen (and it may not), it would belong in a Texas state court, not a California federal court. Courts in California do not have general personal jurisdiction over the Office of the Attorney General of Texas. And the Office has not taken any enforcement actions in California that could justify specific personal jurisdiction. In any event, Twitter's claim implicates questions of Texas law that could moot any federal issues. For that reason, the Court should abstain under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

On the merits, Twitter cannot succeed. Even if Twitter has a First Amendment right to choose discriminatory content-moderation policies, the Constitution does not empower it to mislead consumers about those policies. Consumer-protection investigations of potential misrepresentations do not violate the First Amendment. And the Consumer Protection Division had good reason for investigating. Twitter has represented to consumers, Congress, the media, and the public that "Twitter does not use political viewpoints, perspectives, or party affiliation to make decisions, and we have taken several steps to ensure objective content moderation." Shaneyfelt Decl. Ex 4 at 7. But numerous reputable sources suggest Twitter is not abiding by that commitment and is violating Texas law. Asking Twitter to produce five categories of documents related to that issue is a standard investigative approach, not a threat to free speech.

## BACKGROUND

Twitter has repeatedly told Texas consumers two things: (1) that its content moderation

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                    1                    Case No. 3:21-cv-01644-MMC
DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

policies are objective and not viewpoint-discriminatory, and (2) that its content-moderation rules are transparent and publicly available. Twitter appears to emphasize these points to attract and retain users who they can monetize through targeted advertisements. But there is good reason to think Twitter misled Texas consumers with those claims. In the wake of allegations that Twitter was not living up to its representations, the Consumer Protection Division received complaints and sent a Civil Investigative Demand ("CID") pursuant to its authority under the Texas Deceptive Trade Practices Act ("DTPA").

Twitter's representations of neutrality and objectivity have been widely publicized. For example, in testimony before Congress, a Twitter representative said that the Twitter Rules "are not based on ideology or a particular set of beliefs. Instead, the Twitter Rules are based on behavioral contexts." Shaneyfelt Decl. Ex. 1. Twitter CEO Jack Dorsey has struck the same note. Speaking to CNN, he said, "Are we doing something according to political ideology or viewpoints? We are not. Period . . . We do not look at content with regards to political viewpoint or ideology. We look at behavior." Brian Stelter, *Twitter's Jack Dorsey: 'We are not' discriminating against any political viewpoint*, CNN, (Aug. 20, 2018)*, https://tinyurl.com/fe8jw9e8.*[1]

In addition to its public denial of viewpoint discrimination, Twitter claims that its content-moderation practices are transparent. Twitter testified before Congress that its "rules are laid out in detailed and plain language in [its] Help Center, which can be found at help.twitter.com." Shaneyfelt Decl. Ex. 1. Dorsey separately testified that "[i]t is critical that people understand our processes and that we are transparent about what happens as a result. Content moderation rules and their potential effects, as well as the process used to enforce those rules, should be simply explained and understandable by anyone. We believe that companies like Twitter should publish their moderation process. We should be transparent about how cases are reported and reviewed, how decisions are

---

[1] The Court should take judicial notice of this source "to indicate what was in the public realm at the time." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quotation omitted). But the Court cannot take judicial notice of the press reports Twitter cites for purposes of determining "whether the contents of those articles were in fact true." *Id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

made, and what tools are used to enforce." Shaneyfelt Decl. Ex. 2. Three weeks later, Dorsey testified before the Senate Judiciary Committee and assured the Senators that "the best way to address our mutually held concerns is to require the publication of moderation processes and practices." Shaneyfelt Decl. Ex. 3. Dorsey claimed that this goal was "achievable in short order." *Id.*

Last week, Dorsey again testified before Congress: "People who use our service should understand our processes—how potential violations of our rules are reported and reviewed, how content-related decisions are made, and what tools are used to enforce these decisions." Shaneyfelt Decl. Ex. 5.

But Twitter's professions of content neutrality and transparency have been questioned in multiple forums for several years. As Twitter itself acknowledges, "[c]omplaints that Twitter and other social media companies are biased against conservatives have proliferated among certain groups." ECF 1 ¶ 22. Media reports have asked, "is Twitter actively censoring certain political views?" Kalev Leetaru, *Is Twitter Really Censoring Free Speech?*, Forbes, (Jan 12, 2018)*, https://tinyurl.com/bye22ef3.* And "[r]oughly three-quarters of Americans (73%) think it is very or somewhat likely that social media sites intentionally censor political viewpoints they find objectionable." Emily A. Vogels, et al., *Most Americans Think Social Media Sites Censor Political Viewpoints*, Pew Research Center, (August 19, 2020), https://tinyurl.com/dby38tzh. That includes ninety percent (90%) of Republicans and Fifty-nine percent (59%) of Democrats. *Id.*

Members of Congress from both political parties have considered this worthy of investigation. Since 2018, Twitter has testified before committees in both the House and Senate—under both Republican and Democratic control—and has been questioned about apparent bias. *See e.g.*, Shaneyfelt Decl. Exs. 1–5. As just one of many examples, Twitter's complete ban of a URL from a *New York Post* article was widely panned by individuals on both sides of the political spectrum. *See e.g.*, Letter from Sen. Ted Cruz to Jack Dorsey, CEO, Twitter, Inc., (Oct. 14, 2020), https://tinyurl.com/d5v7nw2m; Kaitlyn Tiffany, *Twitter Goofed it*, The Atlantic, (Oct. 15, 2020), https://tinyurl.com/3p24p9sh ("Twitter's URL ban in particular raised alarm bells for those concerned with consistency and coherency in content moderation, and led to legitimate questions about how Twitter determined links [to the New York Post article] was uniquely bad."). Twitter was asked to

DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    answer these "legitimate questions" not once, but twice in three weeks before Congress. Shaneyfelt

2    Decl. Exhs. 2–4. And again, Dorsey was questioned before Congress, just *four* days ago. Shaneyfelt

3    Decl. Ex. 5.

4         Concerns about Twitter's bias in moderating content are shared by at least one respected

5    judge. In *Tah v. Global Witness Publishing, Inc.*, Judge Silberman described Twitter as "filter[ing]

6    news delivery in ways favorable to the Democratic Party." No. 19-7132, 2021 WL 1045205, at *18

7    (D.C. Cir. Mar. 19, 2021) (Silberman, J., dissenting) (citing Kaitlyn Tiffany, *Twitter Goofed It*, The

8    Atlantic (2020)). Reports of Twitter's alleged bias—despite its representations of neutrality—have

9    reached the Consumer Protection Division of the Office of Attorney General. Texas consumers have

10   submitted complaints against Twitter for allegedly biased, discriminatory, and unfair content

11   moderation practices and policies. Schuelke Decl. ¶ 2.  During the months surrounding the 2020

12   presidential election, complaints increased from Texas consumers about allegedly fraudulent and

13   unfair practices by Twitter and other Big Tech companies.

