1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Counsel for Amicus Curiae*
MARIA RUTENBURG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>KEN PAXTON, in his official capacity as Attorney General of Texas,<br><br>                    Defendant. | Case No.:  3:21-cv-01644-MMC<br><br>**[PROPOSED] BRIEF OF MARIA RUTENBURG AS AMICUS CURIAE IN SUPPORT OF DEFENDANT KEN PAXTON**<br><br>Judge: Hon. Maxine M Chesney |

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

I.     INTEREST OF THE AMICUS CURIAE ..................................................... 1

II.    SUMMARY OF THE ARGUMENT ............................................................ 1

III.   DISCUSSION ............................................................................................. 4

       A.    Twitter's Censorship is Not Protected Speech ................................... 4

       B.    Twitter's First Amendment Rights are De Minimus or Nonexistent ..................... 5

             1.    Twitter's First Amendment Right is Circumscribed by the CA Constitution ... 5

             2.    Twitter Does Not Enjoy First Amendment Rights of a Newspaper Editor ....... 7

             3.    Twitter Does Not Enjoy First Amendment Rights of a Private Homeowner .... 8

       C.    The Space for Comment on the President's Tweets is a Public Fora ..................... 9

       D.    Twitter's Conduct Satisfies the Public Function Test ............................................ 12

             1.    The Deprivation is Only Possible Because of Government Action ................ 14

             2.    Regulating Speech in a Designated Public Forum is Traditionally and Exclusively the Prerogative of the Government ....................................................... 16

IV.    CONCLUSION ............................................................................................ 18

ii

3:21-cv-01644-MMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## **TABLE OF AUTHORITIES**

### _Cases_

Supreme Court Authorities

City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp. Rel. Comm'n,
429 U.S. 167, 175 (1976)...................................................................................10

Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.,
412 U.S. 94, 117 (1973)......................................................................................7

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
473 U.S. 788, 801 (1985)...................................................................................10

Garner v. Louisiana,
368 U.S. 157 (1961)..............................................................................................8

Lugar v. Edmondson Oil Co.,
457 U.S. 922, 937 (1982).......................................................................... 3, 14-18

Manhattan Cmty. Access Corp. v. Halleck,
139 S. Ct. 1921, 1934 (2019).................................................................12-13, 16-17

Miami Herald Publ'g Co. v. Tornillo,
418 U.S. 241 (1974)..............................................................................................7

Pacific Gas & Elec. Co. v. Pub. Util. Comm'n of Cal.,
475 U.S. 1, 8 (1986)..............................................................................................7

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
460 U.S. 37, 45 (1983).........................................................................................10

PruneYard Shopping Ctr. v. Robbins,
447 U.S. 74 (1980)........................................................................................5-8, 13

Rosenberger v. Rector & Visitors of Univ. of Va.,
515 U.S. 819, 830 (1995).....................................................................................10

iii

Supreme Court Authorities (continued)

*Turner Broad. Sys., Inc. v. FCC,*
512 U.S. 622, 684 (1994).................................................................................6

*West v. Atkins,*
487 U.S. 42, 46 (1988)..................................................................................14

*Wooley v. Maynard,*
430 U.S. 705, 714 (1977)................................................................................7

State Supreme Court Authorities

*Bock v. Westminster Mall Co.,*
819 P.2d 55, 59 (Colo. 1991)..........................................................................9

*Fashion Valley Mall, LLC v. Nat'l Lab. Rel. Bd.,*
42 Cal. 4th 850, 865 (Cal. 2007)....................................................................5-6

*In re Lane,*
71 Cal.2d 872, 878 (Cal. 1969)........................................................................6

*Schwartz-Torrance Inv. Corp. v. Bakery & Confectionery Workers' Union,*
61 Cal.2d 766 (Cal. 1964)................................................................................6

*Snatchko v. Westfield LLC,*
187 Cal. App.4th 469 (Cal. 2010).....................................................................8

Circuit Court Authorities

*Attwood v. Clemons,*
818 F. App'x 863, 867 (11th Cir. 2020) ........................................................3, 9

*Campbell v. Reisch,*
2021 U.S. App. LEXIS 2202 (8th Cir. Jan. 27, 2021) ......................................9

iv

<u>Circuit Court Authorities (Continued)</u>

*Collins v. Womancare*,
878 F.2d 1145, 1147 (9th Cir. 1989) ........................................................15

*Charudattan v. Darnell*,
834 F. App'x 477, 480 (11th Cir. 2020) ...................................................3, 9

*Davison v. Randall*,
912 F.3d 666, 687 (4th Cir. 2019) ...........................................................3, 9

*DiLoreto v. Unified Sch. Dist. Bd. Of Educ.*,
196 F.3d 958, 970 (9th Cir. 1999) ............................................................16

*Florer v. Congregation Pidyon Shevuyim N.A.*,
F.3d 916, 922-23 (9th Cir. 2011) .........................................................14-15

*Howard v. AOL*,
208 F. 3d 741 (9th Cir. 2000) ...................................................................16

*Knight First Amendment Inst. v. Trump*,
928 F. 3d 226, 239 (2d Cir. 2019) vacated by 593 U.S. ___ .................1, 3-5, 9, 11-13, 15, 16, 18

*Lansing v. City of Memphis*,
202 F.3d 821, 828-29 (6th Cir. 2000) .......................................................18

*Lee v. Katz*,
276 F.3d 550, 554-55 (9th Cir. 2002) .......................................2-4, 12, 16-18

*Nat'l Lab. Rel. Bd. v. Calkins*,
187 F.3d 1080, 1093 (9th Cir. 1999) ...........................................................8

*Prager Univ. v. Google, LLC*,
951 F.3d 991, 998-99 (9th Cir. 2020) ............................................3, 12, 16

v

Circuit Court Authorities (Continued)

*Robinson v. Hunt Cnty*,
921 F.3d 440, 447 (5th Cir. 2019) ..................................................................3, 9

*Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd.*,
257 F.3d 937, 944 (9th Cir. 2001) ......................................................................11

District Court Authorities

*Am. Atheists v. Rapert*,
2019 U.S. Dist. LEXIS 230493 (E.D. Ark. Sep. 30, 2019) ..................................9

*Anderson v. Hansen*,
2021 U.S. Dist. LEXIS 27722 (E.D. Wis. Feb. 12, 2021) ....................................9

*Attwood v. Clemons*,
2021 U.S. Dist. LEXIS 49586 (N.D. Fla. Mar. 17, 2021) ....................................9

*Citizens to End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*,
745 F. Supp. 65, 72 (D. Mass. 1990) ................................................................11

*Clark v. Kolkhorst*,
2020 U.S. Dist. LEXIS 193964 (W.D. Tex. Oct. 20, 2020) ..................................9

*Cyber Promotions, Inc. v. Am. Online, Inc.*,
948 F. Supp. 436, 422 (E.D. Pa. 1996) ............................................................16

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662, 2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019)........12, 16

*Felts v. Reed*,
2020 U.S. Dist. LEXIS 224489 (E.D. Mo. Dec. 1, 2020) ....................................9

vi

1

District Court Authorities (Continued)

2

3

*Garnier v. O'Connor-Ratcliffe,*
2021 U.S. Dist. Lexis 761, 2021 WL 129823 (S.D. Cal. Jan. 14, 2021) ........................................9

4

5

*Garnier v. Poway Unified Sch. Dist.,*
2019 U.S. Dist. LEXIS 167247 (S.D. Cal. Sep. 26, 2019) ............................................................9

6

*Kinderstart.com LLC v. Google, Inc.,*
No. C06-2057 JFRS, 2007 WL 831806 (N.D. Cal. 2007)...........................................................16

7

*Knight First Amendment Inst. v. Trump,*
302 F. Supp. 3d 541, 577 (S.D.N.Y. 2018).................................................................................10

8

9

*Langdon v. Google, Inc.,*
474 F. Supp. 2d 622, 631-32 (D. Del. 2007) ..............................................................................16

10

11

*Lewis v. Jones,*
440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020)..........................................................................9-10

12

13

*One Wis. Now v. Kremer,*
354 F. Supp. 3d 940, 955 (W.D. Wis. 2019) ...............................................................................9

14

15

*N. Shore Right to Life Comm. V. Manhasset Am. Legion Post No. 304.,*
2013 U.S. Dist. Lexis 41624, 2013 WL 1222038 (E.D.N.Y. 1978)............................................11

16

17

*Nyabwa v. Facebook, Inc.,*
2018 WL 585467 (S.D. Tex. Jan. 26, 2018) ..............................................................................16

18

19

*Phillips v. Ochoa,*
2021 U.S. Dist. LEXIS 55683 (D. Nev. Mar. 24, 2021)...............................................................9

20

21

22

23

vii

24

25

26

27

District Court Authorities (Continued)

*Pindak v. Cook Cnty.*,
2013 U.S. Dist. Lexis 41624, 2013 WL 1222038 (N.D. Ill. Mar. 25, 2013) ...............................11

*Popp v. Monroe Cnty.*,
2020 U.S. Dist. LEXIS 57042 (D. Ind. Mar. 31, 2020)....................................................................9

*Rutenburg v. Twitter, Inc.*,
No. 4:21-cv-00548-YGR (N.D. Cal. Jan. 26, 2021) ............................................................. *passim*

*Scarborough v. Frederick Cnty. Sch. Bd.*,
2021 U.S. Dist. LEXIS 22977 (W.D. Va. Feb 8, 2021) ...................................................................9

*Shulman v. Facebook, Inc.*,
2017 WL 5129885 (D.N.J. Nov. 6, 2017) ......................................................................................16

*West v. Shea*,
2020 U.S. Dist. LEXIS 248837 (C.D. Cal. Nov. 12, 2020)..............................................................9

*Windom v. Harshbarger*,
396 F. Supp 3d 675, 687 (N.D. W. Va. 2019) ................................................................................9

**Statutes, Rules, and Other Authorities**

U.S. Constitution............................................................................................................... *passim*
California Constitution ........................................................................................................ 5-6, 13
42 U.S.C. § 1983...........................................................................................................................15
Mitchell Hamline Law Journal of Public Policy and Practice........................................................13
Berkeley Tech. Law Journal ...........................................................................................................13
Nimmer, § 4.09[D][2][b][i] at 4-106 n.312 ...................................................................................8

3:21-cv-01644-MMC

## I.      INTEREST OF THE AMICUS CURIAE

Maria Rutenburg is the plaintiff in another pending action against Twitter, Inc. ("Twitter") that may impact the results of this case. *See Rutenburg v. Twitter*, No. 4:21-cv-00548-YGR (Amended Complaint Filed N.D. Cal. Jan. 26, 2021) ("*Rutenburg*"). Ms. Rutenburg is a real estate broker and an attorney residing in Redwood City, California. *See* Am. Compl., ¶ 13. Ms. Rutenburg is an active Twitter user who tried to comment on three of former President Trump's Tweets on the topic of election integrity between January 6 and 8, 2021. *Id*. at ¶¶ 31-52. Twitter's conduct was a constitutional violation under color of law because Ms. Rutenburg was arbitrarily blocked – from a space the Second Circuit has recognized is a designated public forum. *See Knight First Amendment Institute v. Trump,* 928 F.3d 226, 239-40 (2d Cir. 2019)[1] ("*Knight*"). An order to show cause on whether Twitter's actions could be construed as having acted under color of law is currently before the Honorable Yvonne Gonzalez Rogers. *See Rutenburg*, Dkts. 16-20.

## II.      SUMMARY OF THE ARGUMENT

Twitter's assertion that its own First Amendment rights outweigh any and all legal protections of *any law* is unsupported, and further, cannot be the basis for *ex ante* relief. Twitter's version of events glosses over its most important actions – Twitter claims it merely terminated the account of former President Trump, but it omits the events leading up to the termination (as alleged in *Rutenburg*), when

---

[1] This case was recently remanded and vacated as moot due to the change in presidential administrations. *See Biden v. Knight First Amendment Institute at Columbia University, et. al*., 593 U.S. ___ , 2021 U.S. LEXIS 1863, 2021 WL 1240931, at *2 (Apr. 5, 2021) (Thomas, J., concur. op.). However, the reasoning of the Second Circuit panel and the order denying rehearing en banc are still persuasive and supported by nearly all district and circuit court courts across the country facing the same issue. 928 F.3d 226, 239-40; denial of reh'g en banc, 953 F.3d at 221-222 (Barrington, J., concur. op.).

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

Twitter haphazardly prohibited likes and comments on three of Trump's Tweets on the topic of election integrity, despite Ms. Rutenburg's and the public's undisputed right to comment in a designated public forum. *See* Am. Compl., ¶ 45-52; *Knight*, 928 F.3d at 230.

Twitter's motion for injunctive relief must be denied because it requests an *ex ante* determination on matters that have not yet been litigated and are likely to fail as a matter of law. Twitter's own First Amendment rights in this situation are de minimus or non-existent, and they cannot immunize Twitter from being investigated by the Attorney General of Texas for violations of *any* law. Ms. Rutenburg's case has not yet been adjudicated. Civil cases and lawfully predicated government investigations must be allowed to proceed prior to Twitter proving its proposition that it could never be held liable.

Ms. Rutenburg will demonstrate that Twitter violated her First Amendment rights. Twitter's conduct in arbitrarily censoring Ms. Rutenburg satisfies the color of law analysis because 1) Twitter exercised authority it was only endowed with because of governmental action and 2) regulating speech in a public forum is a power that has been both traditionally and exclusively exercised by the government. *See Rutenburg*, Dkts. 17, 20; *Lee v. Katz*, 276 F.3d, 554-55 (9th Cir. 2002).

Twitter has not meaningfully disputed that designated public forums have been opened on its platform. Instead, Twitter is non-responsive and merely argues that it has *no First Amendment obligations* because it is a private corporation, and its platform is generally not a public forum. *See Rutenburg*, Dkt. 18, 11:3-13:7.

Twitter's position that it could never be a state actor because it is a corporation ignores the entire state action jurisprudence of the Supreme Court. Twitter argues that it has *no responsibilities* – despite courts universally recognizing that a public forum exists when the public has the ability to comment on

3:21-cv-01644-MMC

official Tweets. Twitter fails to confront the legal reality that public officials have created constitutionally protected zones in some areas of its social media platform.

There are four laws that can be applied harmoniously in *Rutenburg*. First, social media websites are not public fora generally.[2] Second, when a person with governmental authority opens an official social media page for public comment, the space that permits public commenting on the official's posts transforms it into a public forum. *See Knight First Amendment Inst. v. Trump*, 928 F.3d 226, 239 (2d Cir. 2019).[3] Third, state action is present because Twitter was endowed with the ability to regulate speech in the public forum, powers or functions that are both "traditionally" and "exclusively" governmental in nature. *See Katz*, 276 F.3d at 554. Fourth, the First Amendment is violated when Twitter arbitrarily blocked Ms. Rutenburg from liking and commenting on certain topics in the public forum. *See Knight*, 928 F.3d at 238.

Accordingly, the restrictions against Ms. Rutenburg's liking and commenting must be reversed under the same reasoning as in *Knight* and *Katz*. *See Knight*, 928 F.3d at 238; *Katz*, 276 F.3d at 554. Once it has been established that a public forum exists, the law focuses only on the function at issue and

---

[2] *Prager Univ. v. Google LLC*, 951 F.3d 991, 998 (9th Cir. 2020)

[3] Only one other court of appeals ruled on the merits in a published decision of whether a public official's social media account can be a public forum for First Amendment purposes. In *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), the Fourth Circuit answered this question exactly as the Second Circuit did, applying the same legal framework to an analogous record. The Fifth and Eleventh Circuits also followed the same reasoning in unpublished opinions. *See Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019) reh'g denied (May 16, 2019); *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020); *Charudattan v. Darnell*, 834 F. App'x 477, 480 (11th Cir. 2020).

3

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

does not differentiate between whether the censor's pen is held by the public or private hand.[4] *Id.* at 238. Ms. Rutenburg's right to be free from arbitrary censorship in a constitutionally protected zone must be secured regardless of whether the censor is a private or public entity. Twitter is liable under the government function test for unlawfully administering the designated public forum.

Therefore, Ms. Rutenburg demonstrates that Twitter is not shielded by its own First Amendment rights, and instead, Twitter actually violated Ms. Rutenburg's First Amendment rights. Twitter's arbitrary censorship of Ms. Rutenburg's speech while she was trying to like and comment on the former President's Tweets on the topic of election integrity satisfies the government function test because 1) Twitter exercised authority it was only endowed with because of governmental action and 2) regulating speech in a public forum is a power that has been both traditionally and exclusively exercised by the government. *See Katz*, 276 F.3d at 554-55.

## III.   DISCUSSION

### A.   Twitter's Censorship Is Not Protected Speech

Twitter asserts that its own First Amendment right of editorial discretion make it immune from *any* constitutional provision or consumer protection statute upon which the Texas Attorney General may base a lawful investigation. But Twitter presents no authority for such a sweeping proposition, or for the notion that the Court can make this determination on an *ex-ante* basis. Ms. Rutenburg's case on this very issue – on which Twitter seeks a premature determination – is currently pending before this court. The Second Circuit said it was leaving open the very issue in *Rutenburg* – whether a social media company

---

[4] "The state actor inquiry is focused on whether the source of the private actor's power comes from the [s]tate." *Lugar*, 457 U.S at 937.

4

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

administering a designated public forum is restricted from arbitrary censorship under the First Amendment *in the same way* the government is prohibited from censoring such a forum. *See Knight*, 928 F.3d at 230. Accordingly, Twitter's motion must be denied as a matter of law because the *Rutenburg* litigation must be allowed to run its course.

### B.    Twitter's Asserted First Amendment Protections are De Minimus or Nonexistent

#### 1.    Twitter's First Amendment Right is Circumscribed by the California Constitution

Twitter asserts its First Amendment rights under the United States Constitution protect its censorship but fails to mention how the California Constitution explicitly carves out protection for speech away from the property owner and in favor of individual speakers. The protection of expressive activities on private property in California is "even broader and greater" than that offered by the First Amendment. *Fashion Valley Mall, LLC v. Nat'l Lab. Rel. Bd.*, 42 Cal. 4th 850, 863 (2007) (cleaned up); *Bock v. Westminster Mall Co.*, 819 P.2d 55, 59 (Colo. 1991) ("The First Amendment is a floor, guaranteeing a high minimum of free speech[.]").

Directly contradicting Twitter's assertions, California courts have readjusted the balance of property rights in favor of peaceful exercise of free speech rights over property owners' exclusive control of their property. In *PruneYard Shopping Center v. Robins*, high school students in a large outdoor shopping mall were prohibited from soliciting support for their opposition to a United Nations resolution against Zionism. 447 U.S. 74, 77 (1980). The shopping center owner asserted its own First Amendment rights would be impaired if it could not determine which speech to allow on its property. *Id*. at 86. However, the California Supreme Court disagreed and held that "sections 2 and 3 of article I of the

5

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

California Constitution protect speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." *Id*. at 76. The Court recognized that a modern shopping center "to which the public is invited can provide an essential and invaluable forum for exercising [speech and petition] rights," *id*. at 91, from which the owner is not entitled to prohibit publicly expressive activity. Upon granting certiorari, the United States Supreme Court affirmed the power of the states to adopt "individual liberties more expansive than those conferred by the Federal Constitution." *Id*. at 81. That power even included California's decision to remove "one of the essential sticks in the bundle of property rights," the right to exclude others. *Id*. at 82. Therefore, the Supreme Court held that the mall could not prohibit the students' efforts despite the fact that this free speech activity was unrelated to the business of the center. *Id*. at 87-88.

Thus, Twitter suffers no prejudice by being restrained from censoring Tweets under the California Constitution. Although courts have not specifically applied this doctrine to property maintained in cyberspace, the California Constitution requires private owners of real property to respect the freedom of speech of their visitors when they have opened the property up to the public. *See Fashion Valley Mall*, 42 Cal. 4th at 858 ("The idea that private property can constitute a public forum for free speech if it is open to the public in a manner similar to that of public streets and sidewalks long predates [the court's] decision in *Pruneyard*."). Since then, California courts have also recognized that speech is protected on the privately-owned sidewalks and parking lots. *In re Lane*, 71 Cal.2d 872, 878 (1969); *Schwartz-Torrance Inv. Corp. v. Bakery & Confectionery Workers' Union*, 61 Cal.2d 766, (1964).

Twitter should be treated similarly to those private property owners that have opened their property to public speech, whose own right to speak or endorse others' speech is not impaired. *See Turner Broad. Sys., Inc. v. FCC*, 512 U. S. 622, 684 (1994) (O'Connor, J., concurring in part and dissenting in part)

6

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

(citing *PruneYard*, 447 U.S. at 88). Therefore, Twitter has only de minimus or nonexistent First Amendment rights when it acts to censor others on its property. Twitter cannot simply ignore the California Constitution and maintain that it has no impact on Twitter's motion for injunctive relief against Attorney General Paxton.

### 2. Twitter Does Not Enjoy First Amendment Right of a Newspaper Editor

Twitter also asserts that it should benefit from freedom of speech protections, similar to the broad First Amendment protections of a newspaper editor, who enjoys a "fundamental right to decide what to print or omit." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *see also Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974).

But Twitter is nothing like a newspaper editor and the protections for freedom of speech here weigh against Twitter and in favor of Twitter's users. It is black letter law that a newspaper editor cannot be compelled by the government to publish an article. *Tornillo*, 418 U.S. at 258. The newspaper editor must retain complete editorial control of all content because journalistic integrity is at stake. *See Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 117 (1973). But this principle protects the newspaper owner who needs a First Amendment right to express his own speech – not censor someone else's speech in a public forum, which is what Twitter did here. *Cf. Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal.*, 475 U. S. 1, 8 (1986) ("There is no doubt that [the corporation's newsletter] receives the full protection of the First Amendment.").

Unlike a newspaper being compelled to print an article it disagreed with, when Twitter refrains from censoring a user's Tweet, no one will infer that Twitter endorsed the user's Tweet,. *Cf. Tornillo*,

7

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

418 U.S. at 258. On Twitter's platform, in contrast to a newspaper, the content comes entirely from the users, therefore, there is no doubt that each Tweet is interpreted as originating from the user. *Cf. Pruneyard*, 447 U.S. at 87.

The Court in *Pruneyard* also used the same reasoning in rejecting this argument because there was no risk that the views of the speakers in the shopping mail would be confused for the views of the property owner. *Id* ("The views expressed by members of the public in passing out pamphlets or seeking signatures for a petition thus will not likely be identified with those of the owner [and the owner is free to] disclaim any sponsorship of the message and could explain that the persons are communicating their own messages…"). Moreover, Twitter's First Amendment rights are not impaired because, like in *Pruneyard*, the views of individual Twitter users would never be confused with being the views of Twitter or the property owner. It is widely known that each Twitter user is responsible for their own Tweets. *See Snatchko v. Westfield LLC*, 187 Cal.App.4th 469, 491 (2010) ("[The property owner] is not being compelled to espouse or respond to any particular message.")

### 3.     Twitter Does Not Enjoy First Amendment Protections of a Private Homeowner

Twitter also seeks to be treated like a private homeowner who has invited guests to its dinner table but is entitled to total discretion over who may speak inside the owner's home. *Cf. Garner v. Louisiana*, 368 U.S. 157 (1961) (Harlan, J., concurring) (The right to freedom of speech "would not surely encompass verbal expression in a private home if the owner has not consented."). Several Supreme Court cases state in dicta that there is no First Amendment right to speak in the private residence of another contrary to the wishes of the owner. Nimmer, § 4.09[D][2][b][i] at 4-106 n.312.

8

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

But Twitter is nothing like an owner of a private home. *Cf. PruneYard*, 447 U.S. at 83 ("It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner…25,000 persons are induced to congregate [in the shopping center] daily"); *Nat'l Lab. Rel. Bd. v. Calkins*, 187 F.3d 1080, 1093 (9th Cir. 1999) (respondent could not be excluded as an unwanted visitor because the public character of a shopping center implicitly reflects consent by invitation to the public to come on the property). Twitter opened up its property and configured its servers to become one of the largest platforms for speech that is open to billions of users. Government officials from all over the country have opened designated public forum on Twitter and other social media sites, implicating the First Amendment Rights of millions of constituents. *See e.g., Knight*, 928 F.3d at 230. Twitter cannot merely escape its responsibilities by analogizing to the rights of homeowners.

### C.    The Space for Comment on the President's Tweets is a Public Forum

The only courts that have analyzed the issue have held that the space where the public can comment on a public official's official social media posts constitutes a public forum entitled to First Amendment Protection.[5] The Second Circuit specifically evaluated former President Trump's Twitter account. By

---

[5] *See also Davison*, 912 F.3d at 687; *Attwood*, 818 F. App'x at 867; *Robinson*, 921 F.3d at 447; *Lewis v. Jones*, 440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020); *West v. Shea*, SACV 20-01293-CJC (DFMx), 2020 U.S. Dist. LEXIS 248837, __ F. Supp. 3d __, 2020 WL 8269540, at *6-7 (C.D. Cal. Nov. 12, 2020); *Garnier v. O'Connor-Ratcliff*, No. 3:17-cv-02215-BEN-JLB, 2021, U.S. Dist. LEXIS 7613, 2021 WL 129823, at *27 (S.D. Cal. Jan. 14, 2021); *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215-W (JLB), 2019 U.S. Dist. LEXIS 167247, 2019 WL 4736208, at *29 (S.D. Cal. Sept. 26, 2019); *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 685 (N.D. W. Va. 2019); *One Wis. Now v. Kremer*, 354 F. Supp. 3d 940, 955 (W.D. Wis. 2019); *Attwood v. Clemons*, No. 1:18cv-38-MW/MJF, 2021 U.S. Dist. LEXIS 49586, 2021 WL 1020449, at *20 (N.D. Fla. Mar. 17, 2021); *Anderson v. Hansen*, No. 20-C-1305, 2021 U.S. Dist. LEXIS 27722, at *25-28 (E.D. Wis. Feb. 12, 2021); *Scarborough v. Frederick Cnty. Sch. Bd.*, No. 5:20-cv-00069, 2021 U.S. Dist. LEXIS 22977, 2021 WL 419180, at *17-19 (W.D. Va. Feb. 8,

3:21-cv-01644-MMC

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

using the @realDonaldTrump account as an official vehicle for governance and by making its interactive features accessible to the public without limitation," the former President created a public forum in the public's ability to comment. *Id.* at 239. The account is akin to a digital town hall, with the President at the front of the room speaking from the podium, with citizens responding to him and engaging with one another about his statements. That conclusion is consistent with the Supreme Court's application of the public forum doctrine in analogous contexts. *See Knight*, denial of reh'g en banc, 953 F.3d at 221-222 (Barrington, J., concur. op.). For example, the Supreme Court has long held that open public meetings are public forums in which viewpoint discrimination is impermissible. *See City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp. Rel. Comm'n*, 429 U.S. 167, 175 (1976).

The Supreme Court has recognized that "a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985); *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). A public forum need not be a physical space. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 830 (1995) (holding that the "same principles" are "applicable" where the space at issue is "a forum more in a metaphysical

---

2021); *Clark v. Kolkhorst*, No. A-19-CV-00198- LY-SH, 2020 U.S. Dist. LEXIS 193964, 2020 WL 6151570, at *19-20 (W.D. Tex. Oct. 20, 2020); *Felts v. Reed*, Case No. 20-cv-821-JAR, 2020 U.S. Dist. LEXIS 224489, 2020 WL 7041809, at *6 (E.D. Mo. Dec. 1, 2020); *Popp v. Monroe Cnty.*, No. 1:19-cv-03664-JPHDML, 2020 U.S. Dist. LEXIS 57042, at *2 (D. Ind. Mar. 31, 2020); *Am. Atheists v. Rapert*, No. 4:19-cv-00017-KGB, 2019 U.S. Dist. LEXIS 230493, at *79 (E.D. AR Sep. 30, 2019); *cf. Campbell v. Reisch*, No. 19-2994, 2021 U.S. App. LEXIS 2202, 2021 WL 261992, at *13 (8th Cir. Jan. 27, 2021) (the social media page of a candidate running for office was not official and thus did not create a public forum); *Charudattan*, 834 F. App'x 477 at 482 (same as applied to Sheriff's Campaign page); *Phillips v. Ochoa*, No. 2:20-cv-00272-JAD-VCF, 2021 U.S. Dist. LEXIS 55683, 2021 WL 1131693, at *7-9 (D. Nev. Mar. 24, 2021) (same).

3:21-cv-01644-MMC

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

than in a spatial or geographic sense"); *Cornelius*, 473 U.S. at 801. The Second Circuit correctly determined the forum's compatibility with expressive activity (*id*. at 802–03) as well as whether the government's overall "policy and past practice" show that the forum is intended to be used for speech by the public. *Id*. at 802.

Likewise, *Rutenburg* also concerns a plaintiff's right to comment on the former President's Tweets and thus the same analysis conducted by the *Knight* court applies to Rutenburg's claims. *See* Am. Compl., ¶¶ 18-19; *Lewis*, 440 F. Supp. at 1135. Therefore, the public space to comment on the former President's Tweets (during the events in *Rutenburg* case) must be treated as a designated public forum. *See Knight First Amendment Inst. v. Trump*, 302 F.Supp.3d 541, 577 (S.D.N.Y. 2018) ("[T]he blocking of the individual plaintiffs has the discrete impact of preventing them from interacting directly with the President's [T]weets [restricts] a real, albeit narrow, slice of speech. No more is needed to violate the Constitution.")

Twitter does not meaningfully dispute the Second Circuit's holding that the space for public comment on former President Trump's Twitter posts is a designated public forum or that its character has somehow changed[6] by the time of the incidents in of *Rutenburg*. Instead, Twitter asserts that *Knight* does not apply to *Rutenburg* because that the holding applied to when *the government* blocked the plaintiff. But Twitter also recognizes this argument fails, as it next concedes that the Second Circuit was specifically *not* deciding that issue that the *Rutenburg* court must decide – whether a social media

---

[6] *Cf. Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd*., 257 F.3d 937, 944 (9th Cir. 2001), cert. denied, 535 U.S. 905 (2002) (changing the public forum's protected status would require altering the objective physical character or uses of the property)

11

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

company administering a designated public forum is restricted from arbitrary censorship under the First Amendment *in the same way* the government is prohibited from censoring such a forum. *See Rutenburg*, Dkt 18, 13:8-20 (citing *Knight*, 928 F.3d at 230).

Although the above quotation shows that the issue was not fully addressed in *Knight*, courts have already established that once a public forum exists, a private entity must abide by the same restrictions that the government would face if the government retained ultimate control to administer the forum. *See Pindak v. Cook Cnty.*, No. 10-cv-6237, 2013 U.S. Dist. LEXIS 41624, 2013 WL 1222038, at *13-15 (N.D. Ill. Mar. 25, 2013) (First Amendment restricted private security officers); *Citizens To End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F. Supp. 65, 72 (D. Mass. 1990) (First Amendment restricted private security guards); *N. Shore Right to Life Comm. v. Manhasset Am. Legion Post No. 304*, 452 F. Supp. 834, 840 (E.D.N.Y. 1978) (First Amendment restricted private group selecting participants in a public parade).

Nevertheless, Twitter asserts it is not transformed into a state actor merely because it administered the former President's Twitter account. Dkt. 18, 14:10-15:2. But this argument contradicts binding Ninth Circuit caselaw holding that administering speech in a designated public forum is indeed a public function. *See Katz*, 276 F.3d at 556 ("That 'function' is the administration of free speech rules within a public forum.").

Finally, Twitter argues that courts have rejected the notion that a social media company can be sued for constitutional torts. Dkt. 18, 14:1-9 (citing *Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1930 (2019); *Prager Univ. v. Google LLC*, 951 F.3d 991, 997 (9th Cir. 2020); *Ebeid v. Facebook, Inc.,* No. 18-CV-07030-PJH, 2019 WL 2059662, at *6 (N.D. Cal. May 9, 2019)). But these cases only stand for the proposition that social media websites are generally not public fora. *Id.*

12

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

Ms. Rutenburg does not dispute the holding that social media websites are not generally public fora. *See Rutenburg*, Dkt. 17, 10:9-12:11. Ms. Rutenburg's suit concerns a different fact pattern – the plaintiff's right to comment on the former President's Tweets while he held office, where it has been determined that arbitrary blocking violates the First Amendment because it is a public forum. *See e.g.*, *Knight*, 928 F.3d at 238 ("[T]he speech restrictions at issue burden the Individual Plaintiffs' ability to converse on Twitter with others who may be speaking to or about the President.").

### D.    Twitter's Conduct Satisfies the Public Function Test

Twitter points out that it is a private entity and seems to assert, therefore, that it would be impossible to hold it is a state actor. *See Rutenburg*, Dkt. 18, 11:3-13:7. But if the line were drawn at whether an entity was "private" or "public," there would be no need for the Supreme Court's state action jurisprudence. Scholars have long recognized that some conduct by social media companies could satisfy the state action doctrine.[7] Twitter relies heavily on *Halleck*, but that case is inapposite because it involved public access television that did not establish a public forum.

In *Halleck*, the plaintiff alleged that a private entity violated its First Amendment right when it suspended plaintiff from broadcasting on public access television channels. *Halleck,* 139 S.Ct. at 1928. However, the Court rejected the argument in holding that the broadcasting entity did not act under color of law because the operation of public access channels on a cable system was not a function traditionally and exclusively performed by the government. *Id*. at 1929. Therefore, the analysis in *Halleck* does not

---

[7] *See* Patty, Michael (2019) "Social Media and Censorship: Rethinking State Action Once Again," *Mitchell Hamline Law Journal of Public Policy and Practice*: Vol. 40 , Article 5; Jonathan Peters, The "Sovereigns of Cyberspace" and State Action: The First Amendment's Application (or Lack Thereof) to Third-Party Platforms, 32 Berkeley Tech. L.J. 989 (2017).

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

3:21-cv-01644-MMC

apply because the broadcast channels were not public forums. In contrast, it is undisputed that Ms. Rutenburg's suit concerns her attempts to comment in a public forum.

Twitter's argument that the private property of social media websites will be generally eroded should also fall on deaf ears. *See Rutenburg*, Dkt. 18, 14:10-15:2. Although the holding has not been specifically extended to social media, the California Supreme Court has recognized there is no deprivation of private property rights by limiting a property owner's right to censor speech when the property is already dedicated to public speaking. *See PruneYard*, 447 U.S. at 83. Further, this suit only pertains to a miniscule fraction of Tweets on Twitter's website: those that are from people trying to comment on the posts of government officials who Tweet for official purposes, not all Tweets generally. Twitter cannot show any economic harm because its primary business is opening its website to speech from countless users, so it will not likely be prejudiced by being forced to restrain from censoring on these few accounts.

The inquiry in *Rutenburg* under the government function test of the state action doctrine is focused on whether the source of the private actor's power comes from the State. *See Lugar*, 457 U.S. at 937. For actions by a private entity to satisfy the government function test, the challenged conduct must satisfy a two-step inquiry. *Id*. The first question is whether the challenged conduct causing "the deprivation is the result of a governmental policy." *Id.* The second *Lugar* question is whether the function at issue must be "both traditionally and exclusively governmental." *West v. Atkins*, 487 U.S. 42, 46 n. 6. (1988).

    1.    **The Deprivation Is Only Possible Because of Governmental Action**

Ms. Rutenburg demonstrated that Twitter's arbitrary censoring of her attempts to comment on the former President's Tweets on the topic of alleged election fraud satisfies the first *Lugar* step because Twitter's ability to censor the designated public forum was only possible as a result of governmental

14

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

action, the former President's posting on Twitter for official purposes. *See* Dkt. 17, 7:7-9:20.

Twitter also responds that *Florer v. Congregation Pidyon Shevuyim N.A.* forecloses Plaintiff's argument that the deprivation was possible only because of governmental authority. *See Rutenburg*, Dkt. 18, 10:18-25 (citing 639 F.3d 916, 922–23 (9th Cir. 2011)). There, the plaintiff prisoner requested a Torah, calendar, and a visit from a rabbi from Congregation Pidyon Shevuyim. However, the Congregation decided that the plaintiff was not Jewish, and, therefore, declined to provide the requested services to the plaintiff. *Id*. at 923.

There, the court held that the Congregation's refusal to fulfill the prisoner's requests was not a public function. The purported "deprivation" had no connection to any action or policy of the government that made the Congregation's decision possible – on the contrary, the state had in no way designated Congregation Pidyon Shevuyim for any special tasks or to perform any services for the prison. *Id*. at 925-926. The state generally permitted prisoners to request religious materials from any religious organization. *Id*. at 925. Merely because the plaintiff's requests to the religious organization he selected were denied does not mean that he suffered a deprivation because of the government. *Cf. id*. at 925-926. (If the Congregation had refused to provide services because the government determined the plaintiff was not Jewish, then the state may have caused the deprivation…instead, this alleged deprivation was "ecclesiastical" and not "public").

In contrast, courts have already acknowledged that governmental action was present when the former President opened a designated public forum by choosing to use Twitter when making announcements and permitting the public to comment. *See Knight*, 928 F.3d at 239. Therefore, there is no question that Twitter only had the ability to censor Ms. Rutenburg in a public forum because of this governmental action.

3:21-cv-01644-MMC

Twitter also argues that its alleged conduct could not constitute governmental action because it "was diametrically opposed to the delegation of authority that former President Trump supposedly granted." (citing *Lugar*, 457 U.S. at 940; *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989). But Twitter confuses which action is under analysis. The courts in *Lugar* and *Collins* held there was no state action because the defendants merely *attempted* to exercise state action, but they were *unsuccessful* in doing so. They failed at the outset to lawfully invoke the statute that they were trying to use to cloak themselves with government authority. In contrast, in *Rutenburg*, it is already established that there was government action – the former President posting on Twitter for official purposes that created a public forum for people to like and comment.

Finally, Twitter states that it is contradictory for Ms. Rutenburg to contend that former President Trump gave Twitter the authority to keep his account open and yet maintain her Section § 1983 claim on the theory that Twitter should be held liable for closing that same account. Dkt. 18, 12:23-28. But Twitter misunderstands Ms. Rutenburg's claim, she does not complain that her speech was impaired after Twitter gave sufficient notice and closed the forum because it generated too much controversy. *Cf. DiLoreto v. Unified Sch. Dist. Bd. Of Educ.*, 196 F.3d 958, 970 (9th Cir. 1999) (closing a forum to avoid controversy is a constitutionally permitted solution). On the contrary, Ms. Rutenburg complains that she wanted to post on certain topics in a constitutionally protected zone but was arbitrary censored from liking and commenting.

### 2. Regulating Speech in a Designated Public Forum is Traditionally and Exclusively the Prerogative of the Government

Twitter's conduct also satisfies the second step of the *Lugar* analysis because regulating speech in a traditional or designated forum is a function that is both traditionally and exclusively the prerogative of

3:21-cv-01644-MMC

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

the state. The Ninth Circuit has held this function to be "quintessentially an exclusive and traditional public function-the regulation of free speech within a public forum." *Katz*, 276 F.3d at 556-57.

Twitter argues that it is not performing a traditional and exclusive function because merely hosting speech on a private platform is not such a function. *See Rutenburg*, Dkt. 18, 11:10-13:7, 13:21-15:2 (citing *Halleck*, 139 S. Ct. at 1930; *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018), aff'd, 951 F.3d 991 (9th Cir. 2020); *Howard v. AOL*, 208 F.3d 741, 754 (9th Cir. 2000); *Ebeid*, 2019 WL 2059662, at *6; *Nyabwa v. Facebook*, No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018); *Shulman v. Facebook.com*, No. CV 17-764 (JMV), 2017 WL 5129885, *4 (D.N.J. Nov. 6, 2017); *Kinderstart.com LLC v. Google, Inc*., No. C06-2057 JFRS, 2007 WL 831806, *13–15 (N.D. Cal. Mar. 16, 2007); *Langdon v. Google, Inc*., 474 F. Supp. 2d 622, 631–32 (D. Del. 2007); *Cyber Promotions, Inc. v. Am. Online, Inc*., 948 F. Supp. 436, 442 (E.D. Pa. 1996)).

But Twitter's cases do not address the second *Lugar* step and instead merely demonstrate the general proposition that social media websites are not public fora. As discussed in Ms. Rutenburg's reply to the OSC, (Dkt. 17, 10:10-12:11) however, this line of cases only resolved claims against the cable access channel and social media websites generally and not the interactive space surrounding government officials' official social media postings. *See Halleck*, 139 S. Ct. at 1930.

The *Rutenburg* case is similar to *Katz*. "It is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Katz*, 276 F.3d at 555 n.5 (internal citations omitted). In *Rutenburg*, as in *Katz*, it is already established that there is a designated public forum in the public's ability to comment on the former President's Tweets during the period he was in office. *See Knight*, 928 F.3d at 238. Therefore, the only remaining issue is whether the function at issue – whether

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

a private company's regulation of speech in a designated public forum – is both exclusively and traditionally governmental and therefore satisfies the second step of the *Lugar* analysis.

Under binding Ninth Circuit precedent, it is. *See Katz*, 276 F.3d at 556-57 ("It turns on what is quintessentially an exclusive and traditional public function – the regulation of free speech within a public forum."). As in *Katz*, in *Rutenburg*, Twitter had the ability to and did, indeed, prohibit Ms. Rutenburg from commenting on certain of the former President's Tweets, and then ultimately removed her ability to *view and comment on all* of the former President's Tweets. *See* Am. Compl., ¶¶ 45-52. These actions demonstrate that Twitter retained exclusive authority to regulate speech in the forum, and that the government retained little or no control over the forum, similar to the situation in *Katz*. *See id.* at 556 (the defendant became a state actor when he was delegated the public function and exercised "functionally exclusive regulation of free speech" within the public forum); *cf. Lansing v. City of Memphis*, 202 F.3d 821, 828-29 (6th Cir. 2000) (no state action when the state retains ultimate power to regulate activities in the forum).[8]

Finally, tries to differentiate *Katz* because that holding relied on a contract term in a lease between the government and the private entity, which Twitter argues is not present here. *See Rutenburg*, Dkt. 18, 14:23-25. But that is not the question for the second *Lugar* step, and the argument that one provision of a contract could be dispositive of the forum's characterization was already rejected in *Katz*. See *Katz*, 276 F.3d at 556 ("Given the reality that the [space] is a public forum…It is the function of the [defendant's] administration of the [public forum] that guides and informs our inquiry, not the precise legal arrangement

18

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT

[between the defendant and the government]. That 'function' is the administration of free speech rules within a public forum.").

## V.    CONCLUSION

For the foregoing reasons, Amicus Curiae MARIA RUTENBURG respectfully urges the Court to deny Twitter's Motion for injunctive relief.

DATED: April 9, 2021

/s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Counsel for Amicus Curiae*
MARIA RUTENBURG

3:21-cv-01644-MMC

[PROPOSED] AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT