MARK D. FLANAGAN
CA Bar No. 130303
mark.flanagan@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real #400
Palo Alto, California 94306
Telephone: (650) 858-6047
Facsimile:  (650) 858-6100

PETER G. NEIMAN (*pro hac vice*)
peter.neiman@wilmerhale.com
ALEX W. MILLER (*pro hac vice*)
alex.miller@wilmerhale.com
RISHITA APSANI (*pro hac vice*)
rishita.apsani@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
250 Greenwich St., 45th Floor
New York, New York 10007
Telephone:  (212) 230-8800
Facsimile:  (202) 663-6363

PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
ANURADHA SIVARAM (*pro hac vice*)
anuradha.sivaram@wilmerhale.com
SUSAN PELLETIER (*pro hac vice*)
susan.pelletier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

***Attorneys for Plaintiff***
**TWITTER, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., | Case No. 3:21-cv-01644-MMC |
| Plaintiff, | **TWITTER, INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| KEN PAXTON, in his official capacity as Attorney General of Texas, | **Date:     May 7, 2021**<br>**Time:     9:00 a.m.**<br>**Courtroom: 7** |
| Defendant. | |

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .................................................................................................................... 3

I.      TWITTER IS LIKELY TO SUCCEED ON THE MERITS ................................................ 3

        A.      RETALIATORY INVESTIGATIONS CAN VIOLATE THE FIRST
                AMENDMENT ............................................................................................ 3

        B.      THE NINTH CIRCUIT HAS REJECTED THE ADDITIONAL ELEMENTS
                AG PAXTON WOULD GRAFT ONTO FIRST AMENDMENT
                RETALIATION CLAIMS .............................................................................. 6

        C.      AG PAXTON RETALIATED AGAINST TWITTER ........................................... 9

II.     AG PAXTON FAILS TO UNDERMINE TWITTER'S SHOWING OF IRREPARABLE
        HARM ............................................................................................................ 12

III.    AG PAXTON DOES NOT DISPUTE THAT THE PUBLIC INTEREST AND
        BALANCE OF EQUITIES SUPPORT AN INJUNCTION ................................................ 15

IV.     TWITTER'S REQUESTED INJUNCTION IS APPROPRIATELY TAILORED .................... 15

CONCLUSION .............................................................................................................. 15

# **TABLE OF AUTHORITIES**

## **CASES**

Page(s)

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......................................2

*Arizona Students' Association v. Arizona Board of Regents*, 824 F.3d 858 (9th Cir. 2016) ...........................................................................................................................9

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).........................................................1

*Bello-Reyes v. Gaynor*, 985 F.3d 696 (9th Cir. 2021) ......................................... 8, 10-11

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009)..........................................................4, 7

*Capp v. County of San Diego*, 940 F.3d 1046 (9th Cir. 2019)...........................................5

*Colonies Partners v. County of San Bernardino*, 2020 WL 5102160 (C.D. Cal. July 28, 2020)........................................................................................................8

*Consumer Financial Protection Bureau v. Seila Law LLC*, 984 F.3d 715 (9th Cir. 2020) .........................................................................................................................15

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003)...........................................4, 6, 7

*Doe #1 v. Trump*, 984 F.3d 848 (9th Cir. 2020) ...............................................................2

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ...........................................................14, 15

*Elrod v. Burns*, 427 U.S. 347 (1976) ...............................................................................2

*Greisen v. Hanken*, 925 F.3d 1097 (9th Cir. 2019)........................................................4, 7

*Hartman v. Moore*, 547 U.S. 250 (2006) .................................................................. 3-4, 8

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group*, 515 U.S. 557 (1995).........................1

*Hyland v. Wonder*, 972 F.2d 1129 (9th Cir. 1992) .........................................................6

*Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120 (D. Or. 2020).......................13

*Johnson v. Louisiana Departpment of Agriculture*, 18 F.3d 318 (5th Cir. 1994)..........................7

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ..........................................2

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012)...........................................3, 7, 13

*Miami Herald Publishing Co.v. Tornillo*, 418 U.S. 241 (1974) ....................................1, 5

*Mendocino Environmental Center v. Mendocino County*,
    192 F.3d 1283 (9th Cir. 1999) ...................................................................5

*Monroe v. Pape*, 365 U.S. 167 (1961) ...............................................................14

*Murphy v. Twitter*, 274 Cal. Rptr. 3d 360 (Cal. Ct. App. 2021) ....................................11

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ....................................................6

*O'Keefe v. Chisholm*, 769 F.3d 936 (7th Cir. 2014) .................................................14

*Pierce v. Tex. Department of Criminal Justice*, 37 F.3d 1146 (5th Cir. 1994)..........................4

*Pinard v. Clatskanie School District 6J*, 467 F.3d 755 (9th Cir. 2006)...........................6, 10

*Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905 (9th Cir. 2014) ...........................15

*Prager University v. Google LLC*, 951 F.3d 991 (9th Cir. 2020)......................................11

*Rendish v. City of Tacoma*, 123 F.3d 1216 (9th Cir. 1997) ..........................................12

*Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) .........................................1

*Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005)..................................................13

*Rutan v. Republican Party of Illinois,* 497 U.S. 62 (1990) ..........................................5

*Sampson v. County of Los Angeles by & through Los Angeles County Department
    of Children & Family Services*, 974 F.3d 1012 (9th Cir. 2020) ...................................1, 4

*Skoog v. County of Clackamas*, 469 F.3d 1221 (9th Cir. 2006) ......................................8, 9

*State v. Moody's Corp.*, 2012 WL 2149408 (Conn. Super. Ct. May 10, 2012)............................11

*TAP Worldwide, LLC v. Becker*, 2010 WL 2757354 (C.D. Cal. July 12, 2010) ...........................14

*Thomas v. City of Beaverton*, 379 F.3d 802 (9th Cir. 2004)......................................9, 10

*Turner Broadcasting Systems v. FCC,* 512 U.S. 622 (1994)........................................11, 12

*Ulrich v. City and County of San Francisco,* 308 F.3d 968 (9th Cir. 2002)............................4

*WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834 (N.D. Cal. 2019) ...................................14

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)......................................................3, 4

**STATUTES**

42 U.S.C. §  1983 ................................................................................................................14

47 U.S.C. §  230 ..................................................................................................................1

**OTHER AUTHORITIES**

Crossroads with Joshua Philipp, *CPAC 2021: AG Ken Paxton on Immigration
    Lawsuit, and Protecting Constitution Against Federal Orders* (Feb. 27,
    2021), https://tinyurl.com/2hcpy3zr ..............................................................................10

1    Twitter's Motion provides a simple analogy to illustrate why Attorney General Paxton's

2    unlawful actions should be enjoined: his retaliatory civil investigative demand ("CID") to Twitter

3    is as inappropriate as a subpoena issued to a newspaper editor in retaliation for the termination of

4    an editorial column favored by a government attorney.  Remarkably, AG Paxton responds not by

5    seeking to distinguish that hypothetical, but by boldly claiming that such a subpoena would be

6    lawful and beyond the authority of this Court to enjoin.  AG Paxton contends that he *does* have

7    the power to insist that speakers meet his definition of fair and neutral.  Opp. 12 (claiming he could

8    seek "to prevent Twitter from engaging in viewpoint discrimination").  And he asks the Court to

9    announce a new and profoundly misguided rule of law: that the victim of an explicitly retaliatory

10   investigation that definitively chills First Amendment rights may *never* sue to enjoin it.  Opp. 8

11   ("retaliatory investigation . . . is not a cognizable claim").  In such a regime, the threat of

12   government reprisal would lurk outside the door of every newsroom, broadcast studio, and

13   publishing house, stalking the deliberations within.  This Court must reject AG Paxton's positions.

14   Under settled law, the First Amendment bars the state from telling a newspaper which

15   editorials it must run.  *Miami Herald Publ'g v. Tornillo*, 418 U.S. 241, 257-58 (1974).  The First

16   Amendment therefore likewise bars the state from telling Twitter whose speech it must carry and

17   distribute on its platform.  *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)

18   (holding that there is "no basis for qualifying the level of First Amendment scrutiny that should be

19   applied to" the Internet); *see also Hurley v. Irish-American Gay, Lesbian & Bisexual Group*, 515

20   U.S. 557, 568-70 (1995) (organizers have First Amendment right to determine which messages

21   are expressed in their parade).[1]  Retaliatory investigations—designed to punish protected activity

22   and to obtain the same editorial influence through threats and intimidation—also violate the First

23   Amendment, and should be enjoined.  *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66-67

24   (1963) ("informal censorship" through "the threat of invoking legal sanctions and other means of

25   coercion, persuasion, and intimidation" can violate the First Amendment); *Sampson v. Cty. of Los*

26

27   _____

[1] As Twitter's opening brief explains, this case does not rest on Section 230 of the Communications
28   Decency Act, and analysis of Twitter's status under Section 230 is distinct from the analysis of the
     protections to which it is entitled under the First Amendment.  *See* Mot. 4 n.1.

*Angeles by & through L.A. Cty. Dep't of Children & Family Servs.*, 974 F.3d 1012, 1020 (9th Cir. 2020) (same).   Indeed, AG Paxton himself argued that courts should enjoin enforcement of CIDs that chill First Amendment rights in the amicus brief he filed on behalf of Exxon.   His complete about face—purporting to find support in the law for what he previously forcefully condemned— perfectly illustrates the dangers in allowing public officials to decide what is fair or biased.

AG Paxton's unsupported legal positions are necessary because the facts are against him. Consider what his opposition does *not* say.   There is no declaration from AG Paxton explaining his motives, denying his purpose was to retaliate for Twitter's content moderation decisions (including the suspension of President Trump's account), or asserting he would have issued the CID without that purpose.   Instead, he submits a declaration from an employee to establish the irrelevant fact that AG Paxton did not himself physically issue the CID.   That declaration does not deny the CID was issued at AG Paxton's direction (as he himself made clear in his press release announcing it) and does not claim it would have been issued absent AG Paxton's displeasure with Twitter's decision to permanently suspend President Trump's account.   Nor does the declaration attempt to explain the timing of the CID—just days after that suspension—or to dispel the strong inference of retaliation that follows from that timing and AG Paxton's multiple public statements. On this record, Twitter has more than established that it is likely to succeed in showing that the CID was issued in retaliation for its protected conduct in violation of the First Amendment.

AG Paxton fares no better on the other requisites for a preliminary injunction.[2]   He disputes irreparable harm, but only by denying what he once expressly affirmed: that the chilling of First Amendment rights *is* irreparable harm.   *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009).   Indeed, his threats of enforcement ("I will fight them with all I've got") and intrusive demands for records about Twitter's First Amendment-protected decisions are the very sort of official acts that impose an unconstitutional chill—as he himself recognized in his *Exxon* amicus brief.   And on the other elements, AG Paxton

---

[2] AG Paxton's criticism (Opp. 6) of the Ninth Circuit's standard for preliminary injunctions should not be indulged.   Whatever his view of *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), its holding remains binding, *see Doe #1 v. Trump*, 984 F.3d 848, 870 (9th Cir. 2020).   Regardless, an injunction should issue even under his preferred standard.

1    simply defaults.  His opposition does not even address the public interest or the balance of the

2    hardships, effectively conceding that those two factors support granting injunctive relief here.

3           The Court should, accordingly, enter the requested preliminary injunction.

4                                              **ARGUMENT**

5    **I.     TWITTER IS LIKELY TO SUCCEED ON THE MERITS**

6           AG Paxton disputes Twitter's likelihood of success on the merits because (1) retaliatory

7    investigations are, in his view, never actionable; (2) as a fall back, Twitter should be required to

8    prove something beyond the traditional elements of a First Amendment retaliation claim; and

9    (3) the CID and investigation were not motivated by constitutionally protected activity.  Opp. 8-

10   17.  In doing so, he misreads or ignores the authorities that govern this case, and asks the Court to

11   look past his repeated and explicit public statements laying bare his motives.  These arguments are

12   meritless, and his procedural objections are refuted in Twitter's opposition to his motion to dismiss

13   (Dkt. 58), which Twitter incorporates here by reference.

14          **A.     RETALIATORY INVESTIGATIONS CAN VIOLATE THE FIRST AMENDMENT**

15          AG Paxton's central contention is that, as a matter of law, a retaliatory investigation claim

16   is "not . . . cognizable."  Opp. 8.  Were that true, it would mean that no injunctive relief would be

17   available even in the hypothetical described above—a subpoena to a newspaper editor demanding

18   information about the decision to cancel an op-ed column.  This is simply not the law.  Plaintiffs

19   claiming retaliation need only demonstrate that "an official's acts would chill or silence a person

20   of ordinary firmness from future First Amendment activities."  *Lacey v. Maricopa Cty.*, 693 F.3d

21   896, 916 (9th Cir. 2012).  And the Ninth Circuit has held that an investigation "unquestionably"

22   can "chill[] the plaintiffs' exercise of their First Amendment rights."  *White v. Lee*, 227 F.3d 1214,

23   1228 (9th Cir. 2000).  AG Paxton has said as much himself, arguing that First Amendment rights

24   are necessarily "threatened by the chill of subpoenas."  Sivaram Decl., Ex. A ("Paxton Am. Br.")

25   at 6; *see also* Opp. 8.

26          In support of his position, AG Paxton repeatedly relies (*see* Opp. 8, 9, 10, 18) on a footnote

27   in *Hartman v. Moore* that, by its own terms, decided nothing, 547 U.S. 250, 262 n.9 (2006)

28   ("Whether the expense or other adverse consequences of a retaliatory investigation would ever

justify recognizing such an investigation as a distinct constitutional violation is not before us."). That the Supreme Court has not yet had to decide the question provides no reason at all to ignore the settled and binding law in this circuit, cited above.

AG Paxton next argues—without any support from the decisions themselves—that the Ninth Circuit has impliedly required some act beyond an investigation to prove a constitutional violation. Opp. 9-10. That is incorrect. To be sure, some of the retaliation cases in this circuit that AG Paxton cites, *id.*, involved retaliatory conduct beyond an investigation. But the relevance of those decisions to this case lies in their articulation of the governing legal standard, which supports Twitter's claim, and none of those cases holds that *more* than a retaliatory investigation is required.[3] AG Paxton focuses in particular on *Ulrich v. City and County of San Francisco*, which he says requires something more than an investigation. Opp. 10. But that case held that an investigation alone was actionable; the "more substantive actions" AG Paxton points to (*id.*) provided additional, distinct bases for the plaintiff's claim. *See* 308 F.3d 968, 977 (9th Cir. 2002) (noting several actionable "adverse employment actions" in the record, one of which was an investigation). And of course AG Paxton here accompanies his investigation with threats of enforcement action: to "fight" Twitter with "all I've got." Williams Decl., Ex. D (Dkt. 5-1). He says nothing about the numerous cases in which investigations or pronouncements that "intimat[ed] . . . adverse regulatory action would follow"—as his do—were found to chill protected activity. *Greisen v. Hanken*, 925 F.3d 1097, 1114 (9th Cir. 2019); *White*, 227 F.3d at 1228; *accord Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[A] statement that 'warns' a person to stop doing something" is actionably adverse because, "[b]y its very nature, . . . it carries the implication of some consequence of a failure to heed that warning").[4]

---

[3] *See* Mot. 16-17; *see also Sampson v. Cty. of Los Angeles by & through Los Angeles Cty. Dep't of Children & Family Servs.*, 974 F.3d 1012, 1020 (9th Cir. 2020) (holding that there "is a longstanding, clearly established right under the First Amendment to be free from retaliation in the form of *threatened* legal sanctions" (emphasis added)); *id.* ("Informal measures . . . and other means of coercion, persuasion, and intimidation[] can violate the First Amendment." (internal quotation marks omitted)); *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003) (same).

[4] Lacking any binding authority, AG Paxton falls back on out-of-circuit decisions. Opp. 8-9. And those decisions rest on the erroneous premise that actions that "may have had the effect of chilling [the plaintiff's] protected speech" nevertheless comport with the First Amendment. *Pierce v. Tex.*

Regardless, the CID here—standing alone—would chill the speech of a person of ordinary firmness.  AG Paxton himself has previously admitted as much—that retaliatory CIDs "suppress" speech and are "tantamount to censorship," Paxton Am. Br. 4, and that protected speech is inherently "threatened by the chill of subpoenas, like [a] CID, hanging in the air," because "the issuance and threat of compelling a response to [a] CID" represent an "attempt[] to silence" the protected activity under scrutiny, *id.* at 6.  And although the AG now tries to minimize his CID's intrusiveness by repeatedly citing the number of categories of documents he demands, Opp. 1, 5, 13, it is the sensitive nature of those requests, not their quantity, that matters.[5]  It is easy to see why that is so; a demand for months of reporters' lunch orders is different in kind from a request for the notes taken at even one meeting of a newspaper's editorial board.  Here, AG Paxton demands the notes, not the receipts—he wants all of Twitter's internal policies and procedures related to content moderation, which go to the core of its constitutional right to decide what content to share on its platform.  Mot. 4-5, 13-14, 16; *see Tornillo*, 418 U.S. at 257-58 (First Amendment protects the "exercise of editorial control and judgment").  Worse still, his demands "are continuing in nature," Compl., Ex. 1 at 8, subjecting every future decision Twitter makes regarding its moderation policies and practices to the chill of immediate state inspection.

Equally flawed is AG Paxton's argument that this analysis should somehow change because "Twitter is worth tens of billions of dollars."  Opp. 13.  There is no market-cap exception to the First Amendment, and AG Paxton offers nothing to support his reinterpretation of the governing test.  The Ninth Circuit, moreover, has repeatedly applied the "person of ordinary firmness" standard "objectively," without reference to the resources of the speaker facing retaliation.  *See, e.g.*, *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1054-55 (9th Cir. 2019) (finding standard met "notwithstanding the fact that [the plaintiff] himself was not chilled"); *Mendocino*

---

*Dep't of Criminal Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994).  That contravenes not only the Ninth Circuit precedent cited above, but also *Rutan v. Republican Party of Illinois*, in which the Supreme Court said that the First Amendment protects against "an act of retaliation as trivial as failing to hold a birthday party for a public employee," 497 U.S. 62, 75 n.8 (1990).

[5] Even under the AG's metric, the CID is burdensome enough to chill speech; it demands thousands of sensitive documents requiring a costly review by Twitter employees and counsel.  Mot. 16 n.5.

*Env't Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.").   The question here "is generic and objective," and whether the plaintiff itself "was, or would have been, chilled is not the test." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016).  So AG Paxton's false assertion that the CID and associated investigation did not actually chill Twitter's speech is irrelevant.

### B.   THE NINTH CIRCUIT HAS REJECTED THE ADDITIONAL ELEMENTS AG PAXTON WOULD GRAFT ONTO FIRST AMENDMENT RETALIATION CLAIMS

AG Paxton further errs in seeking to add three elements to the settled test for retaliation claims.  He contends Twitter must demonstrate that his investigation caused a "loss of a valuable governmental benefit or privilege," that the investigation has terminated in Twitter's favor, and that the investigation lacks any objective basis.  Opp. 9-11, 13-14.  But Ninth Circuit law is clear. To prevail on its retaliation claim, Twitter need show only that "(1) [it] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."  *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).   The Court should reject AG Paxton's efforts to add new elements to this longstanding test.

1.   *Retaliation need not involve loss of a valuable governmental benefit or privilege.*  AG Paxton purports to derive his first extra element from *Hyland v. Wonder*, 972 F.2d 1129 (9th Cir. 1992), but it held only that a public employee *can* prove retaliation by demonstrating "the loss of a valuable governmental benefit or privilege," not that such a showing is required, *id.* at 1134-36. The Ninth Circuit has expressly rejected AG Paxton's added requirement, holding it was "incorrect[]" to "conclude[] that if an alleged retaliatory act cannot be characterized as the loss of a valuable governmental benefit or privilege, it can never constitute an adverse . . . action in a First Amendment retaliation case."  *Coszalter v. City of Salem*, 320 F.3d 968, 974 (9th Cir. 2003).  Such a definition "is inconsistent with [Ninth Circuit] case law," *id.*, which requires an assessment of "whether an official's acts would chill or silence a person of ordinary firmness from future First

1  Amendment activities," *Lacey*, 693 F.3d at 916 (applying this standard to a newspaper's retaliation

2  claim).  Contrary to AG Paxton's position, it does not "matter whether an act of retaliation is in

3  the form of the removal of a benefit or the imposition of a burden."  *Coszalter*, 320 F.3d at 975.

4  　　　2.  *Favorable termination of the investigation is not an element of a retaliation claim.*  AG

5  Paxton's favorable-termination requirement likewise ignores that the Ninth Circuit has repeatedly

6  held that *threatened* legal sanctions, standing alone, may give rise to a retaliation claim.  *Supra*, at

7  4-5 & n.3.  In such cases, the First Amendment harm results from the *prospect* of future

8  proceedings, not the proceedings themselves.  Put another way, "[t]he power of a threat lies not in

9  any negative actions eventually taken, but in the apprehension it creates in the recipient of the

10  threat."  *Brodheim*, 584 F.3d at 1271; *see also Greisen*, 925 F.3d at 1114.  As AG Paxton himself

11  has recognized, the "very action" of issuing a retaliatory CID "harms" the subject of the demand

12  because of the "threat of compelling a response"; whether some legal action is subsequently

13  brought and resolved is beside the point.  Paxton Am. Br. at 6 (asserting CID to Exxon should be

14  enjoined pre-enforcement).

15  　　　The lone precedent AG Paxton cites is an out-of-circuit decision involving a "malicious

16  prosecution" claim premised on a series of *completed* enforcement actions.  Opp. 10 (quoting

17  *Johnson v. Louisiana Dep't of Agric.*, 18 F.3d 318, 320 (5th Cir. 1994)).  There, the Fifth Circuit

18  held that the plaintiff needed to show those actions had terminated in his favor to state a damages

19  claim.  *Johnson*, 18 F.3d at 320-21.  But the harm that that plaintiff claimed—which resulted from

20  the already-concluded enforcement actions—is different in kind from the harm Twitter continues

21  to suffer as a result of the AG's conduct.  Whatever the rationale for requiring termination

22  (favorable or not) in a case seeking damages from injuries allegedly suffered in prior proceedings,

23  it makes no sense to impose such a requirement on a claim like Twitter's for injunctive relief from

24  the *ongoing* chilling effect of threatened sanctions and pre-enforcement investigatory acts.

25  　　　3.  *Lack of probable cause or objective basis is not required.*  AG Paxton is likewise wrong

26  in arguing (Opp. 13-16) that Twitter must show his investigation lacked any probable cause or

27  objective basis.  He cites no analogous case imposing such a requirement.  That is because, again,

28  he cannot:  The Ninth Circuit has held that a plaintiff "need not have pled the absence of probable

cause in order to state a claim for retaliation" based on an investigatory search.  *See Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006).  Instead, AG Paxton overreads language in *Hartman* regarding retaliatory prosecutions.  That analysis was tied to the "distinct problem of causation" created by the absolute immunity prosecutors enjoy when bringing criminal charges, which led the Court to conclude that a showing of lack of probable cause was necessary "to bridge the gap between the" motive of the "nonprosecuting government agent[,]" who could be sued, "and the prosecutor's action."  547 U.S. at 261-63.  AG Paxton does not claim such immunity here.  Nor could he.  *Id.* at 262 n.8 ("An action could still be brought against a prosecutor for conduct taken in an investigatory capacity, to which absolute immunity does not extend.").  And because Twitter has directly sued the government actor who violated its rights, the "requisite causation between the defendant's retaliatory animus and the plaintiff's injury" is no "more complex" here than in any other case.  *Id.* at 261.[6]  So there is no place for AG Paxton's proposed new element.  *Bello-Reyes v. Gaynor*, 985 F.3d 696, 700-701 (9th Cir. 2021) (refusing to apply the "no probable cause standard" outside of criminal prosecutions and the "closely related context of retaliatory arrest[s]" (internal quotation marks omitted)); *Colonies Partners v. Cty. of San Bernardino*, 2020 WL 5102160, at *22 (C.D. Cal. July 28, 2020) (noting "several courts have recognized a cause of action for retaliatory investigation" since *Hartman* without requiring "a lack of probable cause").

AG Paxton also refers to the presumption of regularity generally afforded to executive branch officers, claiming that this presumption further supports imposing a no-objective-basis requirement.  Opp. 14-15.  But *every* First Amendment retaliation case turns on official conduct; without it, there would be no state action and thus no constitutional claim.  And the Ninth Circuit has never imposed AG Paxton's proposed test in cases, like this one, in which the plaintiff has alleged and substantiated that a government official's investigation and/or enforcement threat

---

[6] AG Paxton erroneously argues that the same causation problem exists here because Twitter sued him in his official capacity and he had an employee sign the CID.  But Twitter's claim is based on actions taken by AG Paxton himself or at his direction under his name.  Indeed, he announced the CID from his own Twitter account, stating "*I launched an investigation into . . . Twitter,*" and his office contemporaneously issued an official press release stating "*Attorney General Ken Paxton* today issued [a] civil investigative demand[] to . . . Twitter."  Williams Decl., Ex. A at 1, Ex. B at 1 (emphasis added).  AG Paxton offers no evidence to dispute his personal responsibility.

1   constitutes retaliation for the plaintiff's exercise of its First Amendment rights. *See supra*, at 8.

2   In any event, proof of retaliatory motive *is* the "clear evidence to the contrary" that the AG

3   concedes overcomes any presumption of regularity. Opp. 15; *see also Skoog*, 469 F.3d at 1234

4   (holding that, despite presumption of regularity, a retaliation claim premised on a search and

5   seizure does not "require[e] the pleading of no probable cause"). And here, as explained, there is

6   ample evidence of retaliatory motive, including the timing of the CID (right after suspension of

7   President Trump's account), the CID's content (targeting protected activity), and AG Paxton's

8   own statements about the CID (linking it to both that suspension and the alleged "silencing" of

9   "speech [Twitter] disagree[s] with."). Williams Decl., Ex. B at 1-2.

10  ### C.    AG PAXTON RETALIATED AGAINST TWITTER

11       AG Paxton's assertion that his challenged actions were not motivated by Twitter's

12  protected activity lacks any serious factual support and is disproved by ample direct evidence,

13  including his own words. The CID's content, its timing, and AG Paxton's written and oral

14  statements about it all prove that he issued the CID, made threats, and commenced his actions in

15  retaliation for Twitter's protected content moderation decisions.

16       Start with the CID itself. As explained, Mot. 18-20, it demands documents going to the

17  core of Twitter's editorial discretion, including "all" content moderation policies and procedures.

18  Compl., Ex. 1 at 9. These requests are ongoing, potentially subjecting every future decision

19  regarding Twitter's moderation practices to state review. *Id.* at 8. Further, it demands all "internal"

20  communications "regarding the social media platform Parler." *Id.* at 9. Even though Twitter did

21  not restrict or remove Parler's account, Williams Decl. ¶ 21, the CID's request for internal records

22  *about* that decision—along with any other moderation choices related to Parler—intrudes into

23  Twitter's protected editorial judgments. This is direct evidence of retaliatory motive.

24       The CID's timing—just four days after Twitter's protected editorial decision to suspend

25  President Trump's account—renders AG Paxton's retaliatory motive even more obvious. *See*

26  *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016) ("[T]emporal

27  proximity between the protected activity and alleged retaliatory conduct [may] demonstrate that

28  the defendant's purported reasons for its conduct are pretextual or false."); *accord Thomas v. City*

*of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004).  The Ninth Circuit has held that an interval of "seven weeks" or more between the protected activity and adverse action shows retaliatory motive. *Thomas*, 379 F.3d at 812 (collecting cases).  Here, the interval was not even seven *days*.

AG Paxton's contemporaneous explanations confirm his retaliatory motive.  His press release announcing the CID expressly pegs the investigation to protected activity, citing "the seemingly coordinated deplatforming of the President . . . and several leading voices," the "silenc[ing]" of "those whose speech and political beliefs do not align with leaders of Big Tech companies," and the AG's interest in "how" companies like Twitter "moderate and possibly eliminate speech they disagree with."  Williams Decl., Ex. B.  His Tweets and interviews further cement the point.  *Id.*, Ex. A (stating he is "investigating [Twitter's] policies & practices regarding content moderation"); *Id.*, Ex. D (Tweeting he will "fight" Twitter because it is "closing conservative accts" and "hates free speech"); Crossroads with Joshua Philipp, *CPAC 2021: AG Ken Paxton on Immigration Lawsuit, and Protecting Constitution Against Federal Orders* (Feb. 27, 2021), https://tinyurl.com/2hcpy3zr (admitting investigation is "related to the whole issue of the President being de-platformed" and Paxton's desire to "regulate" moderation decisions).

AG Paxton's minimal submissions do nothing to undermine this proof.  He neither offers any declaration from himself explaining why he issued the CID and commenced the investigation, nor provides any evidence disputing or clarifying any of his numerous admissions of retaliatory intent.   Instead, he submits only a declaration from the employee who physically signed the CID. Schuelke Decl. ¶¶ 4-5. But that document does not disclaim—as AG Paxton himself announced— that the AG directed that the CID be issued.  Nor does it contest his personal control of the investigation and other retaliatory actions giving rise to Twitter's claim.

It is no response for AG Paxton to claim (Opp. 11-12) he was *also* interested in whether Twitter's public statements about its moderation policies are accurate.  Even setting aside whether such a claim is credible, Twitter need only show that its protected moderation decisions were "a substantial or motivating factor in the defendant's conduct," at which point the burden shifts to AG Paxton to show he "*would have* taken the same action even in the absence of protected conduct."  *Pinard*, 467 F.3d at 770 (emphasis added); *see also Bello-Reyes*, 985 F.3d at 702 ("The

1   Government 'must show more than that they "*could have*" punished the plaintiffs in the absence

2   of the protected speech.'" (emphasis added)).  AG Paxton has made no such showing.

3       In any event, the claim is not credible.  The supposed "professions [by Twitter] of content

4   neutrality and transparency" that AG Paxton now asserts he wishes to investigate, Opp. 1-3, are

5   actually "impervious to being 'quantifiable'" and "classic, non-actionable opinions."  *Prager Univ.*

6   *v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020); *see also Murphy v. Twitter*, 274 Cal. Rptr. 3d

7   360, 382, (Cal. Ct. App. 2021) ("Twitter's general declarations of commitment to free speech

8   principles cannot support a fraud claim.").[7]  Media companies (social or otherwise) do not open

9   the entirety of their editorial processes to government scrutiny when they profess to be "Fair and

10  Balanced" or to deliver "All the News That's Fit to Print."  Nor would it be possible for courts to

11  enforce those terms without engaging in subjective judgments about the speech alleged to violate

12  them.  Purported inquiries into the accuracy of statements about political neutrality should be seen

13  for what they are: thinly veiled efforts at punishing disfavored speech.  AG Paxton cannot

14  circumvent Twitter's First Amendment rights by opening such a pretextual investigation.

15      AG Paxton also suggests that he may lawfully investigate whether Twitter is "biased"

16  against conservatives because he has the authority "to prevent Twitter from engaging in viewpoint

17  discrimination."  Opp. 2-4, 12.  But the Constitution plainly forbids that assertion of power.

18  Although Twitter in fact does not make editorial decisions based on political considerations, the

19  First Amendment guarantees its right to do so.  Mot. 14-15 & n.4; *see also* Brief of the Reporters

20  Committee et al. as Amici Curiae, at 3.  AG Paxton may not order political neutrality from Twitter

21  any more than he could demand it from the *San Francisco Chronicle*.

22      Contrary to the AG's opposition (at 12), *Turner Broadcasting Systems v. FCC* did not hold

23  otherwise and instead supports Twitter's position.  *Turner* involved rules requiring monopolistic

24

25  _____

    [7]  The single state trial court case AG Paxton offers in defense of his theory (Opp. 11) is not to the

26  contrary.  That unpublished decision involved alleged misrepresentations about a credit rating

    agency's "independence," which the court concluded "constitute[d] verifiable representations"

27  relied on by consumers to make investment decisions.  *State v. Moody's Corp.*, 2012 WL 2149408,

    at *3, *7 (Conn. Super. Ct. May 10, 2012).  But specific statements by a credit rating agency that

28  it operates independently and that induce the purchases of securities can be evaluated objectively

    in a manner that Twitter's general explanations of its policies and practices cannot.

cable systems to carry local broadcasters. *See* 512 U.S. 622, 630-32 (1994). The Court found such rules could conceivably be constitutional, but essential to that holding was the fact that the rules applied "without reference to the content of speech." *Id.* at 643. AG Paxton's claimed authority to impose a standard of political neutrality on Twitter and similar platforms is exactly the opposite—it could be enforced only by considering the content of speech. But *Turner* recognized that those who "engage in and transmit speech . . . are entitled to the protection of the speech and press provisions of the First Amendment," and concluded that "[g]overnment action that . . . requires the utterance of a particular message favored by the Government, contravenes" the First Amendment. *Id.* at 636, 641, 652. *Turner* thus negates the very power that Paxton seeks.[8]

In sum, the record evidence overwhelmingly establishes the AG's retaliatory motive, making Twitter highly likely to succeed on the merits of its claim.

## II.   AG PAXTON FAILS TO UNDERMINE TWITTER'S SHOWING OF IRREPARABLE HARM

AG Paxton attempts to contest Twitter's showing that it will suffer irreparable injuries absent an injunction by falsely painting this case as a garden-variety challenge to a routine CID. Opp. 17. His CID is anything but routine—it is an avowed effort to marshal the powers of a state against Twitter because of its editorial decision to suspend President Trump's account and its alleged editorial bias against political views that AG Paxton prefers. And this suit is more than a challenge to the issuance of a CID. It seeks to rectify distinct constitutional injuries Twitter continues to suffer, including the ongoing chill that the CID, the investigation, and AG Paxton's threats cast over Twitter's protected moderation decisions. It is these continuing, irreparable injuries that the requested injunction will remedy, and which AG Paxton wholly ignores.[9]

1. AG Paxton asserts that Twitter should simply submit to his CID because, he argues, the

---

[8] AG Paxton's other arguments regarding retaliatory motive also lack merit. His claim that his "interest in the regulation of Big Tech companies" is his own protected opinion, Opp. 16-17, misses the mark. AG Paxton is entitled to his opinions, but the First Amendment bars him from using his power as Texas's highest law-enforcement officer to punish Twitter for its moderation decisions. Likewise unavailing is his assertion that his office's offer "to negotiate in good faith" weighs against a finding of retaliatory motive. Opp. 16. Those "negotiations" included not a single offer to limit the CID's scope.

[9] AG Paxton erroneously contends that *Rendish v. City of Tacoma*, 123 F.3d 1216, 1226 (9th Cir. 1997), supports the sweeping proposition that "no presumption of irreparable harm arises in a First

1   costs of doing so are minimal and Twitter has not demonstrated its expressive activity will be

2   chilled by disclosure of confidential documents.  Opp. 18.  But this suit is not about whether

3   Twitter can afford the costs of producing documents.  It is about whether the prospect of having

4   to disclose sensitive internal documents to a law enforcement official who has launched a

5   retaliatory investigation and promised to "fight" Twitter with "all" he has would "chill or silence

6   a person of ordinary firmness from future First Amendment activities," *Lacey*, 693 F.3d at 916.

7   It would.  Indeed, the Ninth Circuit said so in *Lacey,* finding that the issuance of subpoenas

8   demanding the disclosure of a newspaper's internal communications was "sufficient to chill . . .

9   protected speech." *Id.* at 917.  And AG Paxton also said so in his *Exxon* amicus brief.  Paxton Am.

10  Br. 6 (constitutionally protected "open and candid discussions" are "threatened by the chill of

11  subpoenas").  That is exactly what Twitter's evidence confirms.  *See* Williams Decl. ¶ 12 ("If this

12  CID and investigation were allowed to proceed . . . [there] would be significant diminishment of

13  the willingness of Twitter employees to speak candidly and freely in internal content moderation

14  deliberations. . . . [T]his would likely compromise and inhibit Twitter's ability to make moderation

15  decisions . . . ."); *Id.* ¶ 13 ("[T]he pendency of the CID and related investigation create a concrete

16  prospect that Twitter's broad swath of internal, confidential policies and procedures regarding its

17  moderation of its platform may have to be turned over to law enforcement officials.").  If the price

18  of exercising unfettered editorial discretion is the requirement to hand over sensitive internal

19  documents to a hostile law enforcement official with the power to bring charges, a person of

20  reasonable firmness would surely think twice before removing content the official favors.

21  Contrary to what AG Paxton argues, Twitter need not show it has actually succumbed to

22  his pressure.  Mot. 18–19.  Any other rule would unfairly "allow a defendant to escape liability for

23  a First Amendment violation merely because an unusually determined plaintiff persists in his

24  protected activity." *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005); *accord Doe v. Harris*,

25

26  Amendment retaliation claim."  Opp. 17.  That is not the controlling standard, as recently explained
    in *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1150 n.12 (D. Or. 2020).  The

27  defendants there cited the same phrase from *Rendish* to argue that the plaintiffs were not entitled
    to a presumption of irreparable harm.  But the court disagreed, explaining that that aspect of

28  *Rendish* is inoperative where, as here, a likelihood of success on the merits has been shown.  *Id.*

772 F.3d 563, 583 (9th Cir. 2014) ("A 'colorable First Amendment claim' is 'irreparable injury sufficient to merit the grant of relief.'") (affirming preliminary injunction).[10]

2. AG Paxton does not dispute that the potential for public disclosure of Twitter's editorial confidences exacerbates the chill from unlawful retaliation. Instead, he minimizes these concerns on the theory that Twitter has no "First Amendment privilege" in these records. Opp. 20. But disclosure of confidential information can cause irreparable harm even in the absence of an evidentiary privilege. *See, e.g.*, *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019); *TAP Worldwide, LLC v. Becker*, 2010 WL 2757354, at *5 (C.D. Cal. July 12, 2010).

3. AG Paxton's contention that Twitter's injury is not irreparable because Twitter could instead present its federal constitutional claim to a Texas state court is likewise meritless. All but one of the cases he cites—almost entirely outside the First Amendment context—involved challenges to *federal* administrative subpoenas, which could be adequately resolved in federal administrative enforcement proceedings. Opp. 21-22. Those cases have no bearing on suits, like this one, against a state actor under § 1983. A core purpose of § 1983 is to provide a federal forum in which plaintiffs with federal constitutional claims against state officials may present such claims without waiting for a state enforcement action or otherwise seeking relief in a state court. *Monroe v. Pape*, 365 U.S. 167, 170 (1961). And AG Paxton's lone § 1983 case, *O'Keefe v. Chisholm*, 769 F.3d 936, 939 (7th Cir. 2014), is inapposite, as it held that the plaintiff there (unlike Twitter) had no colorable First Amendment (or other federal law) claim and parallel state court criminal proceedings were already underway.

4. The AG's last argument regarding irreparable injury fails too. His theory seems to be that, no matter what this Court orders, his CID and investigation will "remain extant" and all of the damage to Twitter will have already occurred. Opp. 22. Not so. Prohibiting him from enforcing the CID or continuing his retaliatory investigation will terminate the conduct that is chilling Twitter's First Amendment rights and remedy the *ongoing* injury Twitter is suffering.

---

[10] Even less pertinent is AG Paxton's assertion (Opp. 18-19) that Twitter has stoically maintained its content moderation policies despite criticisms he leveled at the company in 2018. How Twitter may have responded to such past rhetoric is irrelevant to whether it is chilled *now* by his CID, investigation, and explicit threats—all in express retaliation for its protected editorial decisions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   AG PAXTON DOES NOT DISPUTE THAT THE PUBLIC INTEREST AND BALANCE OF EQUITIES SUPPORT AN INJUNCTION

Remarkably, AG Paxton's opposition simply defaults on the third and fourth factors of the test for issuing a preliminary injunction, namely the public interest and the balance of equities between the parties.  He has thus effectively conceded that the balance of interests favors the party "whose First Amendment rights are being chilled." *Harris*, 772 F.3d at 583.  His failure to present the Court with any argument with respect to how the preliminary injunction would adversely impact the public interest or the interests of his office confirms both that there is no urgent need for him to proceed with his investigation of Twitter during the pendency of this suit and that, in the meantime, the equities strongly favor issuing a preliminary injunction to protect Twitter's First Amendment rights and preserve the present status quo.  *Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905, 917-18 (9th Cir. 2014) (finding waiver where defendant did not contest plaintiff's showing on these factors).

### IV.   TWITTER'S REQUESTED INJUNCTION IS APPROPRIATELY TAILORED

Finally, AG Paxton is wrong that any injunction should be limited to his retaliatory CID, leaving him otherwise free to investigate Twitter's content moderation policies under the DTPA. *See* Opp. 24.  An injunction quashing his investigation is the appropriate remedy to fully thaw the chill of Twitter's First Amendment rights.  *See* Proposed Order (Dkt. 5-4).  And contrary to what AG Paxton halfheartedly argues (Opp. 24), the threat of other unconstitutional enforcement action is far from speculative, given his recent public statements vowing to "fight" Twitter with "all I've got."  Williams Decl., Ex. D.  After all, "the very purpose" of CIDs "is to assist the agency in determining whether [a defendant] has engaged in violations that could justify bringing an enforcement action."  *See, e.g.*, *Consumer Fin. Prot. Bureau v. Seila Law LLC*, 984 F.3d 715, 719 (9th Cir. 2020).  Twitter's exercise of its First Amendment rights will continue to be chilled so long as AG Paxton's retaliatory investigation remains live.

### CONCLUSION

For the reasons set forth above and in the motion, the Court should grant Twitter's motion.

Respectfully submitted,


/s/ *Patrick J. Carome*

MARK D. FLANAGAN                              PATRICK J. CAROME (*pro hac vice*)
CA Bar No. 130303                             patrick.carome@wilmerhale.com
mark.flanagan@wilmerhale.com                  ARI HOLTZBLATT (*pro hac vice*)
WILMER CUTLER PICKERING                       ari.holtzblatt@wilmerhale.com
   HALE AND DORR LLP                          ANURADHA SIVARAM (*pro hac vice*)
2600 El Camino Real, Suite 400                anuradha.sivaram@wilmerhale.com
Palo Alto, California 94306                   SUSAN PELLETIER (*pro hac vice*)
Telephone:  (650) 858-6000                    susan.pelletier@wilmerhale.com
Facsimile:  (650) 858-6100                    WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
PETER G. NEIMAN (*pro hac vice*)              1875 Pennsylvania Avenue, NW
peter.neiman@wilmerhale.com                   Washington, D.C. 20006
ALEX W. MILLER (*pro hac vice*)               Telephone:  (202) 663-6000
alex.miller@wilmerhale.com                    Facsimile:  (202) 663-6363
RISHITA APSANI (*pro hac vice*)
rishita.apsani@wilmerhale.com                 *Attorneys for Plaintiff*
WILMER CUTLER PICKERING
   HALE AND DORR LLP                          **TWITTER, INC.**
250 Greenwich St., 45 Floor
New York, New York 10007
Telephone:  (212) 295-6487
Facsimile:  (202) 663-6363