**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
PATRICK K. SWEETEN, (*pro hac vice*)
  E-Mail: Patrick.Sweeten@oag.texas.gov
WILLIAM T. THOMPSON (*pro hac vice*)
  E-Mail: Will.Thompson@oag.texas.gov
RYAN D. WALTERS (*pro hac vice*)
  Email: ryan.walters@oag.texas.gov
P.O. Box 12548 (MC-009)
Austin, Tx 78711-2548
Telephone: 512.936.1414
Facsimile: 512.936.0545

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
MICHAEL K. JOHNSON, SB# 130193
  E-Mail: Michael.Johnson@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456
Facsimile: 925.478.3260

Attorneys for Defendant KEN PAXTON IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITTER, INC.,<br><br>      Plaintiff,<br><br>      vs.<br><br>KEN PAXTON, in his official duty as Attorney General in Texas,<br><br>      Defendant. | Case No. 3:21-cv-1644-MMC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER**<br><br>Date:     May 7, 2021<br>Time:    9:00 a.m.<br>Crtrm:   7, 19th floor<br>Judge:   Maxine M. Chesney |

4829-3098-3399.1

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................................. 1

Argument...................................................................................................................................... 1

I.    Twitter's Challenge is Premature ........................................................................................ 1

II.   Twitter Has Not Established Personal Jurisdiction .............................................................. 4

   A.    This Court Lacks Specific Personal Jurisdiction Because Twitter's Claim Is Based on Conduct in Texas.................................................................................................................. 4

      1.    Investigating Twitter for Misleading Texas Consumers in Violation of Texas Law Is Not Purposefully Directed toward California .......................................................................... 4

      2.    Twitter's Claim Does Not Arise Out of or Relate to any California Contacts ............... 7

      3.    Exercising Personal Jurisdiction Over the Texas Attorney General Would Be Unreasonable .................................................................................................................................. 7

   B.    The Office of the Attorney General Has Not Consented to Personal Jurisdiction ............. 9

III.   California Is Not a Proper and Convenient Venue............................................................... 9

   A.    Venue in California Is Improper........................................................................................ 9

   B.    Venue in California Is Inconvenient................................................................................ 11

IV.   The Court Should Abstain.................................................................................................. 11

CONCLUSION ......................................................................................................................... 13



# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albertson v. Millard*,
    345 U.S. 242 (1953) ............................................................................................................... 11

*Almodovar v. Reiner*,
    832 F.2d 1138 (9th Cir. 1987) ............................................................................................... 11

A*shcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................. 4

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ................................................................................................................... 9

*Axiom Foods v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ................................................................................................. 7

*BASF Corp. v. Symington*,
    50 F.3d 555 (8th Cir. 1995) ................................................................................................... 13

*Burdick v. Takushi*,
    846 F.2d 587 (9th Cir. 1988) ................................................................................................. 11

*Calder v. Jones*,
    465 U.S. 783 (1984) ............................................................................................................ 1, 5

*Chez Sex III Corp. v. Twp. of Union*,
    945 F.2d 628 (3d Cir. 1991) .................................................................................................. 12

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................................ 1, 2, 3

*Dedication and Everlasting Love to Animals v. Commonwealth of Pennsylvania,*
    *Bureau of Charitable Organizations*,
    101 F. App'x 224, 2004 WL 1336737 (9th Cir. 2004) ......................................................... 10

*Exxon Mobil Corp. v. Schneiderman*,
    No. 4:16-cv-469, ECF 180 (N.D. Tex. Mar. 29, 2017) ......................................................... 10

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
    141 S. Ct. 1017 (2021) ........................................................................................................ 5, 7

*In re Gee*,
    941 F.3d 153 (5th Cir. 2019) (per curiam) ............................................................................. 8



*Google v. Hood*,
    822 F.3d 212 (5th Cir. 2016) .................................................................................................. 1, 4

*Harris Cty. Com'rs Court v. Moore*,
    420 U.S. 77 (1975) ....................................................................................................................11

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
    649 F.2d 1266 (9th Cir. 1981) ................................................................................................... 7

*Kalman v. Cortes*,
    646 F. Supp. 2d 738 (E.D. Pa. 2009) ...................................................................................... 10

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ............................................................................................................. 7, 8

*Leroy v. Great Western United Corp.*,
    443 U.S. 173 (1979) ................................................................................................................ 10

*Miranda B. v. Kitzhaber*,
    328 F.3d 1181 (9th Cir. 2003) ................................................................................................... 8

*Morningside Church v. Rutledge*,
    No. 3:20-cv-05050, 2020 WL 5077255 (W.D. Mo. Aug. 27, 2020) ............................ 5, 12, 13

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ................................................................................................ 5, 6

*Neal v. Brim*,
    506 F.2d 6 (5th Cir. 1975) ....................................................................................................... 11

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ................................................................................................... 6

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .................................................................................................................... 8

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ................................................................................................... 5

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003) ................................................................................................... 12

*Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cty.*,
    205 F.3d 265 (5th Cir. 2000) ..................................................................................................... 2

*PTI, Inc. v. Philip Morris Inc.*,
    100 F. Supp. 2d 1179 (C.D. Cal. 2000) .................................................................................... 7

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996) ................................................................................................................ 12

*R.R. Comm'n of Tex. v. Pullman Co.*,
   312 U.S. 496 (1941) ............................................................................................... 11, 12

*Stone v. U.S. Sec. Assocs., Inc.*,
   No. 15-cv-235, 2015 WL 2438029 (N.D. Cal. May 21, 2015) ................................. 11

*Stroman Realty, Inc. v. Wercinski*,
   513 F.3d 476 (5th Cir. 2008) ....................................................................................... 5

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) .................................................................................................... 2

*Va. Office for Prot. & Advocacy v. Stewart*,
   563 U.S. 247 (2011) .................................................................................................... 8

*Walden v. Fiore*,
   571 U.S. 277 (2014) .................................................................................................... 6

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ...................................................................................................... 8

*Yahoo! Inc. v. La. Ligue Contre Le Racisme*,
   433 F.3d 1199 (9th Cir. 2006) (en banc) .................................................................... 4

*Ex parte Young*,
   209 U.S. 123 (1908) .................................................................................................... 8

*Zimmer v. Connett*,
   640 F.2d 208 (9th Cir. 1981) ................................................................................... 1, 4

**STATUTES**

28 U.S.C. § 1391(b)(2) ..................................................................................................... 10

28 U.S.C. § 2201 ................................................................................................................ 4

Texas Business and Commerce Code § 17.61(g) .............................................................. 9

Texas Business and Commerce Code § 17.61(a) ............................................................ 12

Texas Deceptive Trade Practices Act ................................................................................ 8

**OTHER AUTHORITIES**

First Amendment ........................................................................................................*passim*

Fed. Trade Comm'n, @FTC, https://twitter.com/FTC ..................................................... 9

L.R. 7-2 .............................................................................................................................. 7

U.S. Const. art. III, § 2 ........................................................................................................... 4

U.S. Dep't of Justice, @TheJusticeDepartment, https://twitter.com/TheJusticeDept .................... 9

**INTRODUCTION**

Under the ordinary rules governing jurisdiction and venue, Twitter's claim should be dismissed. Twitter does not seriously dispute that. For Article III jurisdiction, Twitter acknowledges the general rule that an agency's non-self-executing request for documents is not ripe for review until the agency tries to enforce it. *See* ECF 58 at 18; *Zimmer v. Connett*, 640 F.2d 208, 209 (9th Cir. 1981); *Google v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016). And for personal jurisdiction, Twitter agrees that "ordinary challenges to a state Attorney General's efforts to gather information" cannot be brought in another State. ECF 58 at 10.

Instead, Twitter argues that the rules for "routine cases" do not apply to its First Amendment claim. *Id.* But there is no "free speech exception" to ordinary rules of jurisdiction and venue. In fact, the Supreme Court has repeatedly refused to create such exceptions. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417–18 (2013); *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("We also reject the suggestion that First Amendment concerns enter into the jurisdictional analysis.").

The First Amendment is important. But respecting constitutional and statutory limitations on the authority of federal courts is important too. Twitter cannot avoid the ordinary rules of subject-matter jurisdiction, personal jurisdiction, venue, or abstention just by bringing a free-speech claim.

Throughout its response, Twitter relies on the theory that its speech is being "chilled." But that theory finds no support in Twitter's complaint or its evidence. Twitter already made the strategic choice to base its claim on Defendant's civil investigative demand being objectively chilling—arguing it would deter a hypothetical person of ordinary firmness—not subjectively chilling. Twitter has not established, and has not tried to establish, that a $50 billion company is deterred from speaking because of the threat of ordinary document production. It cannot go back on that decision now. Twitter's claim should be dismissed.

**ARGUMENT**

**I.   Twitter's Challenge is Premature**

Twitter does not seriously dispute the general rule that an agency's non-self-executing request for documents is not ripe for review until the agency tries to enforce it. *See Zimmer v. Connett*, 640 F.2d 208, 209 (9th Cir. 1981); *Google v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016). It

seems to agree that an injury based on the "compelled production of documents" is not ripe until the agency actually tries to compel document production. ECF 58 at 18. Twitter also does not dispute that Defendant has not tried to enforce the non-self-executing civil investigative demand ("CID") at issue here.

Instead, Twitter urges that its claim is special because it involves "First Amendment injury—chilling of speech." ECF 58 at 18. That contradicts Supreme Court precedent. If the underlying government activity being challenged is not sufficiently imminent to support jurisdiction, then the supposed "chilling effect" of that activity is also insufficient to support jurisdiction. *See Clapper*, 568 U.S. at 417–18.[1]

In *Clapper*, the plaintiffs challenged a federal surveillance statute under the First Amendment. 568 U.S. at 407. They had two theories of standing: (1) the risk that their communications would be "intercepted," and (2) their reaction to that risk, namely the "costly and burdensome measures [taken] to protect the confidentiality of their communications." *Id.* at 410, 415. The plaintiffs specifically complained "that the threat of surveillance sometimes compels them to avoid certain e-mail and phone conversations," that is, that their speech had been chilled. *Id.* at 415. Still, the Supreme Court held that they lacked standing. *See id.* at 422.

The first theory failed because government surveillance of the plaintiffs was not "imminent." *Id.* at 410–14. The second theory failed because even "a reasonable reaction to a risk of harm is unavailing" when "the harm [the plaintiffs] seek to avoid is not certainly impending." *Id.* at 416. "[A]llowing [the plaintiffs] to bring this action based on costs they incurred in response to a speculative threat would be tantamount to accepting a repackaged version of [their] first failed theory of standing." *Id.* The "chilling effect" associated with a non-imminent risk of surveillance could not support standing. *Id.* at 417–18.

The same reasoning applies here. Twitter does not dispute that a challenge to the "compelled production of documents" is not yet ripe. ECF 58 at 18. So the alleged chilling effect, which amounts

---

[1] *Clapper* analyzed Article III standing, but "[t]he doctrines of standing and ripeness 'originate' from the same Article III limitation" and "in this case 'boil down to the same question.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014); *see Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cty.*, 205 F.3d 265, 268 n.7 (5th Cir. 2000).

to nothing more than Twitter's supposedly "reasonable reaction to a risk of" document production, also cannot support a claim for prospective relief. *Clapper*, 568 U.S. at 416. Nor can the costs of counsel, *see* ECF 58 at 17, support jurisdiction. Twitter "cannot manufacture standing by incurring costs in anticipation of non-imminent harm." *Clapper*, 568 U.S. at 422.[2]

Twitter suggests that the ordinary rules of ripeness should not apply "[i]n a First Amendment action such as this . . . . because delaying adjudication would continue to constrain its . . . content moderation activities." ECF 58 at 17–18. But there cannot be a First Amendment exception to *Clapper* because *Clapper* was itself a First Amendment case. *See* 568 U.S. at 407. In any event, the supposed "chilling effect" caused by standard delays in adjudicating First Amendment rights do not justify abandoning normal jurisdictional limitations.

In *We, Inc. v. City of Philadelphia*, a litigant argued that its First Amendment rights entitled it to a collateral-order appeal, that is an exception from the ordinary rule denying appellate jurisdiction over interlocutory appeals. 174 F.3d 322 (3d Cir. 1999). The litigant did not want to wait for a final judgment because the delay would create "an unconstitutional chill of the right to petition" protected by the First Amendment. *Id.* at 327. The court rejected that argument. Relying on free speech precedent, the Third Circuit explained that "[t]he courts have never recognized . . . that an immunity from suit was necessary to prevent an unacceptable chill of those First Amendment rights." *Id.* In line with modern precedent, it "rejected the notion that the burden of litigation poses an unacceptable threat to First Amendment values." *Id.* at 328.

Twitter goes a step further than the argument rejected in *We, Inc.* Twitter claims not just an immunity from *suit* but also an immunity from *investigation*. But a supposed "threat to First Amendment values" does not justify expanding this Court's jurisdiction, just as it could not justify expanding the Third Circuit's jurisdiction in *We, Inc.*

Moreover, Twitter's speech has not actually been chilled. On the merits, Twitter claims that it "need not show its speech was actually inhibited or suppressed," so it did not even try. ECF 5 at 15 (alterations and quotations marks omitted). Instead, Twitter rests entirely on the theory that a

---

[2] Even if the cost of counsel could support standing, it could not support a finding of irreparable injury. *See* ECF 38 at 17.

hypothetical person of "ordinary firmness" would be chilled. *Id.* Twitter's only evidence about the issuance of the CID (as opposed to speculation about potential future enforcement actions) stops well short of claiming Twitter was chilled. It says only that "[t]he fact that Twitter was served with this . . . CID has *the potential* to color Twitter's future content moderation decisions." ECF 5-1, Williams Decl. ¶ 14 (emphasis added).

Twitter's complaint asserts that "the CID and associated investigation chill Twitter's speech," ECF 1 ¶ 64, but that "bare assertion[]" is "not entitled to the assumption of truth." A*shcroft v. Iqbal*, 556 U.S. 662, 680 (2009). And the factual allegations in Twitter's complaint establish that its content-moderation decisions have not been chilled. As previously explained, *see* ECF 38 at 18–19, those factual allegations establish that Twitter continued moderating content in the manner it saw fit, and contrary to General Paxton's alleged preferences, long after Twitter learned of General Paxton's alleged "displeasure." ECF 1 ¶ 3; *see id.* ¶¶ 22–31, 36, 38.

Twitter's last argument is that its request for a declaratory judgment is different. *See* ECF 58 at 21–22. Not so. Twitter admits that *Zimmer* rejected not only an injunction but also declaratory relief. *See id.* at 21. Twitter emphasizes that *Google v. Hood* did not address declaratory relief, but that is only because the Fifth Circuit lacked appellate jurisdiction to consider declaratory relief in an interlocutory appeal. 822 F.3d at 228 n.14 (citing 28 U.S.C. § 1291(a)(1)). That declaratory relief may be appropriate in some retaliation cases is irrelevant. *See* ECF 58 at 21. Because Twitter has not established an Article III case or controversy, declaratory relief is barred. *See* U.S. Const. art. III, § 2; 28 U.S.C. § 2201 (requiring an "actual controversy within [the court's] jurisdiction").

## II. Twitter Has Not Established Personal Jurisdiction

### A. This Court Lacks Specific Personal Jurisdiction Because Twitter's Claim Is Based on Conduct in Texas

#### 1. Investigating Twitter for Misleading Texas Consumers in Violation of Texas Law Is Not Purposefully Directed toward California

Twitter concedes that mailing the CID to Twitter's headquarters was not "purposeful activity" directed at California for purposes of personal jurisdiction. ECF 58 at 6. There are numerous cases rejecting personal jurisdiction based on analogous communications. *See, e.g.*, *Yahoo! Inc. v. La. Ligue Contre Le Racisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc) (cease-

and-desist letter); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484–85 (5th Cir. 2008) (same). *Morningside Church v. Rutledge*, No. 3:20-cv-05050, 2020 WL 5077255, at *3 (W.D. Mo. Aug. 27, 2020) (civil investigative demand under DTPA). Trying to distinguish these cases, Twitter focuses on irrelevancies.

First, Twitter once again effectively asks the Court to create a free-speech exception for any plaintiff who claims to be "unconstitutionally chill[ed]" by conduct that violates "First Amendment rights." ECF 58 at 6; *see id.* at 10–11. But the Supreme Court has "reject[ed] the suggestion that First Amendment concerns enter into the [personal] jurisdictional analysis." *Calder*, 465 U.S. at 790. It explained that "[t]he potential chill on protected First Amendment activity stemming from libel and defamation actions is already taken into account in the constitutional limitations on the substantive law governing such suits. To reintroduce those concerns at the jurisdictional stage would be a form of double counting." *Id.* (citations omitted). The same is true for retaliation claims.

Second, Twitter asserts that the inquiry focuses on "where the defendant's actions are felt, whether or not the actions themselves occurred within the forum." ECF 58 at 4 (quotation marks and alterations omitted). But that is no longer the rule. Just last month, the Supreme Court clarified that "*Walden* held [that] the place of a plaintiff's injury and residence cannot create a defendant's contact with the forum State." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1031 (2021) (asking rhetorically why that holding, indisputably relevant to purposeful direction, would affect a different factor).

Third, Twitter argues that Defendant knew it would react to the CID in California. *See* ECF 58 at 4. But "the fact that a [legal document] envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party" to that document. *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (rejecting personal jurisdiction in a contract case).

Fourth, Twitter emphasizes General Paxton's supposed goals and "aims," ECF 58 at 4–6, but "the purpose of a party's action is not the lodestar for our [personal] jurisdictional determination." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017). A defendant's "subjective motivations are not material to the analysis." *Id.* at 1148.

*Morrill* illustrates these principles. There, the plaintiffs claimed that the defendants had improperly initiated litigation in Nevada but served the complaint, served deposition subpoenas, and engaged in discovery litigation in Arizona. *Morrill*, 873 F.3d at 1142–43. The Ninth Circuit held that these actions were not purposefully directed at Arizona because they "were undertaken as part of the [Nevada] litigation." *Id.* at 1146. Of course, "Defendants knew that Plaintiffs were from Arizona," so "it was foreseeable that some injury to them could have been experienced there based on the actions taken by Defendants in connection with the [Nevada] Litigation." *Id.* at 1144. But that was irrelevant: "'Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis.'" *Id.* at 1145 (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).

Twitter's argument fails for the same reasons. Mailing the CID was a "component part" of the DTPA investigation and potential DTPA enforcement in Texas, under Texas law, for the protection of Texas consumers. *Id.* at 1149. Twitter's decision to locate its headquarters in California does not mean the Office of the Texas Attorney General is "purposefully directing" its activities to California. For these reasons, Twitter cannot show that Defendant's "actions were directed at [California], not just at individuals who resided there." *Id.* at 1148–49.

Finally, Twitter baselessly claims that Defendant has "asserted a pseudo-national executive authority" by trying to affect content moderation for "users in California." ECF 58 at 10 (quoting *Def. Distributed v. Grewal*, 971 F.3d 485, 493 (5th Cir. 2020)). That is not true. Defendant is investigating potential misrepresentations to Texas consumers. *See* ECF 37 at 8 n.3. No matter what representations Twitter made to California consumers and no matter what content-moderation decisions it made, Twitter would not be the subject of this DTPA investigation if it had not made potentially misleading representations to Texas consumers. *See id.* (collecting cases explaining the scope of the Texas DTPA). The investigation addresses potential misrepresentations about content moderation, not the substance of Twitter's content-moderation decisions.[3]

---

[3] Twitter's footnoted request for discovery is wholly improper, both on the merits, *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials (footnote continued)

### 2. Twitter's Claim Does Not Arise Out of or Relate to any California Contacts

The Attorney General is also not subject to personal jurisdiction because Twitter's claim does not "arise[] out of or relate[] to the defendant's forum-related activities." *Axiom Foods v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Twitter cites only a single case, but it turned on more than "the place of the plaintiff's injury and residence." ECF 58 at 7 (quoting *Ford*, 141 S. Ct. at 1032). Sure, those places "may be relevant" to this factor (though not the previous one), but the Court emphasized the defendant "extensively promoted, sold, and serviced" "defective products" in the forum state. *Ford*, 141 S. Ct. at 1032. The defendant was "a global auto company," and "its business [wa]s everywhere." *Id.* at 1022. Needless to say, that is not true for the Office of the Texas Attorney General. Defendant's contacts with California, if any, are "isolated or sporadic" and not sufficiently "continuous" to support personal jurisdiction under *Ford*. *Id.* at 1028 n.4.

### 3. Exercising Personal Jurisdiction Over the Texas Attorney General Would Be Unreasonable

Twitter's discussion of the reasonableness factors misunderstands state sovereignty. For the third factor, it is undisputed that the "sovereign status of a defendant militates against the reasonableness of jurisdiction." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1272 (9th Cir. 1981). And "requiring [Texas] to submit to California jurisdiction constitutes an extreme impingement on state sovereignty." *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1190 n.8 (C.D. Cal. 2000). Trying to avoid this precedent, Twitter proclaims that "this suit in no way threatens any sovereign interest" because "it seeks to enjoin AG Paxton individually, in his official capacity." ECF 58 at 7.

As an initial matter, that is a contradiction in terms. Suing a government official "individually" and "in his official capacity" are two different things. *See Kentucky v. Graham*, 473 U.S. 159, 165 & n.10 (1985) (contrasting "[p]ersonal capacity suits," which "are sometimes referred to as individual-capacity" suits, and "[o]fficial-capacity suits"). Twitter brought an official-

---

made by the defendants, the Court need not permit even limited discovery.") (alterations in original) (citation omitted), and because it does not comply with the requirements for a motion. *See, e.g.*, N.D. Cal. L.R. 7-2.

capacity suit, not an individual-capacity suit. *See* ECF 1 ¶ 12.

But more importantly, official-capacity suits always implicate sovereign interests. The Supreme Court has already rejected as "fiction[]" Twitter's argument "that injunctive relief against State officials acting in their official capacity does not run against the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25 (1984). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted); *see* ECF 58 at 7–8. "[T]he State of [Texas] is the true defendant in this case" even though Twitter named a state official to take advantage of the fact that "*Ex parte Young* allows injunctive relief against the State in suits against state officers in their official capacities." *In re Gee*, 941 F.3d 153, 157 n.1, 166 (5th Cir. 2019) (per curiam); *see Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189 (9th Cir. 2003) (noting that *Ex parte Young* applies even when "the State is the real party at interest"). Contrary to Twitter's claim, *the Ex parte Young* "fiction" applies "for sovereign-immunity purposes," not for this analysis. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). Otherwise, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity." *Graham*, 473 U.S. at 166.

For the fourth factor, Twitter tries to minimize Texas's interest in adjudicating this dispute by suggesting that "[t]he validity of Texas law is not at issue." ECF 58 at 8. That is nonsense. Twitter is challenging a CID issued pursuant to the Texas Deceptive Trade Practices Act. If Twitter is not challenging the validity of that statute, at least as applied, then it has no basis for overcoming sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159 (1908) (creating an exception to sovereign immunity for situations in which a state official attempts "to enforce a legislative enactment which is void because unconstitutional").

Twitter's discussion of the other factors is no better. Twitter's argument on the first factor—the extent of the defendant's purposeful interjection into the forum state's affairs—reiterates the same errors addressed above. *See supra* Part II.A.1. For the second factor—the burden on the defendant—Twitter conflates the relative ease of filing amicus briefs, or joining a multistate coalition, with the burden of having to defend against a constitutional challenge in a foreign State

1,700 miles away. *See* ECF 58 at 8. Regarding the fifth factor—judicial efficiency—Twitter says "starting over" in Texas would not be efficient, ECF 58 at 8, but much of this litigation has been, and if this case goes forward in California will continue to be, devoted to procedural questions that would not arise in Texas, such as personal jurisdiction and venue. As to the sixth factor, Twitter complains that it does not want "to litigate . . . in a forum, and at a time, of [Defendants'] choosing." ECF 58 at 8. But Texas law allows the recipient of a CID to initiate proceedings and provides for flexibility in the timing and the location. *See* Tex. Bus. & Com. Code § 17.61(g). Finally, Twitter does not dispute the seventh factor: the availability of a Texas forum.

### B. The Office of the Attorney General Has Not Consented to Personal Jurisdiction

Twitter implausibly argues that its boilerplate forum-selection clause has massive implications for law enforcement. On Twitter's theory, any enforcement action in any way related to Twitter's terms or services must be brought in San Francisco, so long as the government agency has a Twitter account, as seemingly almost all do.[4] And as Twitter tells it, those state and federal agencies have all consented to private lawsuits challenging those enforcement actions being filed in San Francisco. *See* ECF 58 at 12–15. The Court should reject such an absurd result, especially when the text of the agreement itself gives the forum-selection clause a narrower scope.

The forum-selection clause is one of the terms of service, and the terms of service explain that they "govern [a user's] access to and use of [Twitter's] services." ECF 5-3, Ex. K (p. 109 of 127). The gravamen of Twitter's complaint has nothing to do with the Office of the Attorney General's "access to and use of [Twitter's] services." *Id.* As a result, the forum-selection clause does not apply.

## III. California Is Not a Proper and Convenient Venue

### A. Venue in California Is Improper

In any event, "a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in" the venue statute. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court*

---

[4] *See, e.g.*, U.S. Dep't of Justice, @TheJusticeDepartment, https://twitter.com/TheJusticeDept; Fed. Trade Comm'n, @FTC, https://twitter.com/FTC.

*for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) (citing 28 U.S.C. § 1391(b)). So here, venue is improper because "a substantial part of the events or omissions giving rise to the claim" did not occur in the Northern District of California. 28 U.S.C. § 1391(b)(2); *see* ECF 37 at 14–17.

Twitter's response relies on the same misunderstanding about where the Office of the Attorney General's actions occurred as was discussed in the context of personal jurisdiction. S*ee supra* Part II.A. Defendants' activities, which are the "focus" of a venue analysis, *see* ECF 37 at 15, all occurred in Texas, *see id.* at 17.

Twitter all but ignores the seminal case in this area, *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185 (1979), which held that when a State's law is challenged there is "only one obvious locus," that State. It disapproved venue in another State, even if that is "where [the challenged] statute had its impact on" the plaintiff. *Id.* at 186. Twitter tires to avoid *Leroy*'s force with a single sentence claiming that it "is not challenging a Texas law, or ordinary application of a Texas law to Twitter's conduct in Texas," *see* ECF 58 at 12, but that is exactly what Twitter is doing. *See supra* Part II.A.3.

Twitter also fails to confront the Ninth Circuit's application of *Leroy*: "[T]here is a valid 'interest in preventing [Texas] officials from being haled into court in any state where a resident's conduct in [Texas] subjects it to possible [Texas] enforcement action.'" *Dedication and Everlasting Love to Animals v. Commonwealth of Pennsylvania, Bureau of Charitable Organizations*, 101 F. App'x 224, 2004 WL 1336737 (9th Cir. 2004) (quoting Order Granting Def.'s Mot. Dismiss for Improper Venue, No. 2:02-cv-6483, ECF 15 at 1–2 (C.D. Cal. Dec. 12, 2002)).

Twitter does cite *Kalman v. Cortes*, 646 F. Supp. 2d 738 (E.D. Pa. 2009), for its focus on where "suppression" of speech occurred, *see* ECF 58 at 11, but that case involved a substantive prohibition on the plaintiff's speech. Here, Twitter addresses only hypothetical chilling of a person of ordinary firmness, not any real-world suppression of its own speech. *See supra* Part I.

Twitter also emphasizes a multi-state amicus brief submitted in a Texas court. *See* ECF 58 at 1, 16. That case involved different claims and different issues (e.g., there was no retaliation claim), but it is worth noting that the Court ultimately found venue improper and transferred the case to the home state of a defendant. *See Exxon Mobil Corp. v. Schneiderman*, No. 4:16-cv-469, ECF 180 at

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

12 (N.D. Tex. Mar. 29, 2017).

### B. Venue in California Is Inconvenient

Twitter's response focuses on the supposed lack of evidence establishing the inconvenience a state agency faces litigating 1,700 miles away in another State. *See* ECF 58 at 24. But the only relevant facts are undisputed, established as a matter of law, and subject to judicial notice. *See, e.g.*, ECF 37 at 18–19 (citing government reports showing reduced court congestion in the Western District of Texas); *Stone v. U.S. Sec. Assocs., Inc.*, No. 15-cv-235, 2015 WL 2438029, at *2 (N.D. Cal. May 21, 2015) (taking judicial notice of judicial caseload profiles in granting motion to transfer venue).

Twitter does not dispute that its suit "might have been brought" in the Western District of Texas. Twitter tries to downplay the interests of Texas courts in adjudicating this dispute, *see* ECF 38 at 25, but the public interest factors strongly favor adjudicating the constitutionality of a Texas agency's actions in Texas. *See* ECF 37 at 19.

### IV. The Court Should Abstain

First, Twitter argues that "*Pullman* abstention is not a basis to dismiss a case." ECF 58 at 22. It is when a federal court abstains in favor of a Texas court. *See Harris Cty. Com'rs Court v. Moore*, 420 U.S. 77, 89 & n.14 (1975) (ordering dismissal for reasons unique to Texas); ECF 37 at 21.

Second, Twitter suggests that the court must decide the preliminary-injunction motion before abstaining. *See* ECF 58 at 22. That is wrong. Because abstention is warranted, a federal injunction would be inconsistent with comity. *See, e.g.*, *Albertson v. Millard*, 345 U.S. 242, 245 (1953) (vacating a federal restraining order to allow state-court litigation to proceed); *Burdick v. Takushi*, 846 F.2d 587, 589 (9th Cir. 1988) (vacating an injunction because district court should have abstained under *Pullman*); *Neal v. Brim*, 506 F.2d 6, 11 (5th Cir. 1975) (dissolving a federal injunction because the district court should have abstained under *Pullman*).

Third, Twitter claims courts should not abstain in First Amendment cases. ECF 58 at 22. But "there is no absolute rule against abstention in first amendment cases." *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987). Indeed, one of the cases cited by Twitter explains that "while the

Supreme Court has been 'particularly reluctant to abstain in cases involving facial challenges to the First Amendment,' . . . . [s]uch concerns . . . are not implicated where an 'as applied' challenge to the First Amendment is made." *Chez Sex III Corp. v. Twp. of Union*, 945 F.2d 628, 633–34 (3d Cir. 1991) (approving abstention in a First Amendment case). Abstention in as-applied cases is problematic, at most, when "the delay that comes from abstention may itself chill the First Amendment rights at issue." *Porter v. Jones*, 319 F.3d 483, 492–93 (9th Cir. 2003). As explained above, however, that concern does not apply here because Twitter does not allege that its speech is actually chilled, only that a hypothetical person of ordinary firmness might be chilled. *See supra* Part I. Thus, there is no pressing First Amendment harm.

Finally, Twitter is wrong to suggest that *Pullman* abstention is inappropriate because there is no ambiguity of state law. *See* ECF 58 at 22–23. The state-law issue is whether an allegedly retaliatory motive prevents a civil investigative demand from being proper under Texas Business and Commerce Code § 17.61(a). *See* ECF 37 at 19. The purpose of the ambiguity requirement is to ensure that a federal court will not abstain unless a state-court ruling really could "obviate[]" the need for federal adjudication. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716–17 (1996). Twitter does not dispute that a state-court ruling could have that effect. Indeed, Twitter seems to suggest there is no ambiguity because it assumes a state court would interpret state law to prohibit a civil investigative demand issued with a retaliatory motive. *See* ECF 58 at 23. That makes this a textbook case for *Pullman* abstention. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941) ("If there was no warrant in state law for the Commission's assumption of authority there is an end of the litigation; the constitutional issue does not arise.").

Twitter's argument completely ignores the most factually analogous case, *Morningside Church, Inc. v. Rutledge*, 3:20-cv-05050, 2020 WL 5077255, at *1 (W.D. Mo. Aug. 27, 2020). *See* ECF 37 at 20. There, the plaintiffs sought "prospective declaratory and injunctive relief," including on a First Amendment claim, against two California District Attorneys, the City Attorney for the City of Los Angeles, and the Attorney General for the State of Arkansas. *Id*. As in this case, the plaintiffs challenged "informational inquiries and document requests from Defendants investigating constituent complaints of possible consumer fraud, as well as any action that may be taken in follow

up to those informational requests, infringe upon their" First Amendment rights. *Id*. The court abstained. *See id*. at *4. Twitter does not try to distinguish the case.

Regarding its request for declaratory judgment, Twitter denies that the Office of the Attorney General is the "natural plaintiff" entitled to choose the forum. ECF 58 at 23. But disputes about the merits of an investigation are most naturally resolved in the resulting enforcement action, which in this case would be brought, if at all, by the Office of the Attorney General. Instead of respecting the process established by Texas law, Twitter has only pretended to. After Twitter represented that it would "be in touch next week about setting up [the] next meet and confer," ECF 38-2 ¶ 21, Twitter secretly retained new counsel, prepared this lawsuit, and threatened Texas with a surprise temporary restraining order. *Id.* ¶¶ 21, 23. That kind of behavior should not be rewarded. That is why "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed." *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995).

## CONCLUSION

Defendant respectfully requests that the Court dismiss this case or, in the alternative, transfer it to the Western District of Texas.

Dated: April 23, 2021                    Respectfully submitted.

*/s/ Patrick K. Sweeten*
Patrick K. Sweeten
Deputy Attorney General for Special Litigation
Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Grant Dorfman
Deputy First Assistant Attorney General
William T. Thompson
Deputy Chief, Special Litigation Unit
Ryan D. Walters
Special Counsel

LEWIS BRISBOIS BISGAARD & SMITH LLP

*/s/ Michael K. Johnson*
Michael K. Johnson
Attorneys for Defendant



**CERTIFICATE OF SERVICE**
*Twitter Inc. v. Ken Paxton, et. al.*
USDC-ND, San Francisco Division, Case No. 3:21-cv-1644-MMC

STATE OF TEXAS, COUNTY OF TRAVIS

At the time of service, I was over 18 years of age and not a party to the action. My business address is P.O. Box 12548 (MC-009), Austin, Tx 78711-2548. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On April 23, 2021, I served the following document:

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES**

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to all persons registered by the Court to receive Notifications of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 23, 2021                              */s/ Patrick K. Sweeten*
                                                    Patrick K Sweeten

4829-3098-3399.1                 14