IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TWITTER, INC.,

    Plaintiff,

    v.

KEN PAXTON, in his official capacity as Attorney General of Texas,

    Defendant.

Case No. 21-cv-01644-MMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ACTION**

Before the Court is defendant Ken Paxton's ("Paxton") "Motion to Dismiss or, in the Alternative, Motion to Transfer," filed March 29, 2021, pursuant to Rules 12(b)(1), 12(b)(2), and (b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404. Plaintiff Twitter, Inc. "("Twitter") has filed opposition, to which Paxton has replied. Having read and considered the parties' respective written submissions,[1] the Court rules as follows.[2]

## BACKGROUND

In its Complaint, Twitter, which "operates an online platform where users can share short messages ('Tweets') and other content" (see Compl. ¶ 2), alleges it has established "content moderation policies, practices, and techniques that, among other things, are designed to minimize the reach of harmful or misleading information" posted

---

[1] Twitter has filed a motion for preliminary injunction, which Paxton has opposed. To the extent the parties, in those filings, address the issues presented in the motion to dismiss, the Court has considered those arguments as well.

[2] By order filed May 3, 2021, the Court took the matter under submission.

1    on its platform (see Compl. ¶ 15).  Twitter further alleges that, "in the months surrounding

2    the January 6, 2021[,] attack on the United States Capitol, Twitter decided to suspend or

3    restrict numerous accounts for violating its policies against glorifying or inciting violence,

4    and against manipulating or interfering in elections or other civic processes," that

5    "[a]mong the users whose accounts were permanently suspended in the immediate

6    aftermath of the deadly attack was President Donald Trump" (see Compl. ¶ 2), and that

7    Paxton, the Attorney General of Texas, "did not agree with these content moderation

8    decisions" (see Compl. ¶ 42).

9    　　　　As set forth in the Complaint, the Consumer Protection Division of the Office of the

10   Attorney General of Texas issued to Twitter, on January 13, 2021, a "Civil Investigative

11   Demand" ("CID") (see Compl. Ex. 1), by which the Consumer Protection Division seeks

12   from Twitter specified documents described as "relevant to the subject matter of an

13   investigation of possible violations of sections 17.46(a) and (b) of the DTPA [the Texas

14   Deceptive Trade Practices – Consumer Protection Act] in Twitter's representations and

15   practices regarding what can be posted on its platform" (see id.).  Twitter alleges Paxton

16   "initiated" the investigation and "issued the CID" to "punish Twitter for making content

17   moderation decisions that he did not like."  (See Compl. ¶ 61.)

18   　　　　Based on the above allegations, Twitter asserts a single Claim for Relief, brought

19   pursuant to 42 U.S.C. § 1983, and titled "The First Amendment Bars the Attorney

20   General's Retaliatory Investigation and Civil Investigative Demand."  As relief, Twitter

21   seeks (1) an injunction prohibiting Paxton, as well as his "officers, agents, servants,

22   employees, and attorneys," from "initiating any action to enforce the CID or to further the

23   unlawful investigation into Twitter's internal editorial policies and practices" (see Compl.

24   ¶¶ 69-70), and (2) a declaration that the "First Amendment bars . . . Paxton's January 13,

25   2021 CID and the investigation into Twitter's internal editorial policies announced on that

26   same date, because they are unlawful retaliation against Twitter for its moderation of its

27   platform, including its decision to permanently suspend President Trump's account" (see

28   Compl. ¶ 68).

**DISCUSSION**

In the instant motion, Paxton argues that he is not subject to personal jurisdiction in California, see Fed. R. Civ. P. 12(b)(2), that venue is improper in this district, see Fed. R. Civ. P. 12(b)(2), and that the Court lacks subject matter jurisdiction for the reason that Twitter's claims are not ripe for review, see Fed. R. Civ. P. 12(b)(1). The Court considers each such argument in turn.[3]

First, for the reasons set forth by Twitter (see Pl.'s Opp. at 3:17-6:24, 7:1-10:12), the Court finds Paxton is subject to personal jurisdiction in California. Twitter's allegations, in particular, that Paxton, in his official capacity as Attorney General of Texas, engaged in retaliatory conduct expressly aimed at chilling the speech of a California resident, suffice to support the exercise of personal jurisdiction. See Calder v. Jones, 465 U.S. 783, 789-90 (1984) (holding defendants, whose "intentional, and allegedly tortious, actions were expressly aimed at California" and who "knew that the brunt of [the] injury would be felt by [the plaintiff] in California," were subject to personal jurisdiction in California).[4]

Additionally, and again for the reasons set forth by Twitter (see Pl.'s Opp. at 11:5-11:16), the Court finds venue in this district is proper. In particular, Twitter's allegations that it resides in this district and that the issuance of the CID injured it in this district suffice. See 28 U.S.C. § 1391(b)(2) (providing venue proper in "district in which a substantial part of the events or omissions giving rise to the claim occurred"); Myers v. Bennett Law Offices, 238 F.3d 1068, 1075-76 (9th Cir. 2001) (holding "substantial part" of

---

[3] In the alternative, Paxton argues venue is inconvenient in this district, see 28 U.S.C. § 1404(a), and that the Court should abstain from considering Twitter's claims under the doctrine set forth in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941). In light of the findings set forth below, the Court has not addressed those additional arguments herein.

[4] As Paxton, in support of the instant motion, does not rely on evidence to contradict the allegations in the Complaint, the above-referenced allegations "must be taken as true" for purposes of personal jurisdiction. See Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).

3

1    events giving rise to tort claim occurs in district where plaintiff alleges "harms" were
2    "felt").
3          As the instant action is not subject to dismissal or transfer based on lack of
4    personal jurisdiction or improper venue, the Court next considers whether Twitter's claims
5    for injunctive and declaratory relief are, as Paxton argues, premature, and thus subject to
6    dismissal for lack of subject matter jurisdiction.
7          In that regard, Paxton relies on a series of cases in which the plaintiff received
8    from a government agency a summons that is "not self-executing," i.e., the recipient "may
9    refrain from complying with it, without penalty, until directed otherwise by a court order."
10   See Jerry T. O'Brien, Inc. v. Securities and Exchange Comm'n, 704 F.2d 1065, 1067 (9th
11   Cir. 1983).  In such cases, as explained by the Supreme Court in Reisman v. Caplin, 375
12   U.S. 440 (1964), a challenge to the issuance of the summons, by way of a claim for
13   injunctive or declaratory relief, is subject to dismissal "for want of equity."  See id. at 441-
14   43, 446 (1964) (affirming dismissal where plaintiffs sought to enjoin enforcement of
15   challenged summons; finding plaintiff had "adequate remedy at law," as "enforcement
16   action" by agency "would be an adversary proceeding affording a judicial determination of
17   the challenges to the summons"); see also, e.g., Mobil Exploration & Producing U.S., Inc.
18   v. Department of Interior, 180 F.3d 1192, 1200-01 (10th Cir. 1999) (holding district court
19   properly declined to "address an anticipatory challenge" to summons; relying on "principle
20   against pre-enforcement review when a party seeks injunctive relief from an agency
21   subpoena"); Atlantic Richfield Co. v. Federal Trade Comm'n, 546 F.2d 646, 650 (5th Cir.
22   1977) (holding challenge to subpoenas not "ripe[ ] for review"; noting plaintiff could "not
23   be forced to comply with the subpoenas nor subjected to any penalties for
24   noncompliance until ordered to comply pursuant to appropriate enforcement proceedings
25   in which [plaintiff] may assert its . . . objections").
26         Paxton argues the above-discussed line of cases is applicable here, as the CID is
27   not self-executing, and, if the Office of the Attorney General were to seek enforcement of
28   the CID, it would be required to file a court action, in which Twitter's challenges would be

4

heard and determined. See Texas Bus. & Com. § 17.62(b). In opposition, Twitter argues Paxton's reliance on such cases is unavailing, in light of Twitter's allegation that the issuance of the CID is part of a retaliatory investigation, and, as Twitter points out, the Ninth Circuit, in several cases, has found First Amendment retaliation claims cognizable where based on a theory that the defendant subjected the plaintiff to, inter alia, a retaliatory investigation. The Court, as set forth below, finds Twitter's argument unpersuasive.[5]

The elements of any First Amendment retaliation claim are that (1) the plaintiff "engaged in a constitutionally protected activity," (2) the defendant's "actions would chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) "the protected activity was a substantial or motivating factor in [the defendant's] conduct." See Sampson v. County of Los Angeles, 974 F.3d 1012, 1019 (9th Cir. 2020).

Here, as noted, the allegedly retaliatory acts on which Twitter bases its claim are an investigation and issuance of a CID in connection therewith. Although, with respect to the second of the above-listed elements, "[v]arious kinds of . . . actions may have an impermissible chilling effect," see Coszalter v. City of Salem, 320 F.3d 968, 974-75 (9th Cir. 2003), Twitter cites no case holding the institution of an allegedly retaliatory investigation, by itself, constitutes a cognizable adverse action, and, as Paxton points, some courts have found it does not, see, e.g., Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir. 1998) (finding employer's institution of investigation into employee's job performance, "by itself, was not an adverse employment action"). As the matter has not been decided by the Ninth Circuit, however, the Court next turns to the question of

---

[5] To the extent Twitter makes an argument based on McNeese v. Board of Education, 373 U.S. 668, 670-74 (1963), such argument has no bearing on the issues raised here by Paxton. In McNeese, the Supreme Court rejected the defendant's argument that, because state law provided an alternative remedy, the plaintiffs therein could not seek an injunction under § 1983. See id. at 670-74. Here, unlike the defendants in McNeese, Paxton is not contending a claim ripe for review need not be heard in federal court where a state forum is available, but, rather, that Twitter's claims are not yet ripe for review.

whether the particular retaliatory investigation claim here at issue entitles Twitter to avoid the holding in Reisman and to seek, at this time, injunctive and declaratory relief.

In reviewing the authorities on which Twitter relies, the Court notes they fall into two separate groups, those in which a government employer initiated an investigation of an employee and those in which the government initiated an investigation of an individual who was not an employee.

First, to the extent Twitter cites to cases in which a government employer instituted an investigation of an employee, see Greisen v. Hanken, 925 F.3d 1097, 1105-06 (9th Cir. 2019); Coszalter, 320 F.3d at 971; Ulrich v. City and County of San Francisco, 308 F.3d 968, 972 (9th Cir. 2002), Twitter's reliance thereon is misplaced. Although, in one of those cases, the Ninth Circuit did suggest an investigation "considered individually" might be sufficient to support a retaliation claim, see Coszalter, 320 F.3d at 976, there exists in all such cases involving an employment relationship the potential for loss of employment. Consequently, an investigation into a government employee's job performance, or even a seemingly inconsequential but unfavorable act, such as not holding "a birthday party for [that] public employee," see Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 n.8 (1990), reasonably may be perceived as a "threat of dismissal," which, in turn, "unquestionably inhibits" protected speech, see Elrod v. Burns, 427 U.S. 347, 359 (1976). Here, by contrast, no employment or similar type of relationship exists between Twitter and Paxton, and, as discussed below, the instant investigation carries no comparable threat.

In each of the non-employment cases cited by Twitter, the potential consequences of the investigation were serious, for example, imposition of a substantial fine, see White v. Lee, 227 F.3d 1214, 1222, 1228 (9th Cir. 2000) (noting defendants had advised plaintiffs they could be fined $100,000 upon conclusion of investigation; providing, as example of cognizable adverse action, "threat of invoking legal sanctions"), arrest, see Lacey v. Maricopa County, 693 F.3d 896, 909-10, 917 (9th Cir. 2012) (noting prosecuting attorney had issued subpoenas and authorized plaintiffs' arrests; holding, "to state

arresting someone in retaliation for their exercise of free speech rights is sufficient to chill speech is an understatement") (internal quotation and citation omitted), or loss of custody of a child, see Sampson v. County of Los Angeles, 974 F.2d 1012, 1016-17, 1021 (9th Cir. 2020) (noting "threat of losing custody of a child would ordinarily chill First Amendment activity of both biological parents and legal guardians").  Here, as Paxton points out, Twitter faces no such consequence.  Unlike the defendants in the cases on which Twitter relies, the Office of the Attorney General has no authority to impose any sanction for a failure to comply with its investigation.  Rather, the Office of the Attorney General would be required to go to court, where the only possible consequence adverse to Twitter would be a judicial finding that the CID, contrary to Twitter's assertion, is enforceable.

Accordingly, as, to date, no action has been taken to enforce the CID, the Court finds Twitter's lawsuit is premature, and, as such, is subject to dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons stated above, Paxton's motion to dismiss is hereby GRANTED, and the above-titled action is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: May 11, 2021

MAXINE M. CHESNEY
United States District Judge