14        Not surprisingly, the Consumer Protection Division opened an investigation to determine if

15   Twitter's representations violated the DTPA. *See* Schuelke Decl. ¶ 3. The DTPA prohibits companies

16   from misleading Texas consumers: "False, misleading, or deceptive acts or practices in the conduct of

17   any trade or commerce are hereby declared unlawful and are subject to action by the consumer

18   protection division." Tex. Bus. & Com. Code § 17.46(a). To investigate potential violations of the

19   DTPA, the Consumer Protection Division can seek the production of documents through a CID. *See*

20   Tex. Bus. & Com. Code § 17.61. A CID can issue to any person "the consumer protection division

21   believes . . . may be in possession, custody, or control of the original copy of any documentary

22   material relevant to the subject matter of an investigation." *Id.* § 17.61(a).

23        A CID is not self-executing. The recipient faces no punishment for refusing to provide

24   documents based on good-faith objections. In fact, under Texas law a recipient has the option of

25   affirmatively challenging a CID in Texas state court or waiting for a potential enforcement action

26   brought by the Consumer Protection Division to raise its defenses. *See* Tex. Bus. & Com. Code §

27   17.61–.62.

28        If a recipient does decide to produce documents, the DTPA protects their confidentiality.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                          4                          Case No. 3:21-cv-1644-MMC
DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1  Documents can be disclosed only to an authorized employee of the Texas Attorney General, unless

2  disclosure is either "ordered by a court for good cause shown" or "necessary in the enforcement of"

3  the DTPA. *Id.* § 17.61(f).

4       The Consumer Protection Division issued a CID to Twitter on January 14, 2021 via U.S.

5  certified mail. Schuelke Decl. ¶ 4.  It sought just five categories of materials relevant to whether

6  Twitter had misled Texas consumers about its content moderation. *Id.* ¶¶ 5–6. Two of these requests

7  are also relevant to current investigations by the Consumer Protection Division into conduct by other

8  Big Tech companies. *Id.* ¶ 5.

9       Twitter's original deadline to respond was February 2, 2021. *See* Tex. Bus. & Com. Code §

10  17.61(g). But the Consumer Protection Division agreed to extend the deadline three separate times.

11  ECF 5-2, Decl. Schottlaender ¶¶ 4, 6, 8. Eventually, Twitter returned seeking a fourth extension. *Id.* ¶

12  8. It requested an additional two weeks, until March 12, 2021, to respond or object to the CID.

13  Schuelke Decl. ¶ 20. The Consumer Protection Division agreed to extend the deadline to March 8,

14  2021. It assured Twitter that it was open to further negotiations about the scope of the CID and

15  additional confidentiality protections Twitter sought, and it asked to set up a call the following week.

16  Schuelke Decl. ¶¶ 18–20.

17       But on March 8, 2021, Twitter did not respond to the CID. It did not request another

18  extension. It did not even respond to the Consumer Protection Division's request to set up a call to

19  negotiate. Nor did it object to the CID under the statutory process. *See* Tex. Bus. & Com. Code §

20  17.61(g) (authorizing a recipient to initiate proceedings in Austin, Texas).  Instead, without warning

21  and in the face of its pledges to "set up our next meet and confer," Schuelke Decl. ¶ 21,  Twitter

22  announced its intent to immediately file this suit in the Northern District of California seeking an

23  emergency temporary restraining order regarding document production. *Id.* ¶¶ 23–24. Twitter then

24  threatened to seek an emergency hearing that evening if the Consumer Protection Division did not

25  consent to a standstill agreement. *Id.* The parties then entered an agreement to allow additional time

26  for full briefing of the issues raised. *See* ECF 18.

27       Twitter's filings in this case corroborate the concerns about its truthfulness. Despite its oft-

28  repeated claims about the transparency of its content-moderation policies, Twitter now claims that

DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

"[d]isclosure . . . threatens [its] editorial discretion" because it relies on "sensitive internal deliberations over what discourse appears on the platform." ECF 1 ¶ 20.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal marks omitted) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam)). That burden is heavy: "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Id.* at 20; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Relying on *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), Twitter suggests a looser standard that requires only "serious questions" about the merits. ECF 5 at 10–11. But "this 'serious questions' standard is in tension with *Winter* and prior Ninth Circuit case law rejecting any earlier standards that are lower than the standard in *Winter*." *Campbell v. Feld Entm't Inc.*, Nos. 12-cv-4233-LHK & 13-cv-233-LHK, 2013 WL 4510629, at *4 (N.D. Cal. Aug. 22, 2013). Because of its obligation to follow the prior precedent, this Court did "not adopt the sliding scale standard set forth by the Ninth Circuit in *Alliance for the Wild Rockies*." *Id.* Other courts in this circuit have followed the same approach. *See, e.g.*, *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1141 n.6 (C.D. Cal. 2012) ("The Court will not apply the standard set forth in *Alliance for Wild Rockies*."); *Colo. River Indian Tribes v. U.S. Dep't of the Interior*, No. 2:12-cv--4291, 2012 WL 12894189, at *3 n.1 (C.D. Cal. May 24, 2012) (same).

## ARGUMENT

## I.    Twitter Cannot Secure Injunctive Relief When Its Claim Should Be Dismissed

Defendant has moved to dismiss Twitter's claim based on lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, and abstention. *See* Motion to Dismiss ("MTD") at 2–

DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

17, 19–21.  In the alternative, it has also moved to transfer this case to a more convenient venue. *See* MTD at 17–19. These defects in Twitter's claim both preclude issuance of a preliminary injunction on their own and demonstrate that Twitter is not likely to succeed on the merits.

Rather than burden the Court with duplicative briefing, Defendant will address these issues only briefly and incorporate by reference its Motion to Dismiss.

First, Twitter's claim is not ripe. *See* MTD at 2–3.  An agency's non-self-executing request for documents is not ripe for challenge in federal court until the agency brings an "enforcement proceeding." *Zimmer v. Connett*, 640 F.2d 208, 209 (9th Cir. 1981); *see also Google, Inc. v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016) (holding that a non-self-executing "administrative subpoena" was "not ripe for review").

Second, this Court lacks personal jurisdiction over the Office of the Attorney General of Texas. *See* MTD at 3–14. The closest thing the Office has to a contact with California is mailing the CID to Twitter's headquarters. "The mere fact that [the defendant] communicated with [the plaintiff] in the state, and may have committed a tort in the exchange of correspondence, does not show that [the defendant] purposefully availed itself of the privilege of conducting business in California." *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1248 (9th Cir. 1984). Courts are rightly reluctant to hale a sovereign entity into court across state lines without more significant in-state activity. *See, e.g., Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) (no personal jurisdiction against an out-of-state public official based on a cease-and-desist letter); *Morningside Church, Inc. v. Rutledge*, No. 3:20-cv-5050, 2020 WL 5077255 (W.D. Mo. Aug. 27, 2020), *appeal docketed*, No. 20-2924 (8th Cir. Sept. 18, 2020) (no personal jurisdiction against an out-of-state public official based on a CID under a state DTPA).

Third, venue is improper. *See* MTD at 14–17. As a Texas state agency, Defendant acts in Texas. Everything Twitter wants to enjoin would occur in Texas. Regulated entities cannot challenge one state's actions in every other state just because those actions can have an "impact" in other states. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 186 (1979).

Fourth, the Court should abstain. *See* MTD at 19–21. *Pullman* abstention is appropriate because, if Twitter could prove its assertions about a retaliatory motive, it would undermine the CID

DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   as a matter of state law, avoiding any need to address the federal constitutional questions presented.

2   Moreover, Twitter should not be allowed to "wrest[] the choice of forum from the 'natural' plaintiff"

3   by prematurely filing suit in this Court. *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995).

4   **II.     Twitter Is Not Likely to Succeed on the Merits**

5   **A.     Section 1983 Does Not Support a "Retaliatory Investigation" Claim**

6   Twitter has only one claim—"retaliatory investigation," ECF 1 at 15—but that is not a

7   cognizable claim under the First Amendment or Section 1983. Twitter suggests that any alleged

8   "[o]fficial reprisal" can support a retaliation claim. ECF 5 at 11 (quoting *Hartman v. Moore*, 547 U.S.

9   250, 256 (2006)). But *Hartman* expressly held open the question presented here: "Whether the

10  expense or other adverse consequences of a retaliatory investigation would ever justify recognizing

11  such an investigation as a distinct constitutional violation is not before us." *Hartman*, 547 U.S. at 262

12  n.9.

13  Numerous courts have foreclosed retaliatory-investigation claims. The Fifth Circuit, for

14  example, has "caselaw unequivocally holding that retaliatory criticisms, investigations, and false

15  accusations that do not lead to some more tangible adverse action are not actionable under § 1983."

16  *Colson v. Grohman*, 174 F.3d 498, 513 (5th Cir. 1999). Although an investigation "may chill

17  speech," it is "not actionable under our First Amendment retaliation jurisprudence." *Id.* at 512. In

18  public-employee retaliation cases, investigations "do not amount to adverse employment decisions"

19  even though they "may have had the effect of chilling [the plaintiff's] protected speech." *Pierce v.

20  Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994) (holding such

21  investigations are not "within the scope of harm actionable under the First Amendment"); *see also

22  Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) ("Although a reprimand can

23  constitute an adverse employment action, an investigation does not.").

24  The Eleventh Circuit applies the same rule. *See Rehberg v. Paulk*, 611 F.3d 828, 850 & n.24

25  (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012). Allegations that law enforcement officials "initiated and

26  carried out an investigation . . . in retaliation for . . . comments at [a] town hall meeting . . . . do not

27  establish a constitutional violation." *Thompson v. Hall*, 426 F. App'x 855, 858 (11th Cir. 2011) (per

28  curiam).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                        8                            Case No. 3:21-cv-1644-MMC
DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Courts around the country agree. *See Trueman v. United States*, 7:12-cv-73, 2015 WL 1456134, at *13 (E.D.N.C. Mar. 30, 2015), *aff'd*, 615 F. App'x 122 (4th Cir. 2015) ("The court agrees with these other courts that conducting a retaliatory investigation does not, in and of itself, form the basis of a constitutional tort."); *Yazid-Mazin v. McCormick*, No. 3:13-cv-5783, 2013 WL 5758716, at *4 n.5 (D.N.J. Oct. 24, 2013) ("Simply conducting a retaliatory investigation with a view to promote a prosecution does not state a claim under § 1983."); *Roark v. United States*, 6:12-CV-01354-AA, 2013 WL 1071778, at *5 (D. Or. Mar. 12, 2013) ("The only other court that has examined this issue held that a plaintiff cannot evince the existence of a constitutional tort based on a retaliatory investigation."); *Calabria v. State Operated Sch. Dist. for City of Paterson*, No. 2:06-cv-6256, 2008 WL 3925174, at *3 (D.N.J. Aug. 26, 2008) (declining "to consider Plaintiffs' retaliatory investigation claim" because Plaintiffs had not persuaded the court "that a retaliatory investigation may be actionable under a § 1983 action").

Although the Ninth Circuit has never decided whether "a retaliatory investigation" is "a distinct constitutional violation," *Hartman*, 547 U.S. at 262 n.9, it has held that not all retaliatory actions can support a First Amendment claim. For example, "[m]ere threats and harsh words are insufficient." *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998); *see also Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (holding defamation by a law-enforcement official was not sufficient). Ninth Circuit precedent requires "the loss of a valuable governmental benefit or privilege," but Twitter has not attempted to make that showing. *Hyland v. Wonder*, 972 F.2d 1129, 1136 (9th Cir. 1992) ("The critical question is simply whether Hyland has alleged the loss of a valuable governmental benefit or privilege in retaliation for his speech."); *see also Powers v. Fallman*, 38 F. App'x 429, 431 (9th Cir. 2002) (per curiam) (affirming this Court's dismissal of a First Amendment retaliation claim because of failure to allege "the loss of a valuable governmental benefit or privilege").

Ignoring these on-point authorities, Twitter cites a series of inapposite cases. *See* ECF 5 at 16. None of those cases involved a retaliation claim based on nothing more than a civil investigation. But even if one had, "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."



4811-7097-2131.1                                    9                          Case No. 3:21-cv-1644-MMC
DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1   *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S.

2   507, 511 (1925)).

3   For example, in *Sampson v. County of Los Angeles ex rel. Los Angeles County Department of*

4   *Children & Family Services*, a government agency instituted legal proceedings against a private

5   citizen and removed a child from her custody. *See* 974 F.3d 1012, 1017 (9th Cir. 2020). The

6   challenged retaliation was "falsely accusing [the plaintiff] of abuse and neglect and seeking to

7   remove [her niece] from her custody," not merely investigating. *Id.* at 1017–18. *Ulrich v. City and*

8   *County of San Francisco* found "adverse employment actions" based not only on an investigation but

9   also more substantive actions (*e.g.*, an "an adverse action report") that "marr[ed] [the plaintiff's]

10  employment record." 308 F.3d 968, 977 (9th Cir. 2002). And *Coszalter v. City of Salem* considered

11  whether alleged retaliation was "so insignificant that it does not deter the exercise of First

12  Amendment rights," 320 F.3d 968, 975 (9th Cir. 2003), not whether "a retaliatory investigation" is "a

13  distinct constitutional violation." *Hartman*, 547 U.S. at 262 n.9. And even then, it addressed "severe

14  retaliatory actions—such as instigating unwarranted criminal investigations"—not a non-self-

15  executing request for documents in a civil investigation. *Coszalter*, 320 F.3d at 975.

16  **B.   Twitter Cannot Challenge an Ongoing Investigation**

17  If retaliatory-investigation claims were cognizable, the elements would be determined by

18  analogy to retaliatory-prosecution claims. *See, e.g.*, *Hartman*, 547 U.S. at 252. In such cases, a

19  plaintiff must show that the allegedly retaliatory prosecution has been terminated in its favor.

20  Consider *Johnson v. Louisiana Department of Agriculture*, in which the Louisiana

21  Department of Agriculture had assessed penalties against Johnson for violating the state's pesticide

22  laws. 18 F.3d 318 (5th Cir. 1994). Suing "for malicious prosecution in violation of [his] First

23  Amendment rights," Johnson "allege[d] that the agriculture department continued citing him because

24  he refused to make a large enough contribution to the reelection campaign of [the] Agricultural

25  Commissioner." *Id.* at 320. The court first noted that "[w]hether the Constitution comprehends any

26  such claim is far from clear." *Id.* "But at the very least, if the First Amendment protects against

27  malicious prosecution, [the plaintiff] must not only allege a deprivation of a constitutional right, but

28  must also establish all of the elements of the common law tort action." *Id.* That includes "the

common law requirement that 'the underlying criminal proceeding . . . terminate in the plaintiff's favor.'" *Id.* at 320–21 (footnote omitted).

The same logic applies here. The Constitution does not comprehend a claim for retaliatory investigation, but if it did, the plaintiff would at least have to show that the investigation has been terminated in its favor. Twitter cannot make that showing. The investigation is ongoing because the Consumer Protection Division is still in the process of determining whether Twitter has violated the law.

Just as criminal defendants cannot use federal courts to collaterally attack ongoing or successful state prosecutions, Twitter should not be able to use this Court to collaterally attack an ongoing state investigation. *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019).

## C.    Misleading Consumers Is Not Protected Speech

Twitter's claim fails because Defendant's investigation is not based on constitutionally protected activity. The CID is part "of an investigation of possible violations of sections 17.46(a) 17.46(b) of the DTPA." Schuelke Decl. Ex. 1. That statute prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). As a result, the investigation does not target protected speech.

"[T]he First Amendment does not shield fraud." *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). "Untruthful speech, commercial or otherwise, has never been protected for its own sake." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). The Free Speech Clause is "no obstacle" to a state's prohibiting "deceptive or misleading" commercial speech. *Id.* "The First Amendment, as we construe it today does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." *Id.*

Twitter does not argue to the contrary. Instead, it argues that its content-moderation decisions are protected by the First Amendment. *See* ECF 5 at 12–15. But even assuming that is true, it is irrelevant. Defendant is not investigating Twitter's content-moderation policies *per se*. It is investigating whether Twitter has misled consumers about those policies.

When the State of Connecticut sued a ratings agency under its Unfair Trade Practices Act, the company argued that its "ratings opinions" were "protected speech." *State v. Moody's Corp.*, No.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   HHD-CV-10-6008836-S, 2012 WL 2149408, at *9 (Conn. Super. Ct. May 10, 2012). But the State

2   was "not challenging the substance of [those] ratings," only the company's "statements about its

3   independence and objectivity and the policies and procedures it claims to follow to protect those

4   qualities." *Id.* "While the actual opinions . . . may enjoy First Amendment protection, that protection

5   does not give [companies] license to misrepresent to consumers the manner in which they operate

6   their business or arrive at their opinions." *Id.* The same is true here.

7          Of course, Twitter's content-moderation decisions are relevant to whether Twitter misled

8   consumers about those decisions. In contexts like this, "speech provides evidence of" law-breaking.

9   *Reichle v. Howards*, 566 U.S. 658, 668 (2012). Law-enforcement officials' "consideration of speech"

10  is therefore "wholly legitimate." *Id.*; *see also Telemarketing Assocs.*, 538 U.S. at 622–23

11  (distinguishing between impermissibly "compel[ling] every fundraiser to disclose its fee

12  arrangements at the start of a telephone conversation" and permissibly "tak[ing] fee arrangements

13  into account in assessing whether particular affirmative representations designedly deceive the

14  public").

15         Neither Twitter's motion nor its authorities address this crucial distinction. *See, e.g.*, *Zhang v.*

16  *Baidu.com Inc.*, 10 F. Supp. 3d 433, 439 n.4 (S.D.N.Y. 2014) (declining to consider "whether a

17  search engine could be held liable for false statements concerning its methodology or search results").

18         Moreover, Twitter overstates First Amendment limitations on the regulation of its business. If

19  Texas had sought to prevent Twitter from engaging in viewpoint discrimination (rather than

20  investigating its misrepresentations), the First Amendment would not be the insuperable obstacle

21  Twitter claims. As the Supreme Court has recognized: "The potential for abuse of this private power

22  over a central avenue of communication cannot be overlooked. The First Amendment's command

23  that government not impede the freedom of speech does not disable the government from taking steps

24  to ensure that private interests not restrict, through physical control of a critical pathway of

25  communication, the free flow of information and ideas." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S.

26  622, 657 (1994).

27         ///

28         ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**D.      The CID Does Not "Chill" Speech**

2        As discussed above, the CID includes only five requests for documents. Twitter suggests that

3   the CID would chill a person of ordinary firmness because of the alleged need "to hire outside

4   counsel." ECF 5 at 16 n.5. But the question is not whether an ordinary private citizen would find a

5   CID burdensome. The question is whether a company of ordinary firmness *in Twitter's position*

6   would find a CID burdensome. Twitter is worth tens of billions of dollars. Yahoo! Finance, Twitter,

7   Inc., (TWTR), Statistics, Valuation Measures Chart at close: 4:03PM EDT (March 29, 2020),

8   https://finance.yahoo.com/quote/TWTR/key-statistics/. It regularly produces documents, including in

9   response to this very CID. *See* Twitter Transparency Center, *Information Requests, Jan-Jun 2020*

10  *Report*, (January 11, 2021), https://tinyurl.com/z655dk4w. In fact, Twitter itself reports that it

11  received 2,548 federal and 881 state or local information requests in a six-month period. *Id.* And as

12  set forth above, for several years Twitter faced scrutiny and criticism based on its moderation policies

13  from multiple quarters, including Congress, the public, the media, and courts. To now claim the

14  burden of responding to a single CID seeking five categories of documents would be so burdensome

15  as to "chill" a company in Twitter's position is risible.  For Twitter, it is business as usual.

16        Twitter also suggests that privacy concerns demonstrate that the CID is chilling. Not so. Texas

17  law provides robust privacy protections as a matter of course, and the Consumer Protection Division

18  has stated its willingness to negotiate a confidentiality agreement, just as it has with other companies

19  responding to CIDs. Schuelke Decl. ¶¶ 19, 25.

20        **E.      Twitter Has Not Shown a Lack of Objective Cause to Investigate**

21        As discussed above, the Court should not recognize a claim for retaliatory investigation, *see*

22  *supra* Part II, but to the extent it does, it should draw elements from retaliatory-prosecution cases.

23  *See, e.g., Hartman*, 547 U.S. at 252. In retaliatory-prosecution cases, courts require the plaintiff to

24  prove the absence of probable cause to prosecute. "[W]ant of probable cause must be alleged and

25  proven." *Id.* Courts considering retaliation claims require this objective evidence because retaliatory

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                     13                        Case No. 3:21-cv-1644-MMC
                          DEFENDANT'S  RESPONSE IN OPPOSITION TO
                    PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

"state of mind is 'easy to allege and hard to disprove.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725, 1727 (2019).[2]

*Hartman* required a no-probable-cause showing because two factors complicate causation in retaliatory-prosecution cases. First, the defendant with the allegedly retaliatory motive is often not the individual who initiated the prosecution. *See Hartman*, 547 U.S. at 262. Second, courts "do not lightly discard" "the longstanding presumption of regularity accorded to prosecutorial decisionmaking." *Id.* at 263.

Those same factors apply here. First, Twitter asserts that Ken Paxton as an individual has a retaliatory motive. *See* ECF 1 ¶ 9 (discussing use of a personal Twitter account). But Ken Paxton the individual is not a defendant, and he did not issue the CID. By suing Attorney General Paxton in his official capacity, Twitter has sued the Office of the Attorney General. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) (distinguishing "the statements of a particular President" from "the authority of the Presidency itself"). And the CID was issued by Brad Schuelke, an Assistant Attorney General, pursuant to a statute empowering "the consumer protection division," not the Office of the Attorney General as a whole. Tex. Bus. & Com. Code § 17.61(a). Thus, as in *Hartman*, "the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another." 547 U.S. at 262.

Second, the Ninth Circuit has long recognized a strong presumption of regularity for investigations by executive officials. In *Bowles v. Northwest Poultry and Dairy Products Co.*, 153 F.2d 32 (9th Cir. 1946), the Ninth Circuit considered the executive branch's effort to investigate a business's potential violation of a regulatory statute. The executive issued an "Inspection Requirement," demanding the business allow the government "to inspect and copy" certain business records. *Id.* at 33. When the business challenged that order, the court relied on "the well established

---

[2] In retaliatory-arrest cases, the plaintiff must show an objective absence of probable cause or "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* Twitter has not attempted either showing.

DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

presumption of regularity attending acts of administrative agencies." *Id.* at 34. "[T]he mere fact that the Administrator issued an inspection requirement is sufficient to show that he deemed the information sought here necessary or proper to aid in the administration and enforcement of the Act and that he has not acted oppressively or undertaken to pursue investigations where no need therefor is apparent." *Id.*

Similarly, in *Hyster Co. v. United States*, 338 F.2d 183 (9th Cir. 1964), the Ninth Circuit considered a civil investigative demand issued by the U.S. Attorney General. Because the Attorney General is "a public officer, exercising functions conferred upon him by law," "[t]here is no presumption that he will abuse his powers, quite the contrary[:] [t]here is a presumption that a public officer is acting lawfully." *Id.* at 186–87; *see also Bowles v. Glick Bros. Lumber Co.*, 146 F.2d 566, 571 (9th Cir. 1945) ("There is a presumption of regularity in respect of the proceedings of administrative bodies. Hence it is to be presumed that the Administrator has not acted oppressively or undertaken to pursue investigations where no need therefor is apparent.").

This is in keeping with the Supreme Court's broad understanding of the presumption of regularity. "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926). It is also in keeping with cases from other circuits. *See Miss. Rd. Supply Co. v. Walling*, 136 F.2d 391, 394 (5th Cir. 1943) (applying "[t]he presumption of regularity of the proceedings of public officers").

For the same reasons *Hartman* requires retaliatory-prosecution plaintiffs to show the absence of probable cause, Twitter must do the same here. Because Twitter has not even attempted to make that showing, it is not likely to succeed on the merits.

In fact, Twitter should have to show more than the absence of probable cause. Probable cause is required to initiate a prosecution, not to initiate an investigation. "The Constitution does not require evidence of wrongdoing or reasonable suspicion of wrongdoing by a suspect before the government can begin investigating that suspect." *Rehberg*, 611 F.3d at 850 n.24. For a CID, Texas law requires that "the consumer protection division believes that" the recipient "may be in possession, custody, or control of the original copy of any documentary material relevant to the subject matter of an

DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

investigation of a possible violation of" the DTPA. Tex. Bus. & Com. Code § 17.61(a). For this reason, Twitter should have to show that there was no objective basis for believing that it was in possession of relevant documents. It cannot make that showing. As detailed above, there was good reason to ask Twitter to produce relevant documents.

### F.    Twitter Has Not Proven Retaliation

Twitter has not shown (and cannot show) that the CID was issued for a retaliatory reason. Far from rebutting the presumption of regularity, plenty of objective evidence supported investigating Twitter and requesting documents.

First, Twitter has no evidence that General Paxton wanted to retaliate against it. General Paxton's alleged interest in the regulation of Big Tech companies is not proof of illicit motive. People across the political spectrum think such companies should be regulated in the public interest. And General Paxton's personal views on that question of public policy are themselves protected by the First Amendment. *See Ariz. Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (recognizing "issue-based advocacy" as "core political speech" protected by the First Amendment).

Second, the nature of the investigation further undermines any claim of retaliatory motive. The CID requested only five categories of documents. Schuelke Decl. Ex. 1. And the Consumer Protection Division agreed to negotiate in good faith regarding ways to narrow those requests. Schuelke Decl. ¶¶ 18–20, 25. The Consumer Protection Division has not even demanded sworn statements or sworn testimony from Twitter. *See* Tex. Bus. & Com. Code § 17.60.

The idea that five limited requests for documents could pressure a Twitter into altering its policies is facially implausible, as is the idea that a law enforcement agency would think otherwise. Last year, Twitter had annual revenue of over $3.7 billion and a market capitalization of almost $50 billion. It apparently plans to at least double its annual revenue in 2023. *See https://www.bloomberg.com/quote/TWTR:US* (accessed March 29, 2021). Sending the CID as "retaliation" for speech makes no sense because it would not lead to Twitter changing its policies. Sending the CID to gather information—as the Consumer Protection Division does regularly—makes

DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

perfect sense. Twitter cannot credibly impute such an illogical attempt at retaliation to General Paxton.

Third, Twitter acknowledges that the investigation is consistent with General Paxton's long-standing support for increased scrutiny of Twitter. *See* ECF 1 ¶¶ 23–25. Its claim that General Paxton was motivated by an illicit desire to suppress speech—rather than his well-known opinion on a question of public policy—is far-fetched. *See id.* ¶ 2.

Fourth, as explained above, the CID was issued by Brad Schuelke, an Assistant Attorney General. *See supra* Part II.E. Twitter has made no effort to connect its erroneous assertion of General Paxton's motive to the action taken by Mr. Schuelke.

Fifth, Twitter has not overcome the presumption of regularity, also discussed above. *See supra* Part II.E. The Ninth Circuit takes this presumption very seriously: "[T]he mere fact that [a government official] issued an inspection requirement is sufficient to show that he deemed the information sought here necessary or proper to aid in the administration and enforcement of the Act and that he has not acted oppressively or undertaken to pursue investigations where no need therefor is apparent." *Nw. Poultry & Dairy Prods. Co.*, 153 F.2d at 34. That is particularly true here because objective evidence supports the investigation. *See supra* Background.

## III.   Twitter's Requested Injunction Does Not Redress Irreparable Injuries

Twitter does not face any irreparable harm. All it has to do is make a choice: either produce the documents requested in the CID or refuse to do so. Producing responsive documents does not chill Twitter's First Amendment rights. Even if it did, Twitter would have an adequate remedy at law under either choice: stand on its objections, refuse to produce documents, and challenge the CID during any enforcement proceedings. In any event, even if Twitter faced irreparable injury, its proposed injunction would not redress that injury.

In the Ninth Circuit, "no presumption of irreparable harm arises in a First Amendment retaliation claim." *Rendish v. City of Tacoma*, 123 F.3d 1216, 1226 (9th Cir. 1997). Twitter's lack of evidence is therefore fatal.

///

///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

### A.    Producing the Documents Would Not Irreparably Harm Twitter

Complying with the CID would not cause irreparable harm. Twitter complains about "resource expenditure and other costs" of compliance, ECF 5 at 20, but those are not irreparable injuries. *See Sampson v. Murray*, 415 U.S. 61, 89–91 & n.68 (1974) (holding that "loss of earnings" is not "irreparable injury" in a wrongful-discharge case, despite an individual plaintiff's "insufficiency of savings or difficulties in immediately obtaining other employment."); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 766 F.2d 715, 721 (2d Cir. 1985) ("[An employee's] financial difficulties resulting from his discharge are not sufficient to establish irreparable injury.").

Even when an administrative process advances beyond mere investigation, "the expense and disruption of . . . protracted adjudicatory proceedings" is not "irreparable harm," regardless of whether they are "substantial." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980). *A fortiori*, the costs attendant to investigation are not irreparable injury either. *See Baumann v. District of Columbia*, 655 F. Supp. 2d 1, 8 n.3 (D.D.C. 2009) (holding that "having to spend . . . time answering questions pursuant to the Internal Affairs investigation . . . cannot be considered irreparable"); *Alvarez v. City of New York*, 2 F. Supp. 2d 509, 514 (S.D.N.Y. 1998) ("I am not persuaded that the mere initiation of an internal investigation itself would cause irreparable harm.").

That makes sense. The Supreme Court is not even sure "[w]hether the expense or other adverse consequences of a retaliatory investigation" can support a constitutional claim at all. *Hartman*, 547 U.S. at 262 n.9.  And a merely cognizable injury is a far cry from an irreparable one.

Twitter also suggests that producing "confidential" documents might "chill" its First Amendment rights. *See* ECF 5 at 20–21. But this argument suffers from serious flaws. As an initial matter, Twitter has not proven that it will actually be "chilled." Twitter claims that the "CID has the *potential* to color Twitter's future content moderation decisions," but it does not assert, much less prove, that it will alter any content-moderation decision because of the CID. ECF 5-1, Williams Decl. ¶ 14 (emphasis added).

Indeed, Twitter's own rendition of the facts proves it is not chilled. According to Twitter, "AG Paxton has long disagreed with Twitter's content moderation decisions, and made that displeasure widely known." ECF 1 ¶ 3. In a section entitled "AG Paxton Attempts to Influence

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                    18                          Case No. 3:21-cv-1644-MMC
DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Twitter's Editorial Decisions," Twitter's complaint discusses actions as far back as 2018. *Id.* ¶¶ 22–31. But Twitter continued to moderate content according to its desired policies, despite its knowledge of Attorney General Paxton's alleged displeasure. *See id.* ¶¶ 36, 38. In short, Twitter "certainly has not acted like a person whose speech has been substantially deterred." *Alvarez v. City of New York*, 2 F. Supp. 2d 509, 514 (S.D.N.Y. 1998) (finding a lack of "irreparable harm" because the plaintiff had "publicly and vociferously" continued speaking, showing he had not been "chilled").

That a plaintiff *could* be chilled "as a theoretical matter" is not enough. *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999). "[T]his kind of conjectural chill is not sufficient to establish real and imminent irreparable harm." *Id.* Twitter cannot forgo evidence and rest on the assertion that this is a First Amendment case. *See* ECF 5 at 19–20.

True, courts often presume irreparable harm "[w]here a plaintiff alleges injury from a rule or regulation that directly limits speech." *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003). But "[t]he rationale behind these decisions was that chilled free speech . . . , because of [its] intangible nature, could not be compensated for by monetary damages." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *see also Stevenson v. City & County of S.F.*, No. 3:11-cv-4950-MMC, 2016 WL 2993104, at *2 (N.D. Cal. Mar. 29, 2016).

Courts do not presume irreparable harm "where a plaintiff alleges injury from a rule or regulation that may only *potentially* affect speech." *Bronx Household of Faith*, 331 F.3d at 350 (emphasis added). Thus, where a plaintiff's claim of irreparable injury is" founded on the chilling of First Amendment rights," he must establish it with "evidence." *Id.* "[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury . . . . Rather the plaintiffs must show 'a chilling effect on free expression.'" *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir. 1989). Thus, "the Court cannot grant a preliminary injunction where [the plaintiff] has not alleged that [the defendant's] actions had any chilling effect on his First Amendment rights." *Shreves v. Harris*, No. 6:18-cv-97, 2020 WL 6074559, at *2 (D. Mont. Oct. 15, 2020). When the plaintiff "has not demonstrated that an injunction is necessary for his continued . . . exercise of his First Amendment rights," no injunction can issue. *Id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                    19                         Case No. 3:21-cv-1644-MMC
DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1    That requirement makes sense. If the evidence shows that a plaintiff's speech will not actually

2    be chilled, then the plaintiff will not suffer a "loss of First Amendment freedoms, for even minimal

3    periods of time." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.).[3]

4    Moreover, Twitter does not argue the First Amendment protects the confidentiality of its

5    documents. Twitter has not brought a claim asserting "First Amendment privilege." *Cf. Branzburg v.*

6    *Hayes*, 408 U.S. 665, 708 (1972) (holding that journalists had to answer questions during a grand jury

7    investigation despite claims of a "First Amendment privilege"). Its only claim is for retaliation. But

8    the alleged motive behind a CID does not affect whether disclosure would cause irreparable harm.

9    Twitter does not dispute that it can constitutionally be required to produce these allegedly

10   confidential documents so long as the request is made without a retaliatory motive. Thus, Twitter

11   lacks a sufficient "relationship between the injury claimed in the motion for injunctive relief and the

12   conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,

13   810 F.3d 631, 636 (9th Cir. 2015); *see also Arellano v. Santos*, 3:18-cv-2391, 2020 WL 6271031, at

14   *4 (S.D. Cal. Oct. 26, 2020) (finding a lack of irreparable harm in a First Amendment retaliation

15   claim on this ground).

16       **B.      Refusing to Produce the Documents Would Not Irreparably Harm Twitter**

17   Twitter can avoid any alleged irreparable harm from producing the documents by simply *not*

18   producing the documents. Twitter claims to fear "legal sanction," ECF 5 at 21, but CID recipients

19   have multiple options for objecting to document production without facing legal sanction. A recipient

20   can initiate proceedings in a Texas court "to modify or set aside the demand" for "good cause." Tex.

21   Bus. & Com. Code § 17.61(g). A recipient can also simply refuse to comply with the CID. If the

---

[3] Twitter insists that, on the merits, it need not show its speech will be "actually inhibited or

suppressed." ECF 5 at 15. But even if that is true for the merits of its retaliation claim, it does not

establish irreparable injury. When the Ninth Circuit ruled that "an unusually determined plaintiff

[who] persists in his protected activity" can prevail on the merits, it was in the context of a claim for

damages. *Mendocino Envt'l Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). It did not

consider irreparable injury or injunctive relief.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                     20                      Case No. 3:21-cv-1644-MMC
DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Consumer Protection Division wants to press the issue, it would then have to initiate judicial enforcement proceedings. *See id.* § 17.62(b) (authorizing the Consumer Protection Division to file petition for enforcement "[i]f a person fails to comply . . . with a civil investigative demand"). Like CIDs issued by the federal government, "CIDs are not self-enforcing." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194, 199 (D.D.C. 2017).

As a result, Twitter faces no current harm from refusing to comply with the CID. Whether it would ever face harm is speculative because it depends on the future decisions of the Consumer Protection Division and Texas courts. But if enforcement proceedings began, Twitter would have an adequate remedy at law: raising its objections during the enforcement proceedings. That is the standard approach to resisting a non-self-executing CID, and its availability precludes injunctive relief.

In *Reisman v. Caplin*, the Supreme Court considered an administrative subpoena from the IRS. 375 U.S. 440 (1964). Because judicial proceedings were necessary to enforce the subpoena, the recipient had "an adequate remedy at law" that foreclosed injunctive relief. *Id.* at 443. *Reisman* thus "announced a rule strongly disfavoring any pre-enforcement review of investigative subpoenas." *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334 (10th Cir. 1984). Lower courts have gotten the message.

When recipients of an SEC subpoena sought injunctive relief, the Ninth Circuit rejected their claim. They "had an adequate legal remedy"—raising their arguments during enforcement proceedings—"because an SEC subpoena is not self-executing." *Jerry T. O'Brien, Inc. v. SEC*, 704 F.2d 1065, 1066–67 (9th Cir. 1983), *separate holding rev'd on other grounds*, 467 U.S. 735 (1984). The Ninth Circuit and this Court have followed this approach in other cases as well. *See Kelley v. United States*, 503 F.2d 93, 93 (9th Cir. 1974) (per curiam) (holding that a plaintiff could not "enjoin the enforcement of an [IRS] summons" because "[a] remedy at law exists through intervention of the taxpayer in judicial proceedings brought by the Commissioner in enforcement of his summons"); *Howfield, Inc. v. United States*, 409 F.2d 694, 697 (9th Cir. 1969) (similar); *Gealer v. United States*, No. CV 98–2321–WMB AJWX, 1998 WL 723152, at *5 (C.D. Cal. June 30, 1998); *Valley Indus. Services, Inc. v. EEOC*, 570 F. Supp. 902, 905 (N.D. Cal. 1983).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Other circuits agree. "Where an agency must resort to judicial enforcement of its subpoenas, courts generally dismiss anticipatory actions filed by parties challenging such subpoenas as not being ripe for review because of the availability of an adequate remedy at law if, and when, the agency files an enforcement action." *Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior*, 180 F.3d 1192, 1200 (10th Cir. 1999) (quoting *In re Ramirez*, 905 F.2d 97, 98 (5th Cir. 1990)). As then-Judge Blackmun explained, "plaintiffs have available to them an adequate remedy at law if and when the [agency] seeks judicial assistance to enforce its subpoena." *Anheuser-Busch, Inc. v. FTC*, 359 F.2d 487, 490 (8th Cir. 1966); *see also O'Keefe v. Chisholm*, 769 F.3d 936, 939 (7th Cir. 2014) (reversing an injunction against a state investigation because relief from a state court was an adequate remedy at law that precluded irreparable injury); *Atl. Richfield Co. v. FTC*, 546 F.2d 646, 649 (5th Cir. 1977) (refusing to enjoin an FTC subpoena because the plaintiff "had an adequate remedy at law through FTC enforcement actions"); *Morgan Drezen, Inc., v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 112 (D.D.C. 2013) (refusing to enjoin CFPB enforcement action because plaintiff had adequate remedy to "raise its constitutional challenge as a defense in the pending enforcement action")

The availability of an adequate legal remedy during any future enforcement proceedings ensures that companies like Twitter are "not exposed to the type of immediate, irreparable injury necessary to justify jurisdiction." *Belle Fourche Pipeline Co.*, 751 F.2d at 335.

## C.    A Preliminary Injunction Would Not Resolve Any Irreparable Harm

If Twitter did face irreparable harm, the requested preliminary injunction would not help. According to Twitter, "the CID and accompanying investigation . . . so long as they remain extant . . . will continue to chill . . . Twitter's exercise of its First Amendment rights." ECF 5-1, Williams Decl. ¶ 12. Twitter attributes its alleged injuries to "the pendency of the CID and related investigation" as well as "[t]he fact that Twitter was served with th[e] . . . CID." *Id.* ¶¶ 13–14. But Twitter's proposed preliminary injunction could not possibly redress those alleged injuries. Even if the Court preliminarily enjoined Defendant from instituting an enforcement action, the CID and investigation would "remain extant" and "pend[ing]." An injunction could not change "[t]he fact that Twitter was served with th[e] . . . CID." To the extent irreparable harm occurs because of discrete past events, like service of the CID, "any 'damage' is already done, and cannot be undone by the injunction [Twitter]

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

seeks." *Alvarez*, 2 F. Supp. 2d at 514 n.5; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (recognizing that "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy" for prospective relief).

When a preliminary injunction would not redress a plaintiff's irreparable injury, it is denied. *See Am. Trucking Ass'n*, 559 F.3d at 1052 (citing *Winter*, 555 U.S. at 20); *see also Timbisha Shoshone Tribe v. Kennedy*, 687 F. Supp. 2d 1171, 1189 (E.D. Cal. 2009) (denying injunction because "although Plaintiffs are suffering [economic] harm, they have not established that the harm is based on an action that is redressable in a federal action"). In *Chiafalo v. Inslee*, for example, the plaintiffs argued "that the mere potential of a monetary penalty has a chilling impact on [their] ability to exercise their First Amendment rights." 224 F. Supp. 3d 1140, 1147 (W.D. Wash. 2016). The court denied a preliminary injunction because such "relief would have no impact on Plaintiffs' decision-making calculus." *Id.* at 1148. "Whether or not the court preliminarily enjoins the State from enforcing the $1,000.00 civil penalty," the plaintiffs' decision-making would occur in light of the prospect of eventually having to pay the penalty because a preliminary injunction does not guarantee permanent relief. *Id.* In the end, "preliminary injunctive relief would not mitigate the chilling effect of the discretionary statutory penalty." *Id.*

Similarly, in public-employee retaliation cases, if "the theoretical chilling of protected speech and union activities stems not from the interim discharge, but from the threat of permanent discharge," then the plaintiff is not entitled to a preliminary injunction. *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 766 F.2d 715, 722 (2d Cir. 1985). "[T]he threat of permanent discharge . . . is not vitiated by an interim injunction," so there is no way the "chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction." *Id.*

Twitter complains of the "threat that [it] might be forced to" produce its documents. ECF 5 at 22. That threat exists regardless of whether the Court issues a preliminary injunction. After all, securing a preliminary injunction does not ensure the Court will ultimately issue permanent relief. On Twitter's own theory, a preliminary injunction would not redress any irreparable injury.

## IV.   Plaintiffs' Proposed Injunction Is Overbroad

Even if Twitter were otherwise entitled to prevail (and it is not), its proposed injunction would

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   remain impermissibly vague and overbroad. Any injunction must "state its terms specifically" and

2   "describe in reasonable detail—and not by referring to the complaint or other document—the act or

3   acts restrained or required." Fed. R. Civ. P. 65(d)(1). Twitter's proposed injunction does not explain

4   what "otherwise pursuing the investigation" means. ECF 5-4. That language could be read to prevent

5   Defendant from reviewing the documents that Twitter has voluntarily produced or, when that review

6   is complete, considering whether the already-produced documents would support a DTPA claim.

7   That would be wrong—such actions do not create actual or imminent harm that Twitter would have

8   standing to challenge—but defendants should not have to guess at the scope of an injunction.

9       Moreover, any "remedy must of course be limited to the inadequacy that produced the injury

10  in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Twitter has not

11  attempted to show injury from anything other than responding to the CID. It is not entitled to

12  injunctive relief prohibiting other action (*e.g.*, enforcement actions based on the already-produced

13  documents) because it does not have standing to challenge speculative, non-imminent possibilities.

14  *See Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative

15  injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.").

16  Finally, the nature of equitable remedies "is to be determined by the nature and scope of the

17  constitutional violation." *Milliken v. Bradley*, 433 U.S. 267, 280 (1977); *see also Lewis*, 518 U.S. at

18  357. Twitter alleges only one constitutional violation: a retaliatory motive. Thus, any remedy must be

19  limited to an order precluding particular retaliatory acts. Because Twitter does not even argue that the

20  Constitution forbids an investigation undertaken with a non-retaliatory motive, it is not entitled to

21  injunctive relief prohibiting one.

**CONCLUSION**

23      Defendant respectfully requests that the Court deny Plaintiff's' Motion for a Preliminary

24  Injunction.

25      ///

26      ///

27      ///

28      ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   DATED: March 29, 2021                        Respectfully submitted.

2                                                */s/ Patrick K. Sweeten*
                                                Patrick K. Sweeten
3                                                Deputy Attorney General
                                                for Special Litigation
4                                                Ken Paxton
                                                Attorney General of Texas
5                                                Brent Webster
                                                First Assistant Attorney General
6                                                Grant Dorfman
                                                Deputy First Assistant Attorney General
7                                                William T. Thompson
                                                Deputy Chief, Special Litigation Unit
8                                                Ryan D. Walters
                                                Special Counsel
9

10  Dated:  March 29, 2021                       LEWIS BRISBOIS BISGAARD & SMITH LLP

11                                               */s/ Michael K. Johnson*
                                                Michael K. Johnson
12                                               Attorneys for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**CERTIFICATE OF SERVICE**
*Twitter Inc. v. Ken Paxton, et. al.*
USDC-ND, San Francisco Division, Case No. 3:21-cv-1644-MMC

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On March 29, 2021, I served the following document:

**DEFENDANT'S  RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to all persons registered by the Court to receive Notifications of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  March 29, 2021                    */s/ Sandra Hayes*
                                                      Sandra Hayes

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-7097-2131.1                                                          Case No. 3:21-cv-1644-MMC
DEFENDANT'S  RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